IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HARRISBURG DIVISION

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC.,<br><br>              Plaintiff,<br><br>   v.<br><br>COMMONWEALTH of PENNSYLVANIA;<br>KATHY BOOCKVAR, in her official<br>capacity as Secretary of the Commonwealth;<br>the BUCKS COUNTY COMMISSION; the<br>BUCKS COUNTY BOARD OF<br>ELECTIONS; the BUCKS COUNTY<br>REGISTRATION COMMISSION;<br>THOMAS FREITAG, in his official capacity<br>as Elections Director for Bucks County; the<br>CHESTER COUNTY COMMISSION; the<br>CHESTER COUNTY BOARD OF<br>ELECTIONS; the CHESTER COUNTY<br>REGISTRATION COMMISSION;<br>SANDRA BURKE, in her official capacity<br>as Director of Elections in Chester County;<br>the DELAWARE COUNTY COUNCIL; the<br>DELAWARE COUNTY BOARD OF<br>ELECTIONS; the DELAWARE COUNTY<br>REGISTRATION COMMISSION; and<br>LAUREEN HAGAN, in her official capacity<br>as Chief Clerk, Elections Bureau for<br>Delaware County,<br><br>              Defendants. | | Civ. No. 20-cv-_____ |

## **COMPLAINT**

Plaintiff Judicial Watch, Inc., by and through counsel, files this Complaint for declaratory

and injunctive relief against the Commonwealth of Pennsylvania; Kathy Boockvar, in her official

capacity as Pennsylvania Secretary of the Commonwealth; the Bucks County Commission; the

Bucks County Board of Elections; the Bucks County Registration Commission; Thomas Freitag,

in his official capacity as Elections Director for Bucks County; the Chester County Commission; the Chester County Board of Elections; the Chester County Registration Commission; Sandra Burke, in her official capacity as Director of Elections in Chester County; the Delaware County Council; the Delaware County Board of Elections; the Delaware County Registration Commission; and Laureen Hagan, in her official capacity as Chief Clerk of the Elections Bureau for Delaware County.

1.      Plaintiff seeks declaratory and injunctive relief to compel Defendants to comply with their voter list maintenance obligations and their record production obligations under Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States and under 52 U.S.C. § 20510(b)(2), as the action seeks injunctive and declaratory relief under the NVRA.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a defendant resides in this district and all defendants reside in Pennsylvania, and because a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

## PARTIES

4.      Plaintiff Judicial Watch, Inc. ("Judicial Watch") is a not-for-profit, educational organization incorporated under the laws of the District of Columbia and headquartered at 425 Third Street SW, Suite 800, Washington, D.C. 20024.

5.      Defendant Commonwealth of Pennsylvania is a "State" subject to the requirements of the NVRA.  52 U.S.C. §§ 20502(4), 20503.

6.     Defendant Kathy Boockvar was appointed by the Governor of Pennsylvania in January 2019 to be the Secretary of the Commonwealth of Pennsylvania and to oversee the Department of State.  She and her department are charged with implementing, regulating, and administering Pennsylvania's Statewide Uniform Registry of Electors ("SURE system").  25 PA. C.S. §§ 1201 and 1222(e) and (f).  Secretary Boockvar is Pennsylvania's chief State election official, responsible under federal law for coordinating the State's compliance with the NVRA. 52 U.S.C. § 20509.  She is sued in her official capacity.

7.     Defendant Bucks County Commission is the legislative body for Bucks County. 16 P.S. §§ 401(a)(1), 509.

8.     Defendant Bucks County Board of Elections is an agency established under state law with jurisdiction over the conduct of elections within the county.  25 P.S. § 2641.

9.     Defendant Bucks County Registration Commission is an agency established under state law with jurisdiction over voter registration within the county.  25 PA. C.S. § 1203(a).

10.     Defendant Thomas Freitag serves as the Elections Director for Bucks County.  He is sued in his official capacity.

11.     Defendant Chester County Commission is the legislative body for Chester County.  16 P.S. §§ 401(a)(1), 509.

12.     Defendant Chester County Board of Elections is an agency established under state law with jurisdiction over the conduct of elections within the county.  25 P.S. § 2641.

13.     Defendant Chester County Registration Commission is an agency established under state law with jurisdiction over voter registration within the county.  25 PA. C.S. § 1203(a).

14.     Defendant Sandra Burke serves as the Director of Elections for Chester County. She is sued in her official capacity.

15.     Defendant Delaware County Council is the legislative body for Delaware County. DELAWARE CTY. HOME RULE CHARTER, Art. IV.

16.     Defendant Delaware County Board of Elections is an agency established under state law with jurisdiction over the conduct of elections within the county.  25 P.S. § 2641.

17.     Defendant Delaware County Registration Commission is an agency established under state law with jurisdiction over voter registration within the county.  25 PA. C.S. § 1203(a).

18.     Defendant Laureen Hagan serves as the Chief Clerk of the Elections Bureau for Delaware County.  She is sued only in her official capacity.

## STATUTORY BACKGROUND

19.      The NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).

20.     Under Section 8 of the NVRA, a voter becomes "ineligible" and subject to removal from a jurisdiction's voter rolls when the voter asks to be removed from the rolls, does not respond to an address inquiry and fails to vote during a specified statutory period, dies, or is disqualified from voting under state law because of a criminal conviction or mental incapacity; or when an erroneous registration record is corrected.  52 U.S.C. § 20507(a)(3), (4)(A), 4(B), (c)(2)(B)(ii).

21.     The NVRA provides that a voter must be removed from a jurisdiction's voter rolls if the voter either confirms in writing that he or she has moved outside the jurisdiction, or fails to respond to an address confirmation notice and then fails to vote during a statutory waiting period extending from the date of the notice through the next two general federal elections.  52 U.S.C. §§ 20507(d)(1), (d)(3); 52 U.S.C. § 21083(a)(4)(A).

4

22.    Pennsylvania law requires each county registration commission to institute a program to "protect the integrity of the electoral process," "ensure the maintenance of accurate and current registration records," and "identify registered electors whose address may have changed."  25 PA. C.S. § 1901(a), (b).

23.    Pennsylvania law provides, like the NVRA, that an elector may be removed from the rolls if the elector either confirms a move outside of the county in writing, or fails to respond to a forwardable notice and then fails to vote during a waiting period extending from the date of the notice through the next two general federal elections.  25 PA. C.S. § 1901(d)(1)(ii).

24.    Federal regulations and Pennsylvania's list maintenance laws and related Commonwealth documents refer to voter registrations as "inactive" when a registrant has failed to respond to a notice and will be subject to removal if the registrant then fails to vote in the next two general federal elections.  11 C.F.R. § 9428.7; 25 PA. C.S. § 1901(c).

25.    Under both the NVRA and Pennsylvania law, voters whose registrations are inactive may still vote on election day.  52 U.S.C. § 20507(d)(2)(A); 25 PA. C.S. § 1902.

26.    In June of each odd-numbered year, the U.S. Election Assistance Commission ("EAC") is required by law to report to Congress its findings related to state voter registration practices.  52 U.S.C. § 20508(a)(3).  Federal regulations require states to provide various kinds of data to the EAC for use in this biennial report, including the numbers of active and inactive registered voters in the last two federal elections, and the numbers of registrations removed from the rolls any reason between those elections.  11 C.F.R. § 9428.7(b)(1), (2), (5).

27.    Section 8(i) of the NVRA grants the public the right to request information concerning voter list maintenance.  It provides that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection" and copying "all records concerning the

implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i).

28.    Though not purporting to be an exhaustive list, Section 8(i)(2) provides two specific examples of responsive records: "The records maintained . . . shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made."  52 U.S.C. § 20507(i)(2), referring to 52 U.S.C. § 20507(d)(2).

## FACTS

### A.    *Judicial Watch's Background, Mission, and Membership.*

29.    Judicial Watch's mission is to promote transparency, integrity, and accountability in government and fidelity to the rule of law.  The organization, which has been in existence since 1994, fulfills its mission through public records requests and litigation, among other means.

30.    Judicial Watch is supported in its mission by hundreds of thousands of individuals across the nation.  An individual becomes a member of Judicial Watch by making a financial contribution, in any amount, to the organization.  Members' financial contributions are by far the single most important source of income to Judicial Watch and provide the means by which the organization finances its activities in support of its mission.  Judicial Watch in turn represents the interests of its members.

31.    Over the past several years, Judicial Watch's members have become increasingly concerned about the state of the nation's voter registration rolls, including whether state and local officials are complying with the NVRA's voter list maintenance obligations.

32.     Specifically, members are concerned that failing to comply with the NVRA's voter list maintenance obligations undermines the integrity of elections by increasing the opportunity for ineligible voters to cast ballots.

33.     In response to this concern, Judicial Watch commenced a nationwide program to monitor state and local election officials' compliance with their NVRA list maintenance obligations.   As part of this program, Judicial Watch utilizes NVRA Section 8(i) and public records laws to request and receive records from jurisdictions across the nation about their voter list maintenance efforts.   It also obtains and analyzes voting and population data from the EAC and U.S. Census Bureau.   It then analyzes these records and data and publishes the results of its findings to its members and the general public.

**B.**     ***Defendants' Admissions to the EAC That They Removed Almost No Registrations Pursuant to Section 8(d)(2) of the NVRA.***

34.     In June 2019, the EAC published its biennial, NVRA-related report, entitled ELECTION ADMINISTRATION AND VOTING SURVEY, 2018 COMPREHENSIVE REPORT, A REPORT TO THE 116TH CONGRESS ("EAC Report").   The report is available at https://www.eac.gov/research-and-data/studies-and-reports by clicking on "2018 Election Administration and Voting Survey Report."

35.     Along with its report, the EAC published the responses it received to a voter registration survey it sent to the states.   The survey instrument sent by the EAC is available at https://www.eac.gov/research-and-data/datasets-codebooks-and-surveys under a 2018 link entitled "2018 Election Administration and Voting Survey Instrument."   The states, in consultation with their county and local officials, provide answers to the survey directly to the EAC.   The states' survey responses are compiled on the same webpage under the heading "EAVS Datasets Version 1.2 (released February 18, 2020)."

36.     Judicial Watch reviewed the EAC Report and associated data to determine what states and counties had certified to the EAC about their own list maintenance practices.

37.     If a jurisdiction removes few or no registration records belonging to electors who fail to respond to an address confirmation notice and fail to vote in two consecutive federal elections, that jurisdiction is not complying with Section 8(d)(2) of the NVRA.

38.     Question A9e of the EAC's survey asked jurisdictions to report the number of registrations removed during the most recent two-year reporting period where the "[r]eason for [r]emoval" was "[f]ailure to respond to notice sent and failure to vote in two most recent federal elections."  This question plainly refers to removals under Section 8(d)(2) of the NVRA.

39.     In response to question A9e of the EAC's most recent survey, the Commonwealth of Pennsylvania represented that, during the most recent two-year reporting period, a total of eight (8) registrations had been removed in Bucks County for failing to respond to a notice and failing to vote in two federal elections.

40.     In response to question A9e of the EAC's survey, the Commonwealth of Pennsylvania represented that, during the most recent two-year reporting period, a total of five (5) registrations had been removed in Chester County for failing to respond to a notice and failing to vote in two federal elections.

41.     In response to question A9e of the EAC's survey, the Commonwealth of Pennsylvania represented that, during the most recent two-year reporting period, a total of four (4) registrations had been removed in Delaware County for failing to respond to a notice and failing to vote in two federal elections.

42.     In the EAC Report, Bucks County indicated that it had 457,235 total registered voters; Chester County indicated that it had 357,307 total registered voters; and Delaware County indicated that it had 403,371 total registered voters.

43.     The numbers of removals in Bucks, Chester, and Delaware Counties pursuant to the procedures set forth in Section 8(d)(2) of the NVRA, as reported by Pennsylvania to the EAC, are absurdly small given the size of those counties, the size of their voter rolls, and the rate at which their registrations become outdated because of changes in residence.

44.     The numbers of removals in Bucks, Chester, and Delaware Counties pursuant to the procedures set forth in Section 8(d)(2) of the NVRA, as reported by Pennsylvania to the EAC, indicate a multi-year failure by those jurisdictions to comply with the core requirements of Section 8(d)(2) of the NVRA.

45.     The numbers of removals in Pennsylvania pursuant to the procedures set forth in Section 8(d)(2) of the NVRA, which numbers the Commonwealth itself reported to the EAC, are absurdly low throughout Pennsylvania, ranging by county from a high of 72 down to zero.

46.     The numbers of removals in Pennsylvania pursuant to the procedures set forth in Section 8(d)(2) of the NVRA, which numbers the Commonwealth itself reported to the EAC, indicate a multi-year failure by the Commonwealth and Secretary Boockvar, the chief State election official, to comply with a core requirement of Section 8 of the NVRA.

47.     Other Pennsylvania counties have confirmed that they have been delinquent in removing old, inactive registrations under Section 8(d)(2) of the NVRA.  David Voye, Elections Manager for Allegheny County, stated in a televised report that "I would concede that we are behind in culling our rolls" and that it was an activity that had "been put on the back burner." *Under Threat Of Lawsuit, Allegheny Co. Purging 69,000 Inactive Voters From Rolls* (CBS

Pittsburgh, Jan. 14, 2020), available at https://pittsburgh.cbslocal.com/2020/01/14/allegheny-county-board-of-elections-voter-rolls/.

48.     Allegheny County only took action regarding this failure after receiving notice from Judicial Watch on December 11, 2019.

49.     Secretary Boockvar took no action regarding Allegheny County and defended its list maintenance practices as late as March 2020, despite the widely publicized admission by County officials of this multi-year failure to comply with Section 8 of the NVRA.

50.     The Pennsylvania Department of State reports on its website that Pennsylvania still has over 800,000 inactive registrants on its voter rolls.

**C.     *The High Registration Rates in Bucks, Chester, and Delaware Counties.***

51.     Judicial Watch also analyzed the 2019 EAC Report by comparing the registration numbers reported for U.S. states and counties with the best available census data for those jurisdictions.

52.     When the number of voter registrations in a jurisdiction is close to the number of citizens over the age of 18 residing in that jurisdiction, it indicates that the jurisdiction is not taking steps required by law to cancel the registrations of ineligible registrants.

53.     Judicial Watch's analysis showed that the registration rate for Bucks County was about 96%.

54.     Judicial Watch's analysis showed that the registration rate for Chester County was about 97%.

55.     Judicial Watch's analysis showed that the registration rate for Delaware County was about 97%.

56.     The registration rates for Bucks, Chester, and Delaware Counties are high in comparison to other counties in Pennsylvania, and high in comparison to other counties throughout the U.S.

57.      The registration rates for Bucks, Chester, and Delaware Counties are abnormally high.

58.     A high registration rate is a natural and probable consequence of failing to remove old, inactive registrations that should be removed pursuant to Section 8(d)(2).

**D.     *Judicial Watch's Notice Letters and Correspondence with Defendants.***

59.     On December 11, 2019, Judicial Watch wrote separately to Bucks County, Chester County, and Delaware County.  Each of the letters to these counties was also addressed and sent to Secretary Boockvar.  (These letters are attached to this complaint as Exhibits 1, 2, and 3.)

60.     Each letter noted the relevant county's low number of removals under Section 8(d)(2) and its high registration rate, alleged violations of the NVRA, and provided formal notice pursuant to 52 U.S.C. § 20510(b)(2) that the county and Secretary Boockvar would be subject to a lawsuit if those violations were not corrected within 90 days.

61.     Each letter asked whether the relevant county and Secretary Boockvar "agree that the EAC accurately quoted data it received from you regarding the number of registrations you removed under the process set forth in Section 8(d) of the NVRA"; and asked, if they did not agree with the quoted data, for their "own estimates regarding these numbers."

62.     Each letter asked the relevant county and Secretary Boockvar to produce particular records pursuant to Section 8(i), and noted that the failure to timely produce these records would constitute a further violation of the NVRA.  Among other things, each of these

requests sought the "names and addresses of all persons to whom notices described in 52 U.S.C. § 20507(d)(2) were sent, and information concerning whether or not each person responded to the notice." Section 8(i)(2) specifically requires states to retain and produce these records.

**Bucks County**

63.     Bucks County responded by letter on March 4, 2020 (attached hereto as Exhibit 4). While it denied Judicial Watch's allegations, the County only cited in response irrelevant data from a state report enumerating removals from its *active* registration list; and from its inactive list for a variety of reasons, including at the registrant's request, or on account of the registrants' death. Removals from the active list, or at the voluntary request of the registrant, or because of the death of the registrant, have nothing to do with the removal of *inactive* registrants under the process set forth in Section 8(d)(2).

64.     Bucks County also cited the same state report to show that it removed (in 2018) 257 registrations for out-of-county moves and 1552 registrations for out-of-state moves. But that data does not indicate whether those removals occurred because registrants either requested removal at the time or confirmed a move after the fact, which are different circumstances from a failure to respond to a notice letter and a failure to vote in two federal elections.

65.     Even if every registration associated with 257 out-of-county moves and 1552 out-of-state moves were removed in a single year by Bucks County pursuant to the procedures set forth in Section 8(d)(2), that is too few removals under that provision for a county of that size. Those registrations combined constitute only about 0.4% of the total number of registrations Bucks County reported to the EAC. The Census Bureau estimates that 8.2% of the residents of Bucks County are living in a different house than the one they were living in one year previously.

66.     Bucks County also professed that it was unable to find where the EAC's data indicated that it only removed eight registrants in two years under Section 8(d)(2).

67.     Judicial Watch wrote back to Bucks County on March 9, 2020.  (The letter is attached hereto, without exhibits, as Exhibit 5).  Judicial Watch explained exactly where the relevant data could be found, attaching the survey instrument and a spreadsheet with the data from the EAC's website.  Judicial Watch noted that Bucks County still had not said exactly how many registrants were removed under the Section 8(d)(2) process.  Judicial Watch asked, point blank, "how many voters were removed from Bucks County's voter rolls for failing to respond to a notice and failing to vote (or correct the registrar's records) for two general federal elections" during relevant time periods.

68.     Bucks County responded with a final letter on March 20, 2020 (attached hereto as Exhibit 6).  Bucks County made no substantive response but stated that "[t]here are answers to your questions, and you will have them in the detail you seek by the end of June."  It declared, without basis, that the Judicial Watch's March 9 letter was a "new inquiry" that justified a new 90 days for a response.  It added that, given our reliance on data "reported by the [EAC] and, possibly, the state," there was a need to "ascertain whether they reported everything Bucks County reported to either or both accurately, and if not, why not."

69.     Bucks County has never represented to Judicial Watch, in that letter or otherwise, the exact number of registrations it removed under Section 8(d)(2) during any relevant period, notwithstanding the fact that the request for this information was first made on December 11, 2019.

**Chester County**

70.    Chester County responded in a two-page letter dated December 19, 2020 (attached hereto as Exhibit 7).  Chester County also denied Judicial Watch's allegations on the basis of information from a state report showing irrelevant removals from the *active* list, and a *total* of 2084 removals (in 2018) from the inactive list, which included irrelevant subcategories such as "VOTER'S REQUEST," "VOTER'S DEATH," and "PENNDOT MOVE CONFIRM."

71.    Even if all 2084 registrants were removed in a single year by Chester County pursuant to the procedures set forth in Section 8(d)(2), that is too few removals under that provision for a county of that size.  Those registrations combined constitute only about 0.6% of the total number of registrations Chester County reported to the EAC.  The Census Bureau estimates that 14.0% of the residents of Chester County are living in a different house than the one they were living in one year previously.

72.    Chester County has never represented to Judicial Watch, in that letter or otherwise, the exact number of registrations it removed under Section 8(d)(2) during any relevant period.

73.    Chester County also gratuitously asserted that their registration rate was "less than 97%," without stating what they believed it was.

74.    Chester County sent a subsequent letter concerning Judicial Watch's request for records, dated January 21, 2020 (attached hereto as Exhibit 8).  In that response, Chester County applied Pennsylvania's public records laws to the requests, and did not treat them as requests mandated pursuant to federal law.

75.    In response to the request for the "names and addresses of all persons to whom notices described in 52 U.S.C. § 20507(d)(2) were sent, and information concerning whether or not each person responded to the notice"—which Section 8(i)(2) specifically requires states to

retain and produce—Chester County stated that it "does not maintain and is not in possession, custody or control of these  records," although they "may be available through the" Department of State.

76.     Judicial Watch never received these documents from either Chester County or from Secretary Boockvar.

**Delaware County**

77.     Delaware County never made a response of any kind to Judicial Watch's December 11, 2019 letter to it.

78.     Delaware County never represented to Judicial Watch the exact number of registrations it removed under Section 8(d)(2) during any relevant period.

79.     Delaware County never provided any documents to Judicial Watch.

**Secretary Boockvar**

80.     Secretary Boockvar sent a single, two-page letter, dated March 9, 2020 (attached hereto as Exhibit 9) responding to all of Judicial Watch's December 11, 2019 notice letters to Pennsylvania Counties.

81.     Citing the same state report as Bucks and Chester Counties, Secretary Boockvar made the same error that those counties did in their responses.  Specifically, Secretary Boockvar cited aggregate removals from the *active* list, which are irrelevant, and aggregate removals from the inactive list *for all causes*, many of which are irrelevant.

82.     Secretary Boockvar never represented the exact number of registrations removed during any relevant period from any or all of Defendant Counties under Section 8(d)(2).

83.     Secretary Boockvar's response did not provide or offer any records responsive to Judicial Watch's requests under Section 8(i).

E.   *Judicial Watch's Injury.*

84.   Judicial Watch has expended substantial resources, including staff time, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with both Commonwealth and county officials and concerned members about Defendants' failure, researching statements made by Defendants in their correspondence, and attempting to counteract their noncompliance.

85.   Judicial Watch expended resources to research claims in Defendants' correspondence concerning the numbers of registrations removed in various categories, to read and analyze the state reports and sources they cited, and to review and analyze additional data made available by the EAC.

86.   Judicial Watch was compelled to expend resources as stated above in part because none of Defendants ever represented the exact number of registrations removed during any relevant period from any or all of Defendant Counties under Section 8(d)(2), notwithstanding Judicial Watch's explicit and repeated requests that they do so.

87.   Judicial Watch was compelled to expend resources as stated above in part because Defendants' responses to Judicial Watch's requests under Section 8(i) were inadequate.

88.   The resources expended by Judicial Watch to investigate, address, research, and counteract Defendants' failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Judicial Watch's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.  Were it not for Defendants' failure to comply with their NVRA voter list maintenance obligations, Judicial Watch would have expended these same resources on its regular, programmatic activities or would not have

expended them at all.  Instead, it diverted its resources to counteract Defendants' noncompliance and to protect members' rights.

**F.**     ***Judicial Watch's Members' Injuries.***

89.     Members of Judicial Watch who are lawfully registered to vote in Bucks County, Chester County, Delaware County, and throughout Pennsylvania have a constitutional right to vote in state and federal elections, as well as a statutory right to the safeguards and protections set forth in the NVRA.

90.     Defendants' failure to comply with their NVRA voter list maintenance obligations has burdened the constitutional right to vote of Judicial Watch members who are lawfully registered to vote in Bucks County, Chester County, Delaware County, and throughout Pennsylvania by undermining their confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be nullified or diluted.

91.     Defendants' failure to satisfy their NVRA voter list maintenance obligations also infringes the statutory rights of those Judicial Watch members who are lawfully registered to vote in Bucks County, Chester County, Delaware County, and throughout Pennsylvania.  These individuals have a statutory right to vote in elections for federal office that comply with the procedures and protections required by the NVRA, including the voter list maintenance obligations set forth in Section 8.

92.     Protecting the voting rights of Judicial Watch members who are lawfully registered to vote in Bucks County, Chester County, Delaware County, and throughout Pennsylvania is germane to Judicial Watch's mission.  It also is well within the scope of the reasons why members of Judicial Watch join the organization and support its mission.

93.     Because the relief sought herein will inure to the benefit of Judicial Watch members who are lawfully registered to vote in Bucks County, Chester County, Delaware County, and throughout Pennsylvania, neither the claims asserted nor the relief requested requires the participation of individual members.

94.     In March 2020, nearly one thousand Judicial Watch members who are registered to vote throughout Pennsylvania, including in Bucks County, Chester County, and Delaware County, confirmed to Judicial Watch's staff that they were concerned about Defendants' failure to satisfy their voter list maintenance obligations under the NVRA and the resulting harm to these members' voting rights.

## COUNT I

### (Violation of Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4))

95.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

96.     Judicial Watch and its members are all persons aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. § 20510(b)(1).

97.     The December 11, 2019 letters to each county and Secretary Boockvar constituted statutory notice, pursuant to 52 U.S.C. § 20510(b)(1), of violations of Section 8(a)(4) of the NVRA.

98.     Defendants have failed to fulfill their obligations under Section 8(a)(4) of the NVRA to conduct a general program that makes a reasonable effort to cancel the registrations of registrants who are ineligible to vote in Pennsylvania's federal elections.

99.     Judicial Watch and its members have suffered, and will continue to suffer, irreparable injury as a direct result of Defendants' failure to fulfill their obligations to comply with Section 8(a)(4) of the NVRA.

100.    Plaintiff has no adequate remedy at law.

## COUNT II

### (Violations of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i) - Secretary Boockvar, Chester County Defendants, and Delaware County Defendants)

101.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

102.    The December 11, 2019 letters to Chester County, Delaware County, and Secretary Boockvar constituted statutory notice, pursuant to 52 U.S.C. § 20510(b)(1), of violations of Section 8(i) of the NVRA.

103.    The Chester County and Delaware County Defendants and Secretary Boockvar have failed to fulfill their obligations under Section 8(i) of the NVRA to make available to Plaintiff "all records" within the past two years "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."

104.    Judicial Watch and its members have suffered, and will continue to suffer, irreparable injury as a direct result of Defendants' failure to fulfill their obligations under Section 8(i) of the NVRA.

105.    Plaintiff has no adequate remedy at law.

### Prayer for Relief

WHEREFORE, Plaintiff prays for entry of a judgment:

a.      Declaring Defendants to be in violation of Section 8(a)(4) of the NVRA;

b.      Permanently enjoining Defendants from violating Section 8(a)(4) of the NVRA;

19

c.      Ordering Defendants to develop and implement a general program that makes a reasonable effort to remove the registrations of ineligible registrants from the voter rolls of Pennsylvania, Bucks County, Chester County, and Delaware County;

d.      Declaring that Defendants are in violation of Section 8(i) of the NVRA by refusing to allow Plaintiff to inspect and copy the requested records;

e.      Permanently enjoining Defendants from refusing to allow Plaintiff to inspect and copy the requested records;

f.      Ordering Defendants to pay Plaintiff's reasonable attorney's fees, including litigation expenses and costs, as allowed under 52 U.S.C. § 20510(c); and

g.      Awarding Plaintiff such other and further relief as this Court deems just and proper.


April 28, 2020                          */s/ Shawn M. Rodgers*
                                        Shawn M. Rodgers, Esq.
                                        Jonathan S. Goldstein, Esq.*
                                        GOLDSTEIN LAW PARTNERS, LLC
                                        11 Church Road
                                        Hatfield, Pennsylvania 19440
                                        srodgers@goldsteinlp.com
                                        jgoldstein@goldsteinlp.com
                                        (610) 949-0444

                                        Robert D. Popper*
                                        Eric Lee*
                                        JUDICIAL WATCH, INC.
                                        425 Third Street SW, Suite 800
                                        Washington, D.C. 20024
                                        (202) 646-5172
                                        Rpopper@judicialwatch.org
                                        Elee@judicialwatch.org

                                        T. Russell Nobile*
                                        JUDICIAL WATCH, INC.
                                        Post Office Box 6592

Gulfport, Mississippi 39506
(202) 527-9866
Rnobile@judicialwatch.org

H. Christopher Coates*
LAW OFFICE OF H. CHRISTOPHER COATES
934 Compass Point
Charleston, South Carolina 29412
(843) 609-7080
curriecoates@gmail.com

\*        *Application for admission pro
        hac vice forthcoming*