IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

|  |  |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> COMMONWEALTH OF PENNSYLVANIA, et. al, <br><br> Defendants. | CIVIL ACTION NO. <br> 1:20-cv-00708-CCC <br><br><br> _____ |

**MEMORANDUM IN SUPPORT OF MOTION OF NON-PARTIES
COMMON CAUSE PENNSYLVANIA AND LEAGUE OF WOMEN
VOTERS OF PENNSYLVANIA TO INTERVENE AS DEFENDANTS AND
FOR LEAVE TO FILE ANSWER ON THE SAME SCHEDULE AS
DEFENDANTS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT ......................................................................................................2

    I.    Background ..........................................................................................2

    II.    The Proposed Defendant-Intervenors Are Entitled to Intervene
        as a Matter of Right ..............................................................................5

        A.    Proposed Defendant-Intervenors' Motion to Intervene is
               Timely ......................................................................................6

        B.    Proposed Defendant-Intervenors Have a Substantial
               Interest in the Underlying Litigation .........................................8

        C.    Disposition of this Case is Likely to Impair The Proposed
               Defendant-Intervenors' Interests .............................................12

        D.    The Existing Defendants May Not Adequately Represent
               Proposed Defendant-Intervenors' Interests ..............................16

    III.    In the Alternative, the Court Should Grant Permissive
        Intervention ........................................................................................19

CONCLUSION ..................................................................................................22

# TABLE OF AUTHORITIES

**CASES**

*Ala. Legis. Black Caucus v. Alabama*,
  575 U.S. 254 (2015) ............................................................................11

*Alexander v. Rendell*,
  246 F.R.D. 220 (W.D. Pa. 2007) ..........................................................12

*Am. Civil Rights Union v. Phila. City Comm'rs*,
  872 F.3d 175 (3d Cir. 2017) ...................................................................1

*Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*,
  278 F.R.D. 98 (M.D. Pa. 2011) ..................................................... 21, 30

*Appleton v. Comm'r of Internal Revenue*,
  430 F. App'x 135 (3d Cir. 2011) ..........................................................28

*Arcia v. Fla. Sec'y of State*,
  772 F.3d 1335 (11th Cir. 2014) ............................................................17

*Assoc. for Fairness in Bus., Inc. v. New Jersey*,
  193 F.R.D. 228 (D.N.J. 2000) ..............................................................24

*Bellitto v. Snipes*,
  No. 16-cv-61474, 2016 WL 5118568
  (S.D. Fla. Sept. 21, 2016) ........................................................... passim

*Blunt v. Lower Merion Sch. Dist.*,
  767 F.3d 247 (3d Cir. 2014) .................................................................11

*Brody By and Through Sugzdinis v. Spang*,
  957 F.2d 1108 (3d Cir. 1992) ......................................... 16, 20, 22, 27

*Chester Water Auth. v. Susquehanna River Basin Comm'n*,
  No. 14-cv-1076, 2014 WL 3908186
  (M.D. Pa. Aug. 11, 2014) .....................................................................24

*Choike v. Slippery Rock Univ. of Pa. of State Sys. of Higher Educ.*,
  297 F. App'x 138 (3d Cir. 2008) ............................................................7

*Cmty. Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*,
    No. 09-1572, 2017 WL 1376298
    (W.D. Pa. Apr. 17, 2017).................................................................8, 10

*Common Cause Indiana v. Lawson*,
    327 F. Supp. 3d 1139 (S.D. Ind. 2018) ...............................................14

*Common Cause Indiana v. Lawson*,
    937 F.3d 944 (7th Cir. 2019).......................................................... 15, 27

*Common Cause New York v. Brehm*,
    --- F. Supp. 3d ----, 2020 WL 122589
    (S.D.N.Y. Jan. 10, 2020) ....................................................................16

*Common Cause of Pa. v. Pennsylvania*,
    05-cv-2056, 2005 WL 3136666
    (M.D. Pa. Oct. 6, 2005) ......................................................................13

*Common Cause/N.Y. v. Brehm*,
    344 F. Supp. 3d 542 (S.D.N.Y. 2018)........................................... 14, 27

*Commonwealth of Pa. v. President United States of Am.*,
    888 F.3d 52 (3d Cir. 2018) ..................................................................11

*Constand v. Castor*,
    No. 15-5799, 2016 WL 5681454
    (E.D. Pa. Oct. 3, 2016) .........................................................................6

*Deutsche Bank Nat'l Trust Co. v. Bendex*,
    No. 16-cv-0432, 2016 WL 6648175
    (M.D. Pa. Nov. 10, 2016) ....................................................................21

*Diaz v. S. Drilling Corp.*,
    427 F.2d 1118 (5th Cir. 1970).............................................................10

*Donaldson v. United States*,
    400 U.S. 517 (1971) ............................................................................11

*Harris v. Pernsley*,
    820 F.2d 592 (3d Cir. 1987) ................................................... 11, 12, 19

*Hoots v. Pennsylvania*,
    672 F.2d 1133 (3d Cir. 1982) ........................................................ 21, 26

*Hyland v. Harrison*,
No. 05-cv-00162, 2006 WL 288247 (D. Del. Feb. 7, 2006)................................28

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005) ...................................................................7

*In re Fine Paper Antitrust Litig.*,
695 F.2d 494 (3d Cir. 1982) ...................................................................7

*In re Mondelblatt*,
350 B.R. 1 (Bankr. E.D. Pa. 2006)........................................................29

*Ind. State Conf. of NAACP v. Lawson*,
326 F. Supp. 3d 646 (S.D. Ind. 2018......................................................18

*Islamic Soc'y of Basking Ridge v. Twp. of Bernards*,
681 F. App'x 110 (3d Cir. 2017)..............................................................4

*Judicial Watch v. North Carolina*,
No. 3:20-cv-211 (W.D.N.C.)..................................................................17

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir.1998) ............................................... 5, 19, 23, 30

*Kobach v. U.S. Election Assistance Comm'n*,
No. 13-cv-4095, 2013 WL 6511874
(D. Kan. Dec. 12, 2013) ........................................................................22

*League of Women Voters of Mo. v. Ashcroft*,
336 F. Supp. 3d 998 (W.D. Mo. 2018)....................................................14

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*,
419 F.3d 216 (3d Cir. 2005) ....................................................................5

*Livingston v. Berger*,
No. 19-cv-00012, 2020 WL 798015
(D.V.I. Feb. 18, 2020) ............................................................................23

*Michaels Stores, Inc. v. Castle Ridge Plaza Assocs.*,
6 F. Supp. 2d 360 (D.N.J. 1998)............................................................10

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
72 F.3d 361 (3d Cir. 1995) ..................................................... 8, 9, 12

*N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*,
 No. 16-cv-1274, 2016 WL 6581284
 (M.D.N.C. Nov. 4, 2016)..................................................................14

*Nat'l Wildlife Fed'n v. Ruckelshaus*,
 99 F.R.D. 558 (D.N.J. 1983) ...........................................................29

*Pierce v. Allegheny Cty. Bd. of Elections*,
 324 F. Supp. 2d 684 (W.D. Pa. 2003) ........................................ 12, 13

*PPL Energyplus, LLC v. Solomon*,
 No. 11-cv-00745, 2011 WL 13128622
 (D.N.J. July 19, 2011) .....................................................................24

*Prudential Prop. & Cas. Ins. Co. v. Leach*,
 No. 03-cv-6352, 2004 WL 1243763
 (E.D. Pa. June 7, 2004)......................................................................9

*Reynolds v. Sims,*
 377 U.S. 533 (1964) ........................................................................13

*Seneca Res. Corp. v. Twp. of Highland, Elk Cty., Pa.*,
 863 F.3d 245 (3d Cir. 2017) ............................................................20

*Shipyard Assocs., L.P. v. City of Hoboken*,
 No. 14-cv-1145, 2014 WL 6685467
 (D.N.J. Nov. 26, 2014) ....................................................................23

*Smith v. Pangilinan*,
 651 F.2d 1320 (9th Cir. 1981)..........................................................20

*Town of Chester v. Laroe Estates, Inc.*,
 137 S. Ct. 1645 (2017) .....................................................................11

*Trbovich v. United Mine Workers of Am.*,
 404 U.S. 528 (1972) .........................................................................21

*U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Mar. Ins. Co.*,
 239 F.R.D. 404 (W.D. Pa. 2006).........................................................9

*United States v. Alcan Aluminum, Inc.*,
 25 F.3d 1174 (3d Cir. 1994) ............................................................12

*United States v. Georgia*,
   19 F.3d 1388 (11th Cir. 1994) .................................................................6

*United States v. Territory of V.I.*,
   748 F.3d 514 (3d Cir. 2014) ......................................................... 22, 26

*Va. Voter's All., Inc. v. Leider*,
   No. 1:16-cv-394, Dkt. 25 (E.D. Va. June 17, 2016) ........................6, 15

*Verizon Pa., Inc. v. Pa. Pub. Util. Comm'n*,
   No. 08-cv-3436, 2008 WL 11374369
   (E.D. Pa. Oct. 23, 2008) ..................................................................5, 9

*Wallach v. Eaton Corp.*,
   837 F.3d 356 (3d Cir. 2016) .................................................................7

*Yock v. Dep't of Pub. Welfare of Pa.*,
   701 F.3d 938 (3d Cir. 2012) ...............................................................23

**STATUTES**

52 U.S.C. § 20507(a)(4) ...........................................................................1

52 U.S.C. § 20510(b) .............................................................................14

52 U.S.C. §§ 20507 ...............................................................................15

Fed. R. Civ. P. 24(b) ....................................................................... 19, 20

**OTHER AUTHORITIES**

Charlie Wolfson, *What could mail-in voting mean for Pennsylvania
   in the age of COVID-19?*, New Pittsburgh Courier, Apr. 11, 2020,
   https://newpittsburghcourier.com/2020/04/13/what-could-mail-in-
   voting-mean-for-pennsylvania-in-the-age-of-covid-19-seven-
   experts-weigh-in/ ............................................................................18

Dep't of Health, COVID-19 Data for Pennsylvania (last visited
   May 3, 2020), https://www.health.pa.gov/topics/disease/
   coronavirus/Pages/Cases.aspx .........................................................18

H.R. Rep. No. 103-9, at 2 (1993) ..............................................................1

*PennDOT Closes All Driver, Photo License Centers, Extends Expiration Dates and Suspends Construction in Response to COVID-19*, Mar. 16, 2020, Pennsylvania Department of Transportation, https://www.penndot.gov/pages/all-news-details.aspx?newsid=716 .................................................................18

VotesPA, Act 77 Makes Historic Changes to PA Election Code, https://www.votespa.com/About-Elections/Pages/Voting-Reforms.aspx ...........17

# INTRODUCTION

Common Cause Pennsylvania and League of Women Voters of Pennsylvania (the "proposed Defendant-Intervenors") submit this memorandum in support of their Motion to Intervene and for Leave to File on the Same Schedule as Defendants. Judicial Watch seeks an order compelling county officials and the Pennsylvania Secretary of the Commonwealth to purge more voters in Bucks, Chester, and Delaware Counties. *See* Compl. ¶¶ 53-57, 71, 98. Plaintiff bases its claim on unverified, self-generated analyses allegedly comparing voter registration data with unspecified and potentially outdated "census data." *See id.* ¶ 51. Plaintiff asserts that additional voter removals are required by the National Voter Registration Act ("NVRA")—a statute designed in part to prevent "selective purges" that might "discourage participation." *Am. Civil Rights Union v. Phila. City Comm'rs*, 872 F.3d 175, 178 n.12 (3d Cir. 2017) (quoting H.R. Rep. No. 103-9, at 2 (1993)). The NVRA only requires that election administrators conduct a "reasonable effort" to remove ineligible voters from their lists; it does not warrant the procedures that Plaintiff presumably wants election officials to adopt. *See* 52 U.S.C. § 20507(a)(4). And an order requiring election officials to engage in unnecessary measures during the COVID-19 pandemic would divert crucial resources needed to ensure safe and accessible elections.

Proposed Defendant-Intervenors are entitled to intervention as a matter of right or, in the alternative, to permissive intervention. They have a substantial interest in the outcome of the litigation due to its likely impact on their voter assistance, voter education, get out the vote, and registration-related work in Bucks, Chester, and Delaware Counties. Intervention will not delay or prejudice the rights of the existing parties. As explained below, courts have routinely granted motions to intervene from similarly situated defendant-intervenors in analogous cases. Proposed Defendant-Intervenors therefore respectfully move to intervene in this matter.

## ARGUMENT

### I.  Background

Common Cause is one of the nation's leading grassroots democracy-focused organizations and has over 1.2 million members nationwide and chapters in 35 states, including approximately 44,000 members and supporters in Pennsylvania. Since 1970, Common Cause has been dedicated to the promotion and protection of the democratic process. It works to create open, honest, and accountable government that serves the public interest; to promote equal rights, opportunity and representation for all; and to empower all people to make their voices heard in the political process. Common Cause of Pennsylvania's principal place of business is located in Harrisburg. Many of Common Cause's approximately 44,000 members

in Pennsylvania live in Bucks, Chester, and Delaware Counties. Common Cause works in the areas of voter access advocacy, election protection, voter education, advocacy, outreach, get out the vote, and grassroots mobilization around voting rights. It seeks to increase the level of voter registration and thereby increase the level of voter participation in Pennsylvania elections. Its members include registered voters at risk of being removed from the voter rolls if Plaintiff is successful in this litigation. If Plaintiff succeeds in compelling unwarranted and potentially illegal "list maintenance" procedures, Common Cause will have to divert considerable resources from its election protection, advocacy, and get out the vote efforts to educate and re-register eligible voters who are purged from the voter rolls but wish to exercise their right to participate in future elections. Common Cause has an interest in preventing the removal of eligible voters from the rolls, including thousands of its members and voters it may have assisted in navigating the registration process.

League of Women Voter of Pennsylvania ("LWV-PA") is a nonpartisan nonprofit organization that encourages the informed and active participation of citizens in government, works to increase understanding of major public policy issues, and influences public policy through education and advocacy. LWV-PA supports full voting rights for all eligible citizens and opposes efforts to build barriers to exercise this right, including the purging of eligible voters from the

rolls.  LWV-PA has approximately 2,273 members, who are at risk of being removed from the voter rolls if Plaintiff is successful in this litigation.  Many of LWV-PA's 2,273 members live in Bucks, Chester, and Delaware Counties.  LWV-PA works in the areas of voter registration, election protection, voter education, get out the vote, and grassroots mobilization around voting rights.  If Plaintiff succeeds in compelling unwarranted and potentially illegal "list maintenance" procedures, LWV-PA and its local Leagues in the affected counties will have to divert considerable resources from its election protection, advocacy, and get out the vote efforts to educate and re-register eligible voters who are purged from the voter rolls but wish to participate in future elections.  LWV-PA has an interest in preventing the removal of eligible voters from the rolls, including their members and voters they may have registered or assisted with navigating the registration process.

The unnecessary and potentially disenfranchising purges that Plaintiff requests would force proposed Defendant-Intervenors to divert precious resources to mitigate the effects of eligible voters being removed from the rolls.  And it would force them to do so in the midst of the ongoing COVID-19 pandemic, which has inevitably diminished the proposed Defendant-Intervenors' ability to reach, register, and educate new Pennsylvania voters, including voters in Bucks, Chester, and Delaware Counties.  Proposed Defendant-Intervenors therefore have a significant and protectable interest in opposing the aggressive—and potentially

unlawful—list maintenance strategies that Plaintiff would have the Court order. Indeed, they have at least as much of an interest in the outcome of the litigation as Plaintiff with respect to the relief requested in Count I.

## II. The Proposed Defendant-Intervenors Are Entitled to Intervene as a Matter of Right

A party is entitled to intervene as of right upon establishing: "(1) a timely application for leave to intervene, (2) a sufficient interest in the underlying litigation, (3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent [its] interests." *Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, 681 F. App'x 110, 111-12 (3d Cir. 2017) (quoting *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005). Courts construe these factors in accord with the "policy preference, 'as a matter of judicial economy, [of] favor[ing] intervention over subsequent collateral attacks.'" *Verizon Pa., Inc. v. Pa. Pub. Util. Comm'n*, No. 08-cv-3436, 2008 WL 11374369, at *1 (E.D. Pa. Oct. 23, 2008) (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998)). Courts regularly grant motions to intervene as of right when organizations seek to protect the right to vote in similar NVRA cases. *See, e.g., Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2-*3 (S.D. Fla. Sept. 21, 2016) (granting union's motion to intervene as of right in NVRA case seeking to compel list maintenance and noting that "as an elected official, Defendant's interests and

interpretation of the NVRA may not be aligned" with the union); *Va. Voter's All., Inc. v. Leider*, No. 1:16-cv-394, Dkt. 25 (E.D. Va. June 17, 2016) (granting League of Women Voters' motion to intervene in similar NVRA suit).

Proposed Defendant-Intervenors satisfy each of the required elements and the Court should permit their intervention as a matter of right. *See Constand v. Castor*, No. 15-5799, 2016 WL 5681454, at *3 (E.D. Pa. Oct. 3, 2016) ("Where Rule 24(a) contains mandatory language—the court 'must permit' intervention"); *see also United States v. Georgia*, 19 F.3d 1388, 1393 (11th Cir. 1994) ("Once a party establishes all the prerequisites to intervention, the district court has no discretion to deny the motion."). Proposed Defendant-Intervenors' participation is particularly necessary now; the current Defendants—public entities and public servants with limited resources—face acute challenges with respect to representing the organizations' interests given Defendants' ongoing efforts to serve the public in the midst of the COVID-19 pandemic.

### A.    Proposed Defendant-Intervenors' Motion to Intervene is Timely

In assessing whether intervention is timely, courts consider: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Wallach v. Eaton Corp*., 837 F.3d 356, 371 (3d Cir. 2016) (quoting *In re Cmty. Bank of N. Va*., 418 F.3d 277, 314 (3d Cir. 2005)). Ultimately, "[t]he timeliness of a motion to intervene is determined from all the

circumstances" and is in the court's "sound discretion." *Choike v. Slippery Rock Univ. of Pa. of State Sys. of Higher Educ.*, 297 F. App'x 138, 140 (3d Cir. 2008) (quoting *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982)). Courts "should be reluctant to dismiss a request for intervention as untimely" when sought as of right. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).

The Motion is timely. The proposed Defendant-Intervenors learned of the Complaint on or about April 29, 2020, one day after Plaintiff initiated this litigation. They filed this motion less than two weeks later. Only Plaintiff's Complaint has been filed to date, and the proposed Defendant-Intervenors understand that officials in Bucks, Chester, and Delaware Counties have not yet been served with the complaint. No hearing before this Court has been scheduled. Courts routinely hold that requests to intervene made at this preliminary stage are timely. *See*, *e.g.*, *Cmty. Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, No. 09-1572, 2017 WL 1376298, at *5 (W.D. Pa. Apr. 17, 2017) (motion timely where "discovery not yet closed [and] no schedule for summary judgment motions or trial [was] set . . . . [g]iven the relatively early stage in the proceedings"); *Verizon Pa., Inc.*, 2008 WL 11374369, at *1 (granting intervention sought in litigation's "early stages," after just pleadings filed); *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Mar. Ins. Co.*, 239 F.R.D. 404, 412 n.9 (W.D.

Pa. 2006) (finding "no dispute" over timeliness where "there have been no filings beyond the initial pleadings"); *Prudential Prop. & Cas. Ins. Co. v. Leach*, No. 03-cv-6352, 2004 WL 1243763, at *1 n.1 (E.D. Pa. June 7, 2004) (granting motion "made at an early stage in the litigation").

Nor will the proposed Defendant-Intervenors' prompt intervention at this juncture delay the action or harm the parties. "[T]he stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties." *Mountain Top Condo. Ass'n*, 72 F.3d at 369-70. Where "'few legally significant events have occurred,'" courts have generally "not found prejudice." *Cmty. Vocational Schs. of Pittsburgh*, 2017 WL 1376298, at *5 (quoting *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970)). Here, no significant events have occurred beyond the filing of the Complaint. The parties cannot plausibly argue that granting intervention would cause them prejudice. *See Michaels Stores, Inc. v. Castle Ridge Plaza Assocs.*, 6 F. Supp. 2d 360, 364 (D.N.J. 1998) ("Because the motion was filed at such an early stage in the litigation, the original parties to the action cannot have suffered prejudice as a result.").

### B. Proposed Defendant-Intervenors Have a Substantial Interest in the Underlying Litigation

The proposed Defendant-Intervenors have an interest in the litigation that is

"significantly protectable."[1] *Donaldson v. United States*, 400 U.S. 517, 531

(1971).  For purposes of Rule 24(a)(2), such an interest must be "legal [and]

distinguished from interests of a general and indefinite character," *Harris v.

Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987), and "belong[] to" the proposed

intervenor.  *United States v. Alcan Aluminum, Inc*., 25 F.3d 1174, 1185 (3d Cir.

1994).  An "applicant must demonstrate that there is a tangible threat to [such] a

legally cognizable interest to have the right to intervene." *Mountain Top Condo.

Ass'n*, 72 F.3d at 366 (quoting *Harris*, 820 F.2d at 601)).  Separately, courts also

"have found that an applicant has a sufficient interest to intervene when the action

will have a significant *stare decisis* effect on the applicant's rights." *Alexander v.

Rendell*, 246 F.R.D. 220, 230 (W.D. Pa. 2007) (quoting *Harris*, 820 F.2d at 601).

The proposed Defendant-Intervenors have a substantial interest in protecting

their members' voter registrations, ensuring eligible voters remain registered, and

in preserving the fruits of their own registration-related and voter protection-

related efforts.  These are legally cognizable and protectable interests.  "The right

---

[1] The proposed Defendant-Intervenors have Article III standing to participate in the litigation as a defendant, whether on behalf of their members or in their own right. *See Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 269 (2015); *Blunt v. Lower Merion Sch. Dist*., 767 F.3d 247, 285 (3d Cir. 2014).  In any event, they would not have to separately establish Article III standing if Defendants seek the same outcome and ask the Court to dismiss Plaintiff's NVRA claims.  *See Town of Chester v. Laroe Estates, Inc*., 137 S. Ct. 1645, 1651 (2017); *Commonwealth of Pa. v. President United States of Am*., 888 F.3d 52, 57 n.2 (3d Cir. 2018).

of qualified electors to vote . . . is recognized as a fundamental right." *Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684, 694–95 (W.D. Pa. 2003). It is "cherished in our nation because it 'is preservative of other basic civil and political rights.'" *Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 562 (1964)). The right "extends to all phases of the voting process." *Id.* The proposed Defendant-Intervenors have brought other litigation protecting these rights. *See*, *e.g*., *League of Women Voters of Pa. v. Pennsylvania*, 175 A.3d 282, 284 (Pa. 2018) (invalidating 2011 congressional map as a partisan gerrymander); *Applewhite v. Com. of Pa.*, No. 330 M.D. 2012, 2014 WL 184988 (Pa. Commw. Ct. Jan. 17, 2014) (enjoining strict photo identification requirement); *see also Common Cause of Pa. v. Pennsylvania*, 05-cv-2056, 2005 WL 3136666, Dkt. 1 (M.D. Pa. Oct. 6, 2005) (challenging statute raising pay of legislators and other elected officials).

Federal courts routinely consider NVRA claims brought by organizational plaintiffs similarly situated to the proposed Defendant-Intervenors here based on comparable asserted interests. *See*, *e.g*., *Common Cause/N.Y. v. Brehm*, 344 F. Supp. 3d 542, 558-59 (S.D.N.Y. 2018) (holding Common Cause stated plausible NVRA claim challenging removal of inactive voters from voter lists); *League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998, 1001 (W.D. Mo. 2018) (enjoining election officers' failure to provide certain registration services); *Common Cause Indiana v. Lawson*, 327 F. Supp. 3d 1139, 1156 (S.D. Ind. 2018)

(enjoining list maintenance program under NVRA); *N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*, No. 16-cv-1274, 2016 WL 6581284, at *11 (M.D.N.C. Nov. 4, 2016) (enjoining "mass cancelations" of voter registrations). By extension, courts have allowed organizations to intervene in cases like this one so that they may oppose efforts to compel jurisdictions to aggressively purge their voter rolls. *See*, *e.g.*, *Bellitto*, 2016 WL 5118568, at *2-*3 (granting union's intervention where "its interests and the interests of its members would be threatened by the court-ordered 'voter list maintenance' sought by Plaintiffs"); *Va. Voter's All., Inc. v. Leider*, No. 1:16-cv-394, Dkt. 25 (E.D. Va. June 17, 2016) (granting League of Women Voters of Virginia's motion to intervene in NVRA suit seeking to compel list maintenance).

Each election cycle, the proposed Defendant-Intervenors expend considerable resources towards ensuring that eligible voters in Bucks, Chester, and Delaware Counties are able to exercise their right to vote. Common Cause and the LWV-PA are committed to eliminating barriers to voting and increasing civic engagement, especially among vulnerable communities who have been traditionally disenfranchised. Helping voters navigate the registration process, voter access advocacy, voter education, and getting out the vote are mission-critical activities of both proposed Defendant-Intervenors that have been considered by courts in NVRA cases. *See*, *e.g.*, *Common Cause Indiana v.*

*Lawson*, 937 F.3d 944, 951-53 (7th Cir. 2019) (holding that Common Cause has standing in NVRA case); *Common Cause New York v. Brehm*, --- F. Supp. 3d ----, 2020 WL 122589, at *20-21 (S.D.N.Y. Jan. 10, 2020) (same). Proposed Defendant-Intervenors' interests in ensuring that all eligible voters are registered and that they remain on registration lists are concrete, protectable, and substantial.

## C. Disposition of this Case is Likely to Impair The Proposed Defendant-Intervenors' Interests

Plaintiff's requested relief risks jeopardizing proposed Defendant-Intervenors' interests. *See Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992) ("[o]nce an applicant for intervention has established that he or she possesses a sufficient legal interest in the underlying dispute, the applicant must also show that this claim is in jeopardy in the lawsuit"). Plaintiff requests an order that could have the effect of requiring Bucks, Chester, and Delaware Counties to conduct unwarranted voter purges, above and beyond the reasonable voter list maintenance procedures they already undertake pursuant to the NVRA and state law. And while it claims to only seek to compel "reasonable" list maintenance efforts, the Complaint nowhere specifies what those efforts purportedly must include. In similar cases filed in other jurisdictions, however, Judicial Watch has demanded overbroad practices that would result in the removal – and potential disenfranchisement – of eligible voters. *See*, *e.g.*, *Judicial Watch v. North Carolina*, No. 3:20-cv-211 (W.D.N.C.). Similarly, the American Civil

Rights Union recently sought to compel officials to use purge methods that had already been barred by courts because they are inaccurate. *Compare Bellitto*, 2018 U.S. Dist. LEXIS 103617, at \*38-\*39 (Mar. 30, 2018), *with Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014).

The order Plaintiff seeks threatens the rights of the proposed Defendant-Intervenors' members, voters in the communities whose interests they serve, and voters they have expended time and resources to assist with the registration process. *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019) ("a maximum effort at purging voter lists could minimize the number of ineligible voters, but those same efforts might also remove eligible voters"). Additional purges would impact the proposed Defendant-Intervenors' interests in maintaining their registration-related efforts and protecting their members' registrations, and thereby threaten their mission. And those purges risk forcing the proposed Defendant-Intervenors to devote substantial resources to address these effects through public education, voter registration, and Election Day monitoring. Plaintiff alleges that it seeks to ensure election integrity. But the removal and disenfranchisement of eligible voters is a more direct threat to election integrity than the alleged failure to take "reasonable" steps to remove voters, particularly absent any evidence of voter fraud.

These concerns are amplified amongst underrepresented minority communities in Bucks, Chester, and Delaware Counties, which the proposed Defendant-Intervenors are committed to serve. "Historically . . . throughout the country, voter registration and election practices have interfered with the ability of minority, low-income, and other traditionally disenfranchised communities to participate in democracy." *Ind. State Conf. of NAACP v. Lawson*, 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018). The proposed Defendant-Intervenors have worked hard to remedy those practices, in part, by ensuring that their registration-related and education-related efforts reach underserved minority communities. The organizations' shared interest in ensuring that Plaintiff's proposed "list maintenance" does not harm those communities is significant.

This lawsuit also impairs the proposed Defendant-Intervenors' interests by threatening to create an adverse *stare decisis* effect. *See Harris*, 820 F.2d at 601. The NVRA provides private parties a right of action to enforce its terms. 52 U.S.C. § 20510(b). The proposed Defendant-Intervenors would sue if Bucks, Chester, and Delaware Counties undertook, on their own, the list maintenance practices that Plaintiff would potentially have them adopt as a result of this litigation. *See* Compl. ¶ c (Prayer for Relief). But the proposed Defendant-Intervenors' opportunity to challenge those same procedures would be foreclosed if the counties are instead ordered to implement them as a consequence of this

litigation. "[A] contrary determination in the present case" to what the proposed Defendant-Intervenors would argue before a court in a standalone NVRA case "would have a *stare decisis* effect on [that] litigation, leaving the proposed intervenors without legal recourse to protect their interest." *Kleissler*, 157 F.3d at 980 (Becker, C.J., concurring). This motion thus presents "appropriate circumstances" in which "*stare decisis* . . . suppl[ies] the requisite practical impairment warranting intervention of right." *Smith v. Pangilinan*, 651 F.2d 1320, 1325 (9th Cir. 1981).

The proposed Defendant-Intervenors' rights stand to "be affected by a proposed remedy" in this case. *Seneca Res. Corp. v. Twp. of Highland, Elk Cty., Pa.*, 863 F.3d 245, 257 (3d Cir. 2017) (quoting *Brody*, 957 F.2d at 1123)). For instance, the present action could result in a court-approved consent decree requiring Defendants to adopt list maintenance procedures that would adversely impact the rights of eligible voters, including the proposed Defendant-Intervenors' members. This would directly imperil the organizations' legal interests; the NVRA prohibits removal of registered voters except in specific, enumerated circumstances and in accordance with required safeguards. *See* 52 U.S.C. §§ 20507(a)(3)-(4), (b)-(d). Even if the proposed Defendant-Intervenors later attempted to bring a separate NVRA suit, that result would thwart "the policy preference . . . favor[ing] intervention over subsequent collateral attacks.'"

*Deutsche Bank Nat'l Trust Co. v. Bendex*, No. 16-cv-0432, 2016 WL 6648175, at

\*3 (M.D. Pa. Nov. 10, 2016).

### D. The Existing Defendants May Not Adequately Represent Proposed Defendant-Intervenors' Interests

A proposed intervenor must prove that its interest is not adequately

represented by the existing parties in the litigation, but this burden is "minimal."

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Hoots v.*

*Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982). It is sufficient to show that

"representation of [the] interest may be inadequate." *Trbovich*, 404 U.S. at 538

n.10 (emphasis added) (internal quotation marks omitted). "The possibility that the

interests of the applicant and the parties may diverge 'need not be great.'" *Am.*

*Farm Bureau Fed'n v. Envtl. Prot. Agency*, 278 F.R.D. 98, 110 (M.D. Pa. 2011)

(quotations omitted). A proposed intervenor need only show that "'although [its]

interests are similar to those of a party, they diverge sufficiently that the existing

party cannot devote [them] proper attention.'" *United States v. Territory of V.I.*,

748 F.3d 514, 519–20 (3d Cir. 2014) (quoting *Brody*, 957 F.2d at 1123).

The proposed Defendant-Intervenors easily meet this standard. Their

interests not only oppose those of Plaintiff, but are also likely to significantly

diverge from those of the Pennsylvania Secretary of Commonwealth and the

named officials in Bucks, Chester, and Delaware Counties. While Defendants are

responsible for the general management and accuracy of the counties' voter

registration lists, *see* Compl. ¶¶ 8, 10, 12-14, 16-18, the proposed Defendant-Intervenors have distinct and particular interests in ensuring that eligible, registered voters remain on the rolls and in the effectiveness of their own voter registration efforts. *See Bellitto*, 2016 WL 5118568, at \*2; *see also Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095, 2013 WL 6511874, at \*4 (D. Kan. Dec. 12, 2013) (voting rights organization's interests could reasonably diverge from those of government defendants who have "a duty to represent the public interest [and] may not adequately represent Applicants' specific interests").

The Third Circuit has applied the same reasoning. *See Kleissler*, 157 F.3d at 972 ("[W]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing inadequacy of representation] is comparatively light."); *see also Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 958-59 (3d Cir. 2012). Accordingly, district courts in this circuit routinely conclude that governmental entities will not adequately represent "more parochial" private interests. *See*, *e.g.*, *Livingston v. Berger*, No. 19-cv-00012, 2020 WL 798015, at \*4–\*5 (D.V.I. Feb. 18, 2020); *Shipyard Assocs., L.P. v. City of Hoboken*, No. 14-cv-1145, 2014 WL 6685467, at \*4 (D.N.J. Nov. 26, 2014); *Chester Water Auth. v. Susquehanna River Basin Comm'n*, No. 14-cv-1076, 2014 WL 3908186, at \*5 (M.D. Pa. Aug. 11, 2014).

The potential for diverging priorities and incentives is particularly significant given circumstances unique to Pennsylvania in 2020. Defendants are public officials tasked with broad responsibilities who are currently implementing vast changes to election-related practices and procedures required by the Pennsylvania Legislature's enactment of Act 77 of 2019, "an historic election reform bill that makes the most significant improvements to Pennsylvania's elections in more than 80 years."[2] They also currently confront a public health crisis that has affected Bucks, Chester, and Delaware Counties. As of May 3, 2020, the three counties accounted for 18% of all reported COVID-19 cases and 25% of all virus-related deaths in the State.[3] The pandemic has already caused increased burdens on election administrators in Pennsylvania,[4] and forced closures

_____

[2] VotesPA, Act 77 Makes Historic Changes to PA Election Code, https://www.votespa.com/About-Elections/Pages/Voting-Reforms.aspx.

[3] As of May 3, 2020, Bucks County reported 3,286 diagnosed COVID-19 cases and 240 deaths; Chester County reported 1,502 diagnosed cases and 117 deaths; and Delaware accounted for 4,113 diagnosed cases and 255 virus-related deaths. *See* Dep't of Health, COVID-19 Data for Pennsylvania (last visited May 3, 2020), https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx. Total cases for Pennsylvania were 49,267, 2,444 of which had resulted in loss of life. *Id.*

[4] *See*, *e.g*, Charlie Wolfson, *What could mail-in voting mean for Pennsylvania in the age of COVID-19?*, New Pittsburgh Courier, Apr. 11, 2020, https://newpittsburghcourier.com/2020/04/13/what-could-mail-in-voting-mean-for-pennsylvania-in-the-age-of-covid-19-seven-experts-weigh-in/.

of registration locations like DMVs.[5]  These competing concerns will understandably consume Defendants' resources and attention in ways that make it exceedingly likely "the existing party cannot devote [intervenor's interests] proper attention."  *Territory of V.I.*, 748 F.3d at 519-20,

## III.    <u>In the Alternative, the Court Should Grant Permissive Intervention</u>

Should the Court decline to grant intervention as of right, it should use its broad discretion to grant permissive intervention.  *See Hoots*, 672 F.2d at 1136.  A court may grant permissive intervention when the motion to intervene is timely and "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).  The decision whether or not to do so is "highly discretionary."  *Brody*, 957 F.2d at 1115.

The proposed Defendant-Intervenors intend to contest Plaintiff's claims that Bucks, Chester, and Delaware Counties have failed to comply with the NVRA and that federal law requires those counties to cull thousands of additional registered voters to bring their numbers down to a level that Plaintiff deems acceptable. Those allegations are at the heart of this litigation: the disputed issues of fact and law will be the same if the proposed Defendant-Intervenors are permitted to

---

[5] *PennDOT Closes All Driver, Photo License Centers, Extends Expiration Dates and Suspends Construction in Response to COVID-19*, Mar. 16, 2020, Pennsylvania Department of Transportation, https://www.penndot.gov/pages/all-news-details.aspx?newsid=716.

intervene. Indeed, while the organizations expect to present a distinct perspective on the legal and factual issues before the Court, their views will likely complement or amplify Defendants' arguments against Plaintiff's claims. For example, the proposed Defendant-Intervenors, their affiliates in sister states, and their counsel have litigated numerous cases arising under the NVRA and have experience analyzing claims such as those asserted here. *See*, *e.g*., *Common Cause/N.Y.*, 344 F. Supp. 3d at 558-59; *Lawson*, 937 F.3d at 951-53; *Bellitto*, 935 F.3d at 1196. The proposed Defendant-Intervenors will draw on this experience. The organizations therefore satisfy the baseline commonality requirement of Rule 24(b)(2). *See Appleton v. Comm'r of Internal Revenue*, 430 F. App'x 135, 138-39 (3d Cir. 2011) (Tax Court abused its discretion by denying permissive intervention and explaining that "identity of interest should only be a bar to intervention when it [causes] 'undue delay' or 'prejudice'"); *Hyland v. Harrison*, No. 05-cv-00162, 2006 WL 288247, at *6 (D. Del. Feb. 7, 2006) (permissive intervention appropriate because applicant's motion "seeks substantially the same relief[] and raises similar legal issues"). Granting intervention here would not delay or prejudice any party. *Compare* Section II(A), *supra*, *with* Fed. R. Civ. P. 24(b).

Permissive intervention is particularly appropriate where, as here, an intervenor may meaningfully contribute to the development of the factual or legal issues in dispute. *See*, *e.g*., *Nat'l Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558,

561 (D.N.J. 1983) ("Other relevant factors [to Rule 24(b) inquiry] include . . . whether parties seeking intervention will significantly contribute to the full development of the underlying factual issues in the action and to just and equitable adjudication of the legal questions presented."). For example, in a case raising similar claims, the court relied heavily on expert testimony put on by a defendant-intervenor in evaluating the plaintiff's claims—evidence the governmental defendant was ill-equipped to marshal on her own. *See Bellitto*, 935 F.3d at 1208 (observing "[t]he district court . . . explicitly credited [intervenor's] data expert, and discounted the testimony of [the plaintiff's] expert, and concluded that the registration rates presented by [it] were inaccurate").

The proposed Defendant-Intervenors have experience engaging in voter protection, educating voters, and assisting voters with navigating the registration process in Pennsylvania, including in Bucks, Chester, and Delaware Counties. The organizations are well-placed to advocate for the rights of voters in these counties, particularly their members and the traditionally marginalized communities they serve. By contrast, Defendants' defense will inevitably reflect various interests, some of which likely diverge from those of the proposed Defendant-Intervenors. The Third Circuit has recognized that intervention is proper in comparable circumstances. *See Kleissler*, 157 F.3d at 973-74 (noting "straightforward business

interests asserted by intervenors" not protected by government agency representing "numerous . . . interests"); *see also Am. Farm Bureau Fed'n*, 278 F.R.D. at 110-11.

## CONCLUSION

The Court should grant the proposed Defendant-Intervenors' Motion to Intervene as of right or, in the alternative, for permissive intervention, and for Leave to File on the Same Schedule as Defendants.

Dated:     May 11, 2020                    Respectfully submitted,

Adriel I. Cepeda Derieux*              /s/ Witold J. Walczak
Sophia Lin Lakin*                      Witold J. Walczak
Dale E. Ho*                            Sara J. Rose
American Civil Liberties Union         American Civil Liberties Union
Foundation                             of Pennsylvania
125 Broad Street, 18th Floor           P.O. Box 23058
New York, NY 10004                     Pittsburgh, PA 15222
Tel.: (212) 549-2500                   Tel.: (412) 681-7736
acepedaderieux@aclu.org                vwalczak@aclupa.org
dho@aclu.org

Ezra Rosenberg*                        William T. Russell, Jr.*
John Powers*                           Shannon K. McGovern*
Jacob Conarck*                         Daniel Owsley*
Lawyers' Committee for Civil Rights    David Elbaum*
Under Law                              Simpson Thacher & Bartlett LLP
1500 K Street, N.W., Suite 900         425 Lexington Avenue
Washington, D.C.  20005                New York, NY 10017
Tel: (202) 662-8300                    Tel: (212) 455-3979
erosenberg@lawyerscommittee.org        wrussell@stblaw.com
jpowers@lawyerscommittee.org           smcgovern@stblaw.com

*Pro hac vice application to be filed  Attorneys for Proposed Defendant-
                                       Intervenors

## CERTIFICATE OF WORD COUNT

I HEREBY CERTIFY on this 11th day of May that the above memorandum contains fewer than 5000 words (4899).

/s/ *Witold J. Walczak*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, the foregoing memorandum of law in support of motion to intervene was filed electronically and served on plaintiffs' counsel of record via the ECF system of the U.S. District Court for the Middle District of Pennsylvania; and via e-mail on the following counsel for defendants: Nicole Boland (Assistant Attorney General, Commonwealth of Pennsylvania), Kristen Mayock (Deputy Solicitor, Chester County), Joseph Khan (Solicitor, Bucks County) and William Martin (Solicitor, Delaware County).

.

Dated:      May 11, 2020           */s/ Witold J. Walczak*