Exhibit 1

Complaint,
Judicial Watch, Inc. v. North Carolina, et al.
Case No. 3:20-cv-211 (W.D.N.C. 2020)

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NORTH CAROLINA

CHARLOTTE DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>               Plaintiff,<br><br>v.<br><br>NORTH CAROLINA; THE NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her capacity as the Executive Director of the North Carolina State Board of Elections; THE MECKLENBURG COUNTY BOARD OF ELECTIONS; MICHAEL G. DICKERSON, in his official capacity as the Director of Elections for Mecklenburg County; CAROL HILL WILLIAMS, in her capacity as the Chair of the Mecklenburg County Board of Elections; THE GUILFORD COUNTY BOARD OF ELECTIONS; CHARLIE COLLICUTT, in his official capacity as Director of Elections for Guilford County; and HORACE KIMEL, JR., in his capacity as Chair of the Guilford County Board of Elections.<br><br>               Defendants. | Civil Action No. 3:20-cv- 211 |

## **COMPLAINT**

Plaintiff Judicial Watch, Inc., by and through counsel, files this Complaint for Declaratory and Injunctive Relief against the State of North Carolina; the North Carolina State Board of Elections; Karen Brinson Bell, in her capacity as the Executive Director of the State Board of Elections; the Mecklenburg County Board of Elections; Michael G. Dickerson, in his capacity as the Director of Elections for Mecklenburg County; Carol Hill Williams, in her capacity as Chair of the Mecklenburg County Board of Elections; the Guilford County Board of Elections; Charlie

Collicutt, in his official capacity as Director of Elections for Guilford County; and Horace Kimel, Jr., in his capacity as Chair of the Guilford County Board of Elections:

1.     Plaintiff seeks declaratory and injunctive relief to compel the State of North Carolina, the North Carolina State Board of Elections, the Mecklenburg County Board of Elections, and the Guilford County Board of Elections to comply with their voter list maintenance obligations and their record production obligations under Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States and under 52 U.S.C. § 20510(b)(2), as the action seeks injunctive and declaratory relief under the NVRA.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a defendant resides in this district and all defendants reside in North Carolina, and because a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

## PARTIES

4.     Plaintiff Judicial Watch, Inc. ("Judicial Watch") is a not-for-profit, educational organization incorporated under the laws of the District of Columbia and headquartered at 425 Third Street SW, Suite 800, Washington, D.C. 20024.

5.     Defendant State of North Carolina is a "State" subject to the requirements of the NVRA.  52 U.S.C. §§ 20502(4), 20503.

6.     Defendant North Carolina State Board of Elections (the "State Board") is an independent state agency created under the laws of the State of North Carolina.  It is responsible for the administration of voter registration in North Carolina and has the power to appoint and

remove members of county boards of elections, to enforce state election laws, and to conduct voter list maintenance.  N.C. Gen. Stat. §§ 163-19, 22, 28, 82.14(a) and (e).

7.      Defendant Karen Brinson Bell is the Executive Director of the North Carolina State Board of Elections and the Chief State Election Official of the State of North Carolina, responsible for coordinating the State's compliance with the NVRA.  N.C. Gen. Stat. § 163-82.2; 52 U.S.C. § 20509.  She is sued in her official capacity.

8.      Defendant Mecklenburg County Board of Elections ("Mecklenburg Board") is a statutorily created board responsible for registering voters and maintaining voter registration records within the County.  N.C. Gen. Stat. §§ 163-82.11(d), 82.14.

9.      Defendant Michael G. Dickerson is the Mecklenburg County Director of Elections. He is appointed by the Executive Director of the State Board and is responsible for all duties delegated to the county board of elections.  N.C. Gen. Stat. § 163-35(a) and (b).  He is sued in his official capacity.

10.      Defendant Carol Hill Williams chairs the Mecklenburg County Board of Elections. She is sued in her official capacity.

11.      Defendant Guilford County Board of Elections ("Guilford Board") is a statutorily created board responsible for registering voters and maintaining voter registration records within the County.  N.C. Gen. Stat. §§ 163-82.11(d), 82.14.

12.      Defendant Charlie Collicutt is the Guilford County Director of Elections.  He is appointed by the Executive Director of the State Board and is responsible for all duties delegated to the county board of elections. N.C. Gen. Stat. § 163-35(a) and (b).  He is sued in his official capacity.

- 3 -

13.     Defendant Horace (Jim) Kimel, Jr. chairs the Guilford County Board of Elections. He is sued in his official capacity.

## STATUTORY BACKGROUND

14.     The NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).

15.     Under Section 8 of the NVRA, a voter becomes "ineligible," and subject to removal from a jurisdiction's voter rolls, when the voter asks to be removed from the rolls, does not respond to an address inquiry and fails to vote during a specified statutory period, dies, or is disqualified from voting under state law because of a criminal conviction or mental incapacity; or when an erroneous registration record is corrected.  52 U.S.C. § 20507(a)(3), (4)(A), 4(B), (c)(2)(B)(ii).

16.     The NVRA provides that a voter may be removed from a jurisdiction's voter rolls if the voter either (1) confirms in writing that he or she has moved outside the jurisdiction or (2) fails to respond to an address confirmation notice, then fails to vote during a statutory waiting period extending from the date of the notice through the next two general federal elections.  52 U.S.C. § 20507(d)(1).  Federal law makes this removal mandatory.  *Id*. § 20507(d)(3); 52 U.S.C. § 21083(a)(4)(A).

17.     North Carolina law similarly provides that the "county board shall remove a registrant from its list" of voters if the registrant either confirms in writing that he or she has moved outside the jurisdiction or "[f]ails to respond to a confirmation mailing sent by the county board" and "does not vote or appear to vote in an election beginning on the date of the notice and ending on the day after the date of the second" general federal election after the date of the notice.  N.C. Gen. Stat. § 163-82.14(d).

- 4 -

18.     Federal regulations (*e.g.*, 11 C.F.R. § 9428.7) and North Carolina's list-maintenance-related documents refer to voter registrations as "inactive" when a registrant has failed to respond to a notice and will be subject to removal if the registrant then fails to vote in the next two general federal elections.

19.     Under both the NVRA and North Carolina law, voters whose registrations are inactive may still vote on election day.  52 U.S.C. § 20507(d)(2)(A); N.C. Gen. Stat. §§ 163-82.14(d)(3), 163-82.15(f).

20.     Section 8(i) of the NVRA grants the public the right to request information concerning voter list maintenance.  It provides that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection" and copying "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i).

21.     Though not purporting to be an exhaustive list, Section 8(i)(2) provides two specific examples of responsive records: "The records maintained . . . shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made."  52 U.S.C. § 20507(i)(2), referring to 52 U.S.C. § 20507(d)(2).

## FACTUAL BACKGROUND

**A.**     ***Judicial Watch's Background, Mission, and Membership.***

22.     Judicial Watch's mission is to promote transparency, integrity, and accountability in government and fidelity to the rule of law.  The organization, which has been in existence since 1994, fulfills its mission through public records requests and litigation, among other means.

23.     Judicial Watch is supported in its mission by hundreds of thousands of individuals across the nation.  An individual becomes a member of Judicial Watch by making a financial contribution, in any amount, to the organization.  Members' financial contributions are by far the single most important source of income to Judicial Watch and provide the means by which the organization finances its activities in support of its mission.  Judicial Watch in turn represents the interests of its members.

24.     Over the past several years, Judicial Watch's members have become increasingly concerned about the state of the nation's voter registration rolls, including whether state and local officials are complying with the NVRA's voter list maintenance obligations.

25.     Specifically, members are concerned that failing to comply with the NVRA's voter list maintenance obligations undermines the integrity of elections by increasing the opportunity for improper voting, out-of-jurisdiction voting, double voting, and fraudulent voting, among other concerns.

26.     In response to this concern, Judicial Watch commenced a nationwide program to monitor state and local election officials' compliance with their NVRA list maintenance obligations.  As part of this program, Judicial Watch utilizes NVRA Section 8(i) and public records laws to request and receive records from jurisdictions across the nation about their voter list maintenance efforts.  It also obtains and analyzes voting and population data from the U.S. Election

- 6 -

Assistance Commission ("EAC") and U.S. Census Bureau.  It then analyzes these records and data and publishes the results of its findings to its members and the general public.

**B.**   ***Judicial Watch's Unanswered Request for Documents in April 2019.***

27.      On April 12, 2019, Judicial Watch sent letters containing identical requests for records pursuant to Section 8(i) to officials in both Mecklenburg County and Guilford County. Both letters were copied to the Executive Director of the State Board of Elections (at the time Kim Westbrook Strach), who, as the State's chief election official under both State and federal law, was responsible for coordinating the State's compliance with the NVRA.

28.      Among other things, Judicial Watch's April 2019 letters specifically requested the records Section 8(i)(2) identifies as records that must be made available for public inspection and copying, namely, lists of those to whom notices described in 52 U.S.C. § 20507(d)(2) are sent, and information concerning responses to those notices.

29.      The letters also contained the following notice: "If you do not produce these records within 15 days, or if you fail to otherwise advise us within that time that you are making them available to us at specified times and locations, you will be deemed to be in violation of the NVRA."

30.      In several follow-up emails, Judicial Watch specifically asked about the Section 8(i)(2) records it had requested.

31.      While the State Board of Elections responded to the requests on behalf of both Mecklenburg County and Guilford County, neither the counties nor the State Board of Elections ever provided the Section 8(i)(2) records Judicial Watch requested.

*C.*      ***The Abnormally High Registration Rates in Defendants' Jurisdictions.***

32.      In June of each odd-numbered year, the EAC is required by law to release a report regarding state voter registration practices.  52 U.S.C. § 20508(a)(3).

33.      States are required by federal regulations to provide various kinds of registration data to the EAC for use in this biennial report.  This data must include "the total number of registered voters statewide, including both 'active' and 'inactive' voters if such a distinction is made by the state," for the last two general federal elections.  11 C.F.R. § 9428.7(b)(1), (2).

34.      In June 2019, the EAC published its most recent report, entitled ELECTION ADMINISTRATION AND VOTING SURVEY, 2018 COMPREHENSIVE REPORT, A REPORT TO THE 116TH CONGRESS.  The report is available at https://www.eac.gov/research-and-data/studies-and-reports by clicking on "2018 Election Administration and Voting Survey Report."   The EAC also published datasets containing the underlying registration data provided by states and counties. These datasets are available at https://www.eac.gov/research-and-data/datasets-codebooks-and-surveys.

35.      In August 2019, Judicial Watch undertook an analysis of EAC data and compared it to the census data at that time to determine the adult citizen registration rates for United States counties.

36.      When the number of voter registrations in a jurisdiction is close to, at, or above the number of citizens over the age of 18 residing in that jurisdiction, it is an indication that that jurisdiction is not taking the steps required by law to remove ineligible registrations from the voter rolls.

37.    Judicial Watch's analysis showed that, at the time of the EAC report, a significant proportion of North Carolina's 100 counties had registration rates close to, at, or above 100% of their age-eligible citizenry.

38.    Judicial Watch's analysis also showed that, at the time of the EAC report, Mecklenburg County and Guilford County each had registration rates above 100% of their age-eligible citizenry.

39.    Judicial Watch's analysis also showed that, at the time of the EAC report, the entire State of North Carolina had a registration rate close to 100% of its age-eligible citizenry.

**D.    *The Abnormally High Number of Inactive Registrations in Defendants' Jurisdictions.***

40.    Removing registrations that have been inactive for two general federal elections is a necessary part of any effort to comply with the NVRA's mandate to conduct a general program that makes a reasonable effort to remove the registrations of ineligible registrants.

41.    Because voters with inactive registrations may still vote on election day, inactive registrations are properly counted as part of a county's voter registration list.

42.    Having a high number of inactive registrations is an indication that a state or jurisdiction is not removing inactive registrations after two general federal elections as the NVRA requires.

43.    Having a high number of inactive registrations is consistent with and helps explain high registration rates.

44.    Likewise, having inactive registrations that have not shown any voting activity for extended periods of time also indicates that a state or jurisdiction is not removing ineligible registrants as required by the NVRA.

- 9 -

45.     Data supplied by the states and published by the EAC in June 2019 showed that the numbers of inactive registrations in Mecklenburg County and Guilford County and throughout North Carolina were abnormally high.   The data concerning North Carolina—which North Carolina itself provided to the EAC—revealed:

  a.     About 15.5% of Mecklenburg County's voter registrations were inactive.

  b.     About 19% of Guilford County's voter registrations were inactive.

  c.     In 19 North Carolina counties, 20% or more of the registrations were inactive.  In three counties 25% or more were inactive.

  d.     Statewide, about 17% of North Carolina's registrations were inactive, which makes North Carolina's inactive rate the fifth worst (highest) of the 40 states for which data was available.

  e.     By way of comparison, the EAC reported that the median state inactive rate was 9.6%.

46.     At the time of the EAC report, the percentages of inactive registrations in Mecklenburg County, Guilford County, and North Carolina were high in comparison to the percentages of inactive registrations in other counties and states.

**E.     *Plaintiff's Notice to Defendants That They are Failing to Comply with the NVRA.***

47.     After learning of the abnormally high registration and inactive registration rates in Mecklenburg County and Guilford County, Judicial Watch concluded that Defendants were not complying with their NVRA list maintenance obligations.  Accordingly, Judicial Watch undertook substantial efforts to counteract these failures.

48.     On December 11, 2019, Judicial Watch wrote to Mecklenburg County Director of Elections Dickerson, the State Board of Elections, and Executive Director Bell informing them

- 10 -

that Judicial Watch believed Defendants were in violation of Section 8(a)(4) with respect to Mecklenburg County.  The letter, attached hereto as Exhibit 1, referenced Mecklenburg County's high registration rates, its high percentage of inactive registrations, and its failure to remove inactive registrations.

49.     That same day, Judicial Watch also wrote to Guilford County Director of Elections Collicutt, the State Board of Elections, and Executive Director Bell informing them that Judicial Watch believed Defendants were in violation of Section 8(a)(4) with respect to Guilford County. This second letter, attached hereto as Exhibit 2, referenced Guilford County's high registration rates, its high percentage of inactive registrations, and its failure to remove inactive registrations.

50.     In both letters, Judicial Watch identified specific items that it wished to discuss to bring Mecklenburg County, Guilford County, and the State into compliance.

51.     On March 18, 2020, Executive Director Bell responded on behalf of the State Board of Elections to Judicial Watch's letters.  Her two-page response, attached hereto as Exhibit 3, refers only in general terms to Judicial Watch's allegations regarding high registration rates.  It does not mention Judicial Watch's specific allegations regarding the high number of inactive registrations or inadequate number of removals.  It is a general denial, not a substantive response to the allegations raised in Judicial Watch's letters.

52.     Neither Mecklenburg County nor Guilford County ever responded to Judicial Watch's December 11, 2019 letters.

**F.      *Judicial Watch's Further Efforts to Address Defendants' NVRA Non-Compliance.***

53.     In February and March 2020, Judicial Watch undertook further efforts to investigate voter registrations in Mecklenburg County and Guildford County.

- 11 -

54.    The results of this further investigation show that, according to data from February 2020, Mecklenburg County's inactive rate is 16%, while Guilford County's inactive rate is 14.4%.

55.    The February 2020 data also indicates that many of the inactive registrations in Mecklenburg and Guilford Counties have shown no voting activity for longer than the prescribed statutory waiting period of two general federal elections.

56.    Of Mecklenburg County's current inactive registrations, 33,561 (about 28% of its total inactive registrations) show no voting activity of any kind for more than three general federal elections—that is, since prior to election day 2014.

57.    Of Guilford County's current inactive registrations, 15,500 (about 30% of its total inactive registrations) show no voting activity of any kind for more than three general federal elections—that is, since prior to election day 2014.

58.    In light of these facts, Judicial Watch conducted further investigations, which indicated that the State Board has adopted a list maintenance practice that delays for up to two years the sending of address confirmation notices to certain registrations that show no voting activity.  The practice adopted by the State Board, which is reflected in a list maintenance manual it published and posted on its website, has no statutory basis, is contrary to North Carolina law, and causes a needless delay in the removal of inactive voter registrations.

59.    Judicial Watch's further investigations also showed that, as of March 2020, the entire State of North Carolina had nearly one million inactive registrations.

60.    Judicial Watch's further investigations also showed that, at various times in the past two years, Mecklenburg County has had registration rates that were close to, at, or above 100% of its age-eligible citizenry.  As of March 2020, its registration rate remains abnormally high.

- 12 -

61.     They also showed that, at various times in the past two years, Guilford County has had registration rates close to, at, or above 100% of its age-eligible citizenry.  As of March 2020, its registration rate remains abnormally high.

**G.     *Judicial Watch's Injury.***

62.     Judicial Watch has expended substantial resources, including staff time and direct, out-of-pocket expenses, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with both State and county officials and concerned members about Defendants' failure, and attempting to counteract their noncompliance.  Judicial Watch's out-of-pocket expenses include payments to consultants retained to analyze EAC, U.S. Census Bureau, and other publicly available data regarding voter registrations in Mecklenburg County, Guilford County, and North Carolina.

63.     The staff time and direct, out-of-pocket expenses incurred by Judicial Watch to investigate, address, and counteract Defendants' failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Judicial Watch's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.  Were it not for Defendants' failure to comply with their NVRA voter list maintenance obligations, Judicial Watch would have expended these same resources on its regular, programmatic activities or would not have expended them at all.  Instead, it diverted its resources to counteract Defendants' noncompliance and to protect members' rights.

**H.     *Judicial Watch's Members' Injuries.***

64.     Members of Judicial Watch who are lawfully registered to vote in Mecklenburg County, Guilford County, and throughout North Carolina have a constitutional right to vote in state

- 13 -

elections, including elections for federal office, as well as a statutory right to the safeguards and protections set forth in the NVRA.

65.     Defendants' failure to comply with their NVRA voter list maintenance obligations has burdened the constitutional right to vote of Judicial Watch members who are lawfully registered to vote in Mecklenburg County, Guilford County, and throughout North Carolina by undermining their confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be nullified or diluted.

66.     Defendants' failure to satisfy their NVRA voter list maintenance obligations also infringes the statutory rights of those Judicial Watch members who are lawfully registered to vote in in Mecklenburg County, Guilford County, and throughout North Carolina.  These individuals have a statutory right to vote in elections for federal office that comply with the procedures and protections required by the NVRA, including the voter list maintenance obligations set forth in Section 8.

67.     Protecting the voting rights of Judicial Watch members who are lawfully registered to vote in Mecklenburg County, Guilford County and throughout North Carolina is germane to Judicial Watch's mission.  It also is well within the scope of the reasons why members of Judicial Watch join the organization and support its mission.

68.     Because the relief sought herein will inure to the benefit of Judicial Watch members who are lawfully registered to vote in Mecklenburg County, Guilford County, and throughout North Carolina, neither the claims asserted nor the relief requested requires the participation of individual members.

- 14 -

69.    In March 2020, nearly three hundred of its members who are registered to vote throughout North Carolina, including in Mecklenburg County and in Guilford County, confirmed to Judicial Watch's staff that they were concerned about Defendants' failure to satisfy their voter list maintenance obligations under the NVRA and the resulting harm to these members' voting rights.

## Count I

### (Violation of Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4))

70.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

71.    Judicial Watch and its members are all persons aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. § 20510(b)(1).

72.    The December 11, 2019 letters to Defendants constituted statutory notice, pursuant to 52 U.S.C. § 20510(b)(1), of violations of Section 8(a)(4) of the NVRA.

73.    Defendants have failed to fulfill their obligations under Section 8(a)(4) of the NVRA to conduct a general program that makes a reasonable effort to cancel the registrations of registrants who are ineligible to vote in North Carolina's federal elections.

74.    Plaintiff and its members have suffered, and will continue to suffer, irreparable injury as a result of Defendants' failure to fulfill their obligations to comply with Section 8(a)(4) of the NVRA.

75.    Plaintiff has no adequate remedy at law.

- 15 -

## Count II

### (Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i))

76.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

77.     Defendants have failed to fulfill their obligations under Section 8(i) of the NVRA to make available to Plaintiff "all records" within the past two years "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."

78.     Plaintiff has suffered and will continue to suffer irreparable injury as a result of Defendants' failure to fulfill their obligations under Section 8(i) of the NVRA.

79.     Plaintiff has no adequate remedy at law.

## Prayer for Relief

WHEREFORE, Plaintiff prays for entry of a judgment:

a.     Declaring Defendants to be in violation of Section 8(a)(4) of the NVRA;

b.     Permanently enjoining Defendants from violating Section 8(a)(4) of the NVRA;

c.     Ordering Defendants to develop and implement a general program that makes a reasonable effort to remove the registrations of ineligible registrants from the voter rolls of North Carolina, Mecklenburg County, and Guilford County;

d.     Declaring that Defendants are in violation of Section 8(i) of the NVRA by refusing to allow Plaintiff to inspect and copy the requested records;

e.     Permanently enjoining Defendants from refusing to allow Plaintiff to inspect and copy the requested records;

- 16 -

f.     Ordering Defendants to pay Plaintiff's reasonable attorney's fees, including

litigation expenses and costs, as allowed under 52 U.S.C. § 20510(c); and

g.     Awarding Plaintiff such other and further relief as this Court deems just and proper.

Dated:     April 9, 2020

*/s/ Mark A. Jones*
Mark A. Jones
N.C. State Bar # 36215
BELL, DAVIS & PITT, P.A.
227 W. Trade Street, Suite 1800
Charlotte, North Carolina 28202
Phone: (336) 722-3700
mjones@belldavispitt.com

Robert D. Popper*
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Phone: (202) 646-5172
rpopper@judicialwatch.org

Eric Lee*
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Phone: (202) 646-5172
elee@judicialwatch.org

T. Russell Nobile*
JUDICIAL WATCH, INC.
Post Office Box 6592
Gulfport, Mississippi 39506
Phone: (202) 527-9866
rnobile@judicialwatch.org

H. Christopher Coates*
934 Compass Point
Charleston, South Carolina 29412
Phone: (843) 609-7080
curriecoates@gmail.com

*\* Application for admission pro hac vice
forthcoming*

- 17 -



December 11, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Honorable Michael G. Dickerson
Mecklenburg County Director of Elections
741 Kenilworth Ave.
Suite 202
Charlotte, North Carolina 28204

Honorable Karen Brinson Bell
Executive Director, North Carolina State Board of Elections
430 N. Salisbury St.
6400 MSC
Raleigh, North Carolina 27603

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in Mecklenburg County**

Dear Mr. Dickerson and Executive Director Bell:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch").  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in Mecklenburg County (the "County").  Mr. Dickerson, as the Director of Elections of the County Board of Elections, is receiving this letter because he and the Board are responsible under State law for maintaining accurate and current voter lists.[1]  Executive Director Bell, as chief state elections official of North Carolina ("the State"), is receiving this letter because her office is charged with coordinating State responsibilities under the NVRA.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch will bring a lawsuit against you if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed.  52 U.S.C. § 20507(i).

---

[1] N.C. Gen. Stat. §§ 163-82.14, 163-35.

[2] *See* 52 U.S.C. § 20509; N.C. Gen. Stat. § 163-82.2.

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org

Statutory Notice of NVRA Violations
December 11, 2019
Page | 2

The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls. To begin with, Judicial Watch determines each jurisdiction's registration rate. States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3] Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4] An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4). Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates. *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

Judicial Watch also examines the number of inactive registrations in each jurisdiction. Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections. 52 U.S.C. § 20507(d)(1)(B). Registrations pending removal during this period are typically referred to as "inactive." Inactive registrations may still be voted on election day. 52 U.S.C. § 20507(d)(2)(A). Data concerning such registrations must be reported to the EAC.[5] "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018). A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period. If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA. 52 U.S.C. § 20507(d)(1). States must report the number of such removals to the EAC.[6]

Our analysis of the data regarding Mecklenburg County showed the following:

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/. For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), & (4).

[6] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, ELECTION ADMINISTRATION AND VOTING SURVEY: 2018 COMPREHENSIVE REPORT at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org
Case 3:20-cv-00211   Document 1-1   Filed 04/09/20   Page 2 of 4

Statutory Notice of NVRA Violations
December 11, 2019
Page | 3

● The County has a total registration rate of 107%. To be clear, the number of voter registrations exceeds the number of citizens in the County who are old enough to register to vote.

● There are about 115,000 inactive voter registrations on the County's rolls, or about 16% of all registrations.

● The County reported removing only about 11,000 voter registrations per year during the last reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections. This is a very low number of removals for a county of this size.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court. Please contact us about your plans for correcting these violations. In particular, please set forth in such communication:

● Whether you agree that the EAC accurately quoted data it received from you regarding the number of registrations you removed under the process set forth in Section 8(d) of the NVRA during the last two-year reporting period. If you believe the data reported was not accurate, please let us know your own estimates regarding these numbers.

● Your explanation regarding the County's registration rate discussed above.

● A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

● A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

● Documents supporting your accounts of the foregoing explanations and descriptions.

● A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

I hope the concerns identified in this letter can be resolved amicably. We have a track record of resolving NVRA claims on reasonable terms. However, if you do not contact us about

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org
Case 3:20-cv-00211   Document 1-1   Filed 04/09/20   Page 3 of 4

Statutory Notice of NVRA Violations
December 11, 2019
Page | 4

correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities may be necessary.  In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs.  *See* 52 U.S.C. § 20510(c).  For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

Sincerely,

**JUDICIAL WATCH, INC.**

*s/ Robert D. Popper*

Robert D. Popper
Attorney, Judicial Watch, Inc.

---

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org
Case 3:20-cv-00211   Document 1-1   Filed 04/09/20   Page 4 of 4



December 11, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Honorable Charlie Collicutt
Guilford County Director of Elections
PO Box 3427
Greensboro, North Carolina 27402

Honorable Karen Brinson Bell
Executive Director, North Carolina State Board of Elections
430 N. Salisbury St.
6400 MSC
Raleigh, North Carolina 27603

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in Guilford County**

Dear Mr. Collicutt and Executive Director Bell:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch").  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in Guilford County (the "County").  Mr. Collicutt, as the Director of Elections of the County Board of Elections, is receiving this letter because he and the Board are responsible under State law for maintaining accurate and current voter lists.[1]  Executive Director Bell, as chief state elections official of North Carolina ("the State"), is receiving this letter because her office is charged with coordinating State responsibilities under the NVRA.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch will bring a lawsuit against you if these violations are not corrected within 90 days. Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed.  52 U.S.C. § 20507(i).

The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

---

[1] N.C. Gen. Stat. §§ 163-82.14, 163-35.

[2] *See* 52 U.S.C. § 20509; N.C. Gen. Stat. § 163-82.2.

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org

Case 3:20-cv-00211   Document 1-2   Filed 04/09/20   Page 1 of 4

Statutory Notice of NVRA Violations
December 11, 2019
Page | 2

Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls.  To begin with, Judicial Watch determines each jurisdiction's registration rate.  States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3]  Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4]  An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4).  Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates.  *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

Judicial Watch also examines the number of inactive registrations in each jurisdiction.  Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections.  52 U.S.C. § 20507(d)(1)(B).  Registrations pending removal during this period are typically referred to as "inactive."  Inactive registrations may still be voted on election day.  52 U.S.C. § 20507(d)(2)(A).  Data concerning such registrations must be reported to the EAC.[5]  "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).  A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period.  If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA.  52 U.S.C. § 20507(d)(1).  States must report the number of such removals to the EAC.[6]

Our analysis of the data regarding Guilford County showed the following:

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.  For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), & (4).

[6] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, ELECTION ADMINISTRATION AND VOTING SURVEY: 2018 COMPREHENSIVE REPORT at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org
Case 3:20-cv-00211   Document 1-2   Filed 04/09/20   Page 2 of 4

Statutory Notice of NVRA Violations
December 11, 2019
Page | 3

●      The County has a total registration rate of 102%.  To be clear, the number of voter registrations exceeds the number of citizens in the County who are old enough to register to vote.

●      There are about 72,000 inactive voter registrations on the County's rolls, or about one out of every five registrations.

●      The County reported removing only about 3400 voter registrations per year in the last reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.  This is a very low number of removals for a county of this size.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court.  Please contact us about your plans for correcting these violations.  In particular, please set forth in such communication:

●      Whether you agree that the EAC accurately quoted data it received from you regarding the number of registrations you removed under the process set forth in Section 8(d) of the NVRA during the last two-year reporting period.  If you believe the data reported was not accurate, please let us know your own estimates regarding these numbers.

●      Your explanation regarding the County's registration rate discussed above.

●      A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

●      A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

●      Documents supporting your accounts of the foregoing explanations and descriptions.

●      A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

I hope the concerns identified in this letter can be resolved amicably.  We have a track record of resolving NVRA claims on reasonable terms.  However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org
Case 3:20-cv-00211   Document 1-2   Filed 04/09/20   Page 3 of 4

Statutory Notice of NVRA Violations
December 11, 2019
Page | 4

seeking declaratory and injunctive relief against both of you in your official capacities may be
necessary.  In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding
reasonable attorney fees, expenses, and costs.  *See* 52 U.S.C. § 20510(c).  For the reasons set
forth above, we believe that such a lawsuit would be very likely to succeed.

    We look forward to receiving your prompt response.

                            Sincerely,

                            **JUDICIAL WATCH, INC.**

                            *s/ Robert D. Popper*

                            Robert D. Popper
                            Attorney, Judicial Watch, Inc.

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org
Case 3:20-cv-00211   Document 1-2   Filed 04/09/20   Page 4 of 4

# NORTH CAROLINA
## STATE BOARD OF ELECTIONS

*Mailing Address:*
P.O. Box 27255, Ra-
leigh, NC 27611

(919) 814-0700 or
(866) 522-4723

*Fax:* (919) 715-0135

March 18, 2020

*VIA ELECTRONIC MAIL*

Robert Popper
Attorney, Judicial Watch
rpopper@JudicialWatch.org

Re:   Notice letter alleging violations under the National Voter Registration Act of 1993
       (NVRA) and request for public records

Dear Mr. Popper,

On December 19, 2019, the North Carolina State Board of Elections ("State Board") received
letters from you alleging that the Mecklenburg and Guilford County Boards of Elections fail to
maintain a program to reasonably ensure ineligible voters are removed from the voter rolls.
Specifically, you contend that these counties maintain more registered voters than adult citizens,
which you take as evidence of noncompliance with federal law.

North Carolina's list maintenance procedures are governed by state law, which complies with the
National Voter Registration Act ("NVRA") and other federal laws.  North Carolina General Stat-
ute § 163-82.14 outlines the requirements for performing list maintenance.  The program must be
uniform, nondiscriminatory, and comply with federal law.  It shall make diligent efforts "not less
than twice each year: (1) To remove the names of ineligible voters from the official lists of eligi-
ble voters, and (2) To update the addresses and other necessary data of persons who remain on
the official lists of eligible voters."  As required, our office conducts list maintenance based on
these criteria and as otherwise outlined in this section.

My office takes seriously its mandates and obligations under the NVRA.  At present, however,
you have failed to allege a factual basis that, if true, would constitute a violation of state or fed-
eral list maintenance requirements.  List maintenance occurs based on the uniform, nondiscrimi-
natory criteria in G.S. § 163-82.14, outlined above.  Some counties have higher transient popula-
tions than others, including those with significant numbers of college students, and therefore it is
not unusual that they may have a higher percentage of registered voters than other counties.  This
does not mean that required list maintenance is not occurring.  Also, the NVRA does not permit
a state to immediately remove a voter who has moved out of the county absent notice from the
voter.  If the voter fails to provide notice that they have moved, the voter will eventually be
placed in "inactive" status if they fail to respond to a confirmation notice after not having had
any contact with the board of elections for two federal election cycles.  A voter in inactive status

may vote but will be asked to confirm their address if they go to the polls.  The voter will be re-moved from the rolls after two additional federal election cycles with no contact with the board of elections.

Your letters do not provide sufficient detail to determine whether their analysis is accurate. Based on what we could surmise from the limited information provided, however, we have sev-eral concerns that the analysis relied on outdated, inaccurate data.  First, it appears that the da-tasets compared were from different years: one set from 2017 and the other from more than a year later in 2018.  The voter registration data you used appear to be from the 2018 EAVES Sur-vey, while the census estimates relied on were from the U.S. Census Bureau's 2017 American Community Survey 5-Year estimate of Citizen Voting Age Population.  Second, the U.S. Census indicates that the EAVES Survey has a margin of error; this is not accounted for in your analysis. Third, the EAVES Survey includes Uniformed and Overseas Civilian Absentee Mail Voters, who may not be included in the census data.

If you discover information indicating noncompliance with the above listed requirements, please forward them to the State Board office.  At this time, however, the analysis you provided does not provide information that indicates a violation has occurred.

Sincerely,

Karen Brinson Bell
Executive Director

2