IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HARRISBURG DIVISION

JUDICIAL WATCH, INC.,

               Plaintiff,

    v.

COMMONWEALTH of
PENNSYLVANIA, et al.,

               Defendants.

Civ. Action No. 1:20-cv-00708-CCC

**PLAINTIFF JUDICIAL WATCH'S MEMORANDUM IN
OPPOSITION TO COMMON CAUSE PENNSYLVANIA AND
LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA'S
<u>MOTION TO INTERVENE AS DEFENDANTS</u>**

# **TABLE OF CONTENTS**

**Page No.**

INTRODUCTION ........................................................................................................1

Statutory Background .............................................................................................1

The Complaint ........................................................................................................2

The Motion to Intervene .........................................................................................3

ARGUMENT .............................................................................................................4

I.    THE COURT SHOULD DENY MOVANTS' REQUEST
FOR INTERVENTION AS OF RIGHT. ..............................................4

     A.    Movants Have No "Significantly Protectable Interest"
in the Subject Matter of this Case. ............................................5

     B.    Movants Have No Interest that Will be Impaired
without Their Participation. .....................................................12

     C.    Movants Have Not Made a Compelling Showing
that the Government Defendants' Representation Is
Inadequate. ...............................................................................14

II.   THE COURT SHOULD DENY MOVANTS' REQUEST
FOR PERMISSIVE INTERVENTION. ..............................................18

CONCLUSION ........................................................................................................21

CERTIFICATE OF WORD COUNT ......................................................................23

CERTIFICATE OF SERVICE ................................................................................24

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                    **<u>Page No.</u>**

*Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014) ....................................9

*Bellitto v. Snipes*, No. 16-cv-61474, 2016 U.S. Dist. LEXIS 128840
(S.D. Fla. Sep. 21, 2016) ................................................................................15

*Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617
(S.D. Fla. Mar. 30, 2018)..................................................................................8

*Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108 (3d Cir. 1992) .........................14

*Clark v. Putnam County*, 168 F.3d 458 (11th Cir. 1999) .......................................15

*Common Cause Ind. v. Lawson*,
327 F. Supp. 3d 1139 (S.D. Ind. 2018)............................................................8

*Common Cause/N.Y. v. Brehm*, 344 F. Supp. 3d 542 (S.D.N.Y. 2018) ..................8

*Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*,
674 F.2d 970 (3d Cir. 1982) ..........................................................................15

*Donaldson v. United States*, 400 U.S. 517 (1971)...................................................5

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) ..........................................12

*Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987).......................................5, 6, 10, 12

*Hoots v. Pennsylvania*, 672 F.2d 1133 (3d Cir. 1982) ...........................................19

*Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833 (2018)....................................2

*Judicial Watch v. Grimes*, No. 3:17-cv-94 (E.D. Ky. 2017) ............................10, 11

*Judicial Watch v. Logan*, No. 2:17-cv-8948 (C.D. Cal. 2017)...............9, 10, 18, 19

*Judicial Watch v. North Carolina*, No. 3:20-cv-211 (W.D.N.C. 2020) ...................7

*Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 463 (M.D. Pa. 2005) ..................12

*Kitzmiller v. Dover Area Sch. Dist.*, No. 04cv2688,
2005 U.S. Dist. LEXIS 3693 (M.D. Pa. Mar. 10, 2005) ..............................19

*Kleissler v. United States Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) ..............5, 6, 8

*Kobach v. U.S. Election Ass. Comm'n*, No. 13-cv-4095,
2013 U.S. Dist. LEXIS 173872 (D. Kan. Dec. 12, 2013) ..............................15

*Kobach v. United States Election Assistance Comm'n*,
772 F.3d 1183 (10th Cir. 2014)......................................................................15

*League of Women Voters of Mo. v. Ashcroft*,
   336 F. Supp. 3d 998 (W.D. Mo. 2018)..................................................9

*Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
   72 F.3d 361 (3d Cir. 1995) ...................................................................14

*N.C. State Conf. of the NAACP v. Cooper*,
   332 F.R.D. 161 (M.D.N.C. 2019)........................................................20

*N.C. State Conf. of the NAACP v. North Carolina State Bd. of Elections*,
   No. 1:16-cv-1274, 2016 U.S. Dist. LEXIS 153249
   (M.D.N.C. Nov. 4, 2016).......................................................................8

*Pa.Gen. Energy Co. v. Grant Twp. E. Run Hellbenders Soc'y, Inc.*,
   658 F. App'x 37 (3d Cir. 2016) ...............................................13, 16, 17

*Pennsylvania v. Rizzo*, 530 F.2d 501 (3d Cir. 1976) ...............................14

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006).....................................17

*Public Interest Legal Found. v. Boockvar*,
   370 F. Supp. 3d 449 (M.D. Pa. 2019)..................................................14

*Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245 (3d Cir. 2017)....11

*Texas v. U.S.*, 805 F.3d 653 (5th Cir. 2015) ..............................................4

*United States v. Alcan Aluminum*, 25 F.3d 1174 (3d Cir. 1994) .............12

*United States v. Michigan*, 424 F.3d 438 (6th Cir. 2005)........................13

*U.S. v. Terr. of the V.I.*, 748 F.3d 514 (3d Cir. 2014)........................*passim*

*Va. Voter's All., Inc. v. Leider*, No. 1:16-cv-394 (E.D. Va. 2016)............8

## **Statutes**

52 U.S.C. § 20501 ........................................................................................1

52 U.S.C. § 20504 ..................................................................................1, 9, 17

52 U.S.C. § 20505 ......................................................................................17

52 U.S.C. § 20506 ......................................................................................17

52 U.S.C. § 20507(a) .............................................................................1, 17

52 U.S.C. § 20507(b) ................................................................................17

52 U.S.C. § 20507(c) ................................................................................13

52 U.S.C. § 20507(d) .........................................................................*passim*

52 U.S.C. § 20507(e) ..................................................................................2

52 U.S.C. § 20507(i) ................................................................................. 3

52 U.S.C. § 20509 .................................................................................. 14

25 Pa. C.S. § 2621 ................................................................................. 14

71 P.S. § 732-204(c) .............................................................................. 15

**<u>Rules</u>**

Fed. R. Civ. P. 24 .......................................................................... *passim*

**<u>Other Authorities</u>**

7C Charles Alan Wright & Arthur R. Miller,
    FEDERAL PRACTICE AND PROCEDURE § 1909 (1986) ..................................... 14

Plaintiff Judicial Watch ("Plaintiff") submits this Memorandum in Opposition to the motion to intervene as defendants filed by Common Cause Pennsylvania and League of Women Voters of Pennsylvania ("Movants").  (ECF No. 4.)

## INTRODUCTION

**Statutory Background**

The NVRA was enacted for two stated purposes: first, to "increase the number of eligible citizens who register to vote" and "enhance[] [their] participation" in federal elections; and second, "to protect the integrity of the electoral process" and "ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. § 20501(b).  The Act increased voter participation in several ways, notably by requiring that state driver's license applications also serve as voter registration applications, which gives the law its popular name, "Motor Voter."  *Id.*, § 20504(a)(1).

The second goal, ensuring election integrity and accurate and current voter rolls, was embodied in Section 8 of the NVRA, which is the subject of this lawsuit. 52 U.S.C. § 20507.  It requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or "a change in the residence of the registrant." *Id.*, § 20507(a)(4).

Section 8(d) provides that the name of a voter who has changed residence is removed from the rolls in one of two ways.  First, it is removed if the voter confirms a move in writing.  52 U.S.C. § 20507(d)(1)(A).  Second, if a forwardable notice requesting address confirmation is mailed to a voter, and if the voter then fails to respond to it and does not "vote[] or appear[] to vote" for two general federal elections—basically, a period of from two to four years—that voter's name is removed from the rolls.  *Id.*, § 20507(d)(1)(B); *see Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018) ("federal law makes this removal mandatory.").  Until the statutory period has run, voters who have not responded to address confirmation notices are said to be "inactive."  (ECF No. 1, ¶24.)  Such voters may vote at any time during that period (52 U.S.C. § 20507(e)), at which point they are considered "active" again, and the removal process stops.

## The Complaint

The complaint alleges that Defendants have failed to comply with Section 8's mandate to institute a program that makes a reasonable effort to remove voters who have died or changed residence.  (ECF No. 1, ¶98 (Count I).)  In particular, it alleges that Defendants have failed at one of their core responsibilities under Section 8(d), namely, removing "inactive" voters who have shown no voting-related activity for two general federal elections.  Defendants themselves reported to the federal Election Assistance Commission (EAC) that Bucks, Chester and Delaware Counties

removed a total of seventeen (17) registrations in a two-year period under Section 8(d). (*Id.*, ¶¶38-41.) This is an absurdly low total, given that the combined voter rolls of these three counties contain more than 1.2 million registrations. (*Id.*, ¶¶42, 43.) Defendants also reported to the EAC that counties throughout Pennsylvania removed similarly low numbers of outdated registrations under Section 8(d). (*Id.*, ¶45.) Plaintiff's many requests for specific information on this topic were met with evasive and irrelevant responses, and, in the case of Delaware County, with no response at all. (*Id.*, ¶¶63-83; Exs. 1-9.)

The complaint also alleges that the registration rates for Bucks, Chester, and Delaware Counties are high, both for Pennsylvania and compared to the rest of the country, which suggests a failure to remove outdated registrations. (ECF No. 1, ¶¶51-58.) Finally, the complaint alleges that Defendants violated Section 8(i) of the NVRA, 52 U.S.C. § 20507(i), by failing to provide requested records concerning their voter list maintenance programs and activities. (*Id.*, ¶103 (Count II).) The only relief Plaintiff requests is compliance with the NVRA. (*Id.*, Prayer for Relief.)

## **The Motion to Intervene**

Movants are two advocacy and policy nonprofits whose stated interest is "in protecting their members' voter registrations, ensuring eligible voters remain registered, and in preserving the fruits of their own registration-related and voter protection-related efforts." (ECF No. 5 at 9.) But Movants' claimed interest in

protecting the registrations of *eligible* voters is far removed from the issues involved here, and would not be impaired by enforcing the NVRA's procedures regarding *ineligible* registrations.

Movants filed no affidavits, exhibits, or answer in support of their motion. Instead, they speculate that relief *not* requested in the complaint might be imposed at the remedial stage of this litigation—with the acquiescence of Defendants, and by order of the Court—in a way that violates the rights of their members. Relying only on this speculation, Movants would expand this litigation beyond the scope of the complaint, to relief Plaintiff does not seek and to matters litigated by other parties in other proceedings. Indeed, statements made by Movants both in their papers and publicly reveal that they seek to transform the nature of this case.

While Movants may have preferences as to how the NVRA should be enforced, these cannot justify intervention. *See Texas v. U.S.*, 805 F.3d 653, 657 (5th Cir. 2015) ("[A]n intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological … reasons; that would-be intervenor merely *prefers* one outcome to the other.") (citations omitted). Neither Movants' preferences nor their worst fears, unsupported by record evidence, warrant intervention.

## ARGUMENT

## I. THE COURT SHOULD DENY MOVANTS' REQUEST FOR INTERVENTION AS OF RIGHT.

A movant must establish four criteria to intervene as of right pursuant to Rule

24(a)(2): "(1) the application … is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *U.S. v. Terr. of the V.I.*, 748 F.3d 514, 519 (3d Cir. 2014) (citations omitted).  "Although these requirements are intertwined, each must be met to intervene as of right." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987) (citations omitted).  Movants fail to show three of four criteria.[1]

## A. Movants Have No "Significantly Protectable Interest" in the Subject Matter of this Case.

Intervention as of right requires a movant to have an interest in the subject matter of the action.  Fed. R. Civ. P. 24(a)(2).  The Supreme Court has determined that this interest must be "a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971).  "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). The "efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected

---

[1]   Plaintiff does not contest timeliness for either as of right or permissive intervention.  However, in the context of permissive intervention, the prejudice that results from delay is distinct from the prejudice that results from admitting additional parties who are already adequately represented and have nothing to contribute. There is prejudice of the latter kind, as Plaintiff explains, *infra* Part II.

in a substantially concrete fashion by the relief sought." *Id*; *see Harris*, 820 F.2d at 596 (interest cannot be "contingent or remote") (citations omitted).

Movants have utterly failed to show a defined interest, specific to them, that is directly affected in a substantial, concrete way by the relief requested. The only relief Plaintiff has requested is to enforce the requirements of federal voting law. Taking *ineligible* voters who have moved to another jurisdiction off the rolls in Pennsylvania does not affect Movants' interest as it relates to *eligible* voters. No provision of the U.S. Constitution, the Voting Rights Act, or Pennsylvania law guarantees that a person who is not a legal resident has some sort of protected legal right to stay registered.

Disregarding the relief Plaintiff actually seeks, Movants speculate vaguely about objectionable relief Plaintiff *might* seek (and the Court *might* order). Thus, Movants refer to "the procedures Plaintiff presumably wants election officials to adopt," without describing these procedures or locating them in the complaint. (ECF No. 5 at 1.) Movants assert several times that Plaintiff would "compel[] unwarranted and potentially illegal 'list maintenance' practices," but do not say what these practices are. (*Id.* at 3; *see id.* at 4 ("potentially disenfranchising purges"); *id*. at 4-5 ("aggressive—and potentially unlawful—list maintenance strategies that Plaintiff would have the Court order").) For the record, Plaintiff does not seek "illegal," "disenfranchising," "aggressive," or "unlawful" list maintenance practices, and

would not "have the Court order" them.   Movants assert they "would sue" if Defendants "undertook, on their own, the list maintenance practices that Plaintiff would potentially have them adopt," again without identifying the "practices" they are talking about.  (*Id.* at 14.)  Movants seem at times to doubt the Court as well as the parties, stating that this lawsuit "could result in a court-approved consent decree requiring Defendants to adopt list maintenance procedures that would adversely impact the rights of eligible voters" and even violate the NVRA.  (*Id.* at 15.)  They never describe the consent order they fear, let alone explain why both Plaintiff and Defendants would request it or why the Court would order it.

Movants refer to Plaintiff's recent lawsuit in North Carolina to argue that, in "similar cases … Judicial Watch has demanded overbroad practices that would result in the removal—and potential disenfranchisement—of eligible voters."  (ECF No. 5 at 12-13, citing *Judicial Watch v. North Carolina*, No. 3:20-cv-211 (W.D.N.C. 2020).)  This statement is demonstrably false.  The complaint in that action requests the same relief sought here, namely, compliance with the NVRA.  (*See* Popper Decl, Ex. 1 at 16-17.)  Indeed, except for the names of the defendants, the prayers for relief in both complaints are identical, word for word.  (*Compare* ECF No. 1 at 19-20.)

Movants cite to other claims, in other cases, brought by other plaintiffs, to suggest that Plaintiff seeks the same relief here.  (*E.g.*, ECF No. 5 at 12-13.)  This inference makes no sense.  The choices made by those plaintiffs, in different times,

circumstances, and circuits, are their own.  This inference also is contrary to the law of this Circuit, which makes clear that the decision to grant intervention depends on the particular facts of each case before the Court.  *See Kleissler*, 157 F.3d at 972 ("The facts assume overwhelming importance in each decision" under Rule 24).

The cases Movants cite that grant intervention or recognize interests in NVRA cases all concerned claims where either the plaintiffs demanded, or the defendants adhered to, procedures not included in or authorized by the NVRA.  *See Bellitto v. Snipes*, No. 16-cv-61474-Bloom/Valle, 2018 U.S. Dist. LEXIS 103617, at *54, *56-58 (S.D. Fla. Mar. 30, 2018) (rejecting argument that using jury recusal forms to conduct list maintenance was required by the NVRA); *Common Cause/N.Y. v. Brehm*, 344 F. Supp. 3d 542, 557-58 (S.D.N.Y. 2018) (recognizing a claim for "de facto" removal where inactive voters were wrongly told they were not registered and could not vote); *N.C. State Conf. of the NAACP v. North Carolina State Bd. of Elections*, No. 1:16-cv-1274, 2016 U.S. Dist. LEXIS 153249, at *4, *30-31 (M.D.N.C. Nov. 4, 2016) (enjoining removal of voters based on single mailings returned undeliverable *prior* to waiting the mandatory two general federal elections); *Common Cause Ind. v. Lawson*, 327 F. Supp. 3d 1139, 1153 (S.D. Ind. 2018) (removing voters for change of address *without* first sending the forwardable address confirmation notice, in violation of the NVRA); Complaint, *Va. Voter's All., Inc. v. Leider*, No. 1:16-cv-394, ECF No. 1, ¶17 (E.D. Va. April 17, 2016) (Popper Decl.,

Ex. 2) (demanding use of jury recusal forms for list maintenance); *see also Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (plaintiffs' standing derived from use of Department of Homeland Security's SAVE database to identity non-citizens for removal).[2]

Movants fail, however, to cite the only truly analogous case: *Judicial Watch v. Logan*, 2:17-cv-8948 (C.D. Cal. 2017). Judicial Watch asserted claims against the clerk of Los Angeles County and the California secretary of state that were similar to those alleged here, including that there were too few removals under Section 8(d) and that registration rates were too high. As here, the relief sought was simple compliance with the NVRA. Popper Decl., ¶4. The local chapters of Common Cause and the League of Women Voters sought to intervene. *Id.*, ¶5. They argued, as their counterparts do here, that their voter registration efforts constituted a protectable interest. *Id.* Their motion even relied on many of the same phrases employed here, alluding, for example, to "aggressive," "unlawful," "disenfranchising" "purges." *Id.*

The Court in *Logan* denied intervention, in an order that was later vacated after the case settled. Popper Decl., Ex. 3 (Order Denying Motions to Intervene, *Judicial Watch v. Logan*, 2:17-cv-8948 (C.D. Cal. July 12, 2018) (ECF No. 76),

---

[2]     *League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998 (W.D. Mo. 2018) is inapposite. (ECF No. 5 at 10.) That case concerned Section 5, the "Motor Voter" provision of the NVRA. *Id.* at 1003, citing 52 U.S.C. § 20504.

*vacated sub nom. Judicial Watch, Inc. v. Padilla*, Nos. 18-56102 & 18-56105, 2019 U.S. App. LEXIS 8347 (9th Cir. Mar. 20. 2019)). The order is instructive. The Court acknowledged that the movants' goals included "improv[ing] voter registration efforts" and "involv[ing] more citizens in the political process by assisting and mobilizing voters," and that, as a result, they had a "legally protected interest to ensure that eligible voters maintain their right to vote and remain on the voter rolls." *Id.* at 2. However, the Court reasoned that this did not amount to a "significantly protectable interest" that supported intervention, because "there is no relationship between this interest and the claims at issue." *Id.* "Plaintiffs request that Defendants reasonably attempt to remove *ineligible* voters from the voter rolls. Removing ineligible voters from the voter rolls will not affect eligible voters' rights." *Id.*

The same reasoning warrants denying intervention here. Movants' interests are too "contingent" and "remote." *Harris*, 820 F.2d at 596. They depend entirely on Plaintiff seeking (and Defendants consenting to, and the Court ordering) unlawful relief regarding eligible voters that is not requested in the complaint. In fact, Movants' speculation about the remedies Plaintiff seeks is belied by the two current NVRA settlements in which Plaintiff is a party. *See* Popper Decl., Ex. 4 (*Logan* settlement, dated January 3, 2019); Ex. 5 (Consent Judgment in *Judicial Watch v. Grimes*, 3:17-cv-94 (E.D. Ky. 2017), ordered July 3, 2018). In *Logan*, the agreement

requires the defendants to identify inactive registrants who have received a Section 8(d)(2) confirmation notice and are within the statutory waiting period, to send confirmation notices to all other inactive registrants, to correct an errant list maintenance manual, and to report key documents and records on an annual basis. Ex. 4 at 6-10.   In *Grimes*, Judicial Watch entered into a court-ordered Consent Judgment with the Commonwealth, state officials, and the United States (which intervened with the consent of the parties), which requires the defendants to develop a comprehensive plan, consistent with state and federal law, to develop reliable procedures to identify those who may have moved; to send an initial, non-forwardable mailing to those who may have moved; to regularly send Section 8(d)(2) notices and track and remove registrants per the NVRA and Kentucky law; and to regularly report list maintenance documents, data, and activities.   Ex. 5 at 8-16. Neither agreement incorporates any of the procedures from the cases Movants cite.

Movants cannot simply pile up adjectives and adverbs to create a protectable interest.  They never identify a "proposed remedy" that threatens their rights.  *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 257 (3d Cir. 2017).  They point to no paragraph in the complaint that causes them to fear an order disenfranchising eligible voters.  They attach no affidavits describing their supposed interest.  It is Movants' burden to establish the existence of a significantly protectable interest.  Their motion must be denied on this record.

**B.    Movants Have No Interest that Will be Impaired without Their Participation.**

Movants must also show there is a "tangible threat" to their stated interest. *Harris*, 820 F.2d at 601.  This heightened standard requires the applicant "do more than show that his or her interests may be affected in some incidental manner." *Id.* The intervenors "must also show that [its] interest is in jeopardy in the lawsuit." *Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 463, 469 (M.D. Pa. 2005), citing *United States v. Alcan Aluminum*, 25 F.3d 1174, 1181 n.9 (3d Cir. 1994).

For all the reasons that Movants cannot show a legally protectable interest related to the subject matter of this action, they cannot show any impairment of their ability to protect such an interest.  Further, for all the same reasons, there will be no adverse *stare decisis* effect.  None of the practices found objectionable in other cases—like compelling the use of jury recusal forms, failing to wait for two federal elections, or using the SAVE database—are at issue here, so there will be no unfavorable ruling regarding those matters.  Movants' speculations about *possibly* objectionable relief is not the basis for a legitimate concern about *stare decisis*.  *See Greene v. United States*, 996 F.2d 973, 977 (9th Cir. 1993) (denying intervention where the movant's "interest in preserving the favorable effects of *stare decisis* is too speculative").

The idea that this lawsuit might compel Movants to "mitigate the effects of eligible voters being removed from the rolls … in the midst of the ongoing COVID-

19 pandemic," is simply uninformed.  (ECF No. 5 at 4.)  The NVRA mandates a 90-day quiet period prior to each federal election, which applies to "any program the purpose of which is to systematically remove the names of ineligible voters" who may have changed residence.  52 U.S.C. § 20507(c)(2)(A).  Plaintiff has not asked for emergency relief.  Defendants' first responsive pleadings are not even due until July 10, 2020.  Unless a trial is held, and court-ordered relief is finalized *and* implemented by August 3, 2020, which is not practically possible, this lawsuit will not interfere with any response to the pandemic.

Note also that, under the NVRA, there is no way to speed up the statutory waiting period for a registrant who fails to respond to a Section 8(d)(2) notice.  Any removals would occur two to four years from now, and only if the registrant does not vote during that period.  Suggesting that such removals will be improper at that time is speculating about future events, which is not a basis for granting intervention. *See United States v. Michigan*, 424 F.3d 438, 444 (6th Cir. 2005) ("While the proposed intervenors may be legitimately concerned about these future issues, they are not now, and possibly never will be, before the district court."); *Pa.Gen. Energy Co. v. Grant Twp. E. Run Hellbenders Soc'y, Inc*., 658 F. App'x 37, 42 (3d Cir. 2016) (intervenors' argument that "at some unknown point in the future" existing party's position "may change" was "purely speculative").

**C.**     **Movants Have Not Made a Compelling Showing that the Government Defendants' Representation Is Inadequate.**

In considering motions to intervene in this Circuit, a "presumption of adequacy" of representation "attaches … 'if one party is a government entity charged by law with representing the interests of the applicant for intervention.'" *Terr. of the V.I.*, 748 F.3d at 520, citing, *inter alia*, *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992); *see Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976) ("Where official policies and practices are challenged, it seems unlikely that anyone could be better situated to defend than the governmental department involved and its officers."). A "potential intervenor can only overcome" this presumption by making a "compelling showing … to demonstrate why [the government's] representation is not adequate." *Terr. of the V.I.*, 748 F.3d at 520 (internal quotations omitted), citing *Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc*., 72 F.3d 361, 369 (3d Cir. 1995), quoting 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1909 (1986).

Here, Defendant Boockvar, as Secretary of the Commonwealth, "is Pennsylvania's chief election officer," as well as "Pennsylvania's 'chief election official' as contemplated by the NVRA." *Public Interest Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457 (M.D. Pa. 2019), citing 25 Pa. C.S. § 2621; *see* 52 U.S.C. § 20509 (chief State election official is "responsible for coordination of State responsibilities" under the NVRA). Moreover, Secretary Boockvar is represented

here by the Office of the Attorney General, who "[b]y statute" is "responsible for vindicating the sovereign interests of the Commonwealth." *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982), citing 71 P.S. § 732-204(c).   In short, these officials are charged by law with representing the interests of Pennsylvania voters and citizens under both State and federal law.   In this Circuit, it is presumed that they will adequately represent Movants, unless *compelling evidence* is produced to show that they will not.[3]

Movants barely attempt to show that their interest will diverge from existing Defendants, let alone produce compelling evidence on this point.   To the contrary, Movants openly profess that their interests are the *same* as Defendants, in that Movants "intend to contest Plaintiff's claims that Bucks, Chester, and Delaware Counties have failed to comply with the NVRA[.]"   (ECF No. 5 at 19; *see id.* at 9

---

[3]     Movants' citations to two cases from other circuits are easily distinguished. (ECF No. 5 at 17.)   *Bellitto v. Snipes*, Case No. 16-cv-61474-BLOOM/Valle, 2016 U.S. Dist. LEXIS 128840 (S.D. Fla. Sep. 21, 2016), was from the Eleventh Circuit, which has not consistently applied the same presumptions of adequate representation as this Circuit.   *See Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999) (presumption was only "weak" even though intervenors and government defendants sought the same objectives).   *Kobach v. U.S. Election Ass. Comm'n*, No. 13-cv-4095, 2013 U.S. Dist. LEXIS 173872, at *5 (D. Kan. Dec. 12, 2013) was decided on the basis of permissive intervention, not intervention of right.   Further, the parties' interests there *actually* diverged.   The intervenors had litigated to stop a proof-of-citizenship requirement (*id.* at *8), while the defendant government agency was both deeply divided over the issue and paralyzed by the absence of a quorum.   *See Kobach v. United States Election Assistance Comm'n*, 772 F.3d 1183, 1188 (10th Cir. 2014).

- 15 -

n.1 (indicating that Movants expect Defendants to "seek the same outcome and ask the Court to dismiss Plaintiff's NVRA claims"); *see id*. at 20 (analogizing other cases where intervenors and parties had an "identity of interest" or sought "substantially the same relief").)   The fact that Movants' interests in litigation are the same as existing government Defendants supports a finding of adequate representation.  *See Terr. of the V.I.*, 748 F.3d at 525 (intervention was properly denied where movant whose interests were "nearly identical with those of the United States" failed "to make a compelling showing" of inadequate representation); *Pa.Gen. Energy Co*., 658 F. App'x at 43 (affirming denial of intervention where movants had interests "nearly identical to those" of a township and had "not made a compelling showing" that it could not adequately represent them).

Notwithstanding the foregoing assertions of shared interests, Movants make two factual claims as to why their interests may conflict with Defendants.  First, Movants offer the following statement in their brief: "While Defendants are responsible for the general management and accuracy of the counties' voter registration lists … [Movants] have distinct and particular interests in ensuring that eligible, registered voters remain on the rolls and in the effectiveness of their own voter registration efforts."  (ECF No. 5 at 16-17.)  The statement is unsworn, unsupported by affidavits or exhibits, and not elaborated further.  The Third Circuit has rejected "conclusory, nonspecific claims of dissimilarity and divergence," where

movants "neither articulate these interests nor explain how they differ in degree" from those of existing parties. *Pa.Gen. Energy Co.*, 658 F. App'x at 42.

The statement is also incorrect.  As chief State election official, Secretary Boockvar must coordinate state responsibilities regarding the *entire* NVRA, not just the section relating to election integrity.  Thus, she is also responsible for the NVRA's "voter access" provisions that allow registering while applying for a driver's license (Section 5), by mail (Section 6), and at public-assistance offices (Section 7), and that restrict unwarranted removals (Section 8(a)(3) and (b)).  52 U.S.C. §§ 20504; 20505; 20506; 20507(a)(3) & (b).  These broad obligations cover Movants' stated interests. *See Terr. of the V.I.*, 748 F.3d at 524 (government agency with broader, systemic interests that would benefit the intervenor could also adequately represent its "personal" or "parochial" interests).

Second, Movants suggest that the obligations imposed by the pandemic will "consume Defendants' resources and attention."  ECF No. 5 at 19.  As discussed *supra* at 13-14, this lawsuit will not impose significant burdens in the coming months.  Further, "all governments face budget constraints," and if this "were sufficient to establish inadequate representation, it would eliminate the presumption of adequate representation when the government and the intervenor-applicant share the same interest." *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006); *Pa.Gen. Energy Co.*, 658 F. App'x at 42 (intervenors' interests could not be based on

"budgetary constraints faced by any governmental body").

Movants have not produced compelling evidence, as they were required to do under the law of this Circuit, that Defendants' representation will be inadequate. This failure alone is sufficient reason to deny their motion.

## II.   THE COURT SHOULD DENY MOVANTS' REQUEST FOR PERMISSIVE INTERVENTION.

In the alternative, Movants seek to intervene permissively.  A court "may" allow intervention where an applicant demonstrates "a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(2).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication."  Fed. R. Civ. P. 24(b)(3).

Movants fail at the first step in this inquiry, in that they have not identified a common question of law or fact regarding the claims in this action.  Plaintiff alleges that Defendants failed to remove ineligible registrations from the voter rolls.  Movants cite cases concerning whether the NVRA requires the use of jury recusals, the SAVE database, or other extra-statutory measures not at issue here.  As the district court in *Logan* put it in denying a similar motion, the movants

> do not share a common question of law or fact … Plaintiffs are suing … to enforce the NVRA and remove ineligible voters from the voter rolls. By contrast, Intervenors … are concerned with *eligible* voters being wrongfully removed from the list.  There is no reason that eligible voters would be removed from voter rolls if Plaintiffs are successful. In fact, it is purely speculative that eligible voters would be injured by ordering compliance with the NVRA.

- 18 -

*Logan* at 4 (Popper Decl., Ex. 3.)

Even if Movants could identify a common question of law or fact, the Court must consider the possibility of undue delay or prejudice to the adjudication.  Fed. R. Civ. P. 24(b)(3).  Where "representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'" *Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982); *Kitzmiller v. Dover Area Sch. Dist.*, No. 04cv2688, 2005 U.S. Dist. LEXIS 3693, at *19 (M.D. Pa. Mar. 10, 2005) ("courts consider whether the proposed intervenors will add anything" and, "if the interests of the proposed intervenors are already represented in the litigation, courts deny" applications to permissively intervene, citing *Hoots*).

Movants are adequately represented by existing parties—and will add nothing to the litigation.  They provide no details about the "experience" they say they will bring.  (ECF No. 5 at 20.)  They claim to "advocate" for voters in "traditionally marginalized" communities (*id*. at 21), but that has nothing to do with the allegations in the complaint.  They suggest they might help with expert testimony (*id*.) but give no indication of what their experts will say or of how it would be helpful.  As Movants attach no affidavits or proposed answer, the parties and the Court are left to guess as to what they might contribute.

Without question Movants will complicate the discovery process and

consume additional resources of the Court and the parties.  It is particularly troubling that Movants express an interest in any consent order settling this matter.  (*E.g.*, ECF No. 5 at 15.)   Interfering with settlement negotiations is an obvious source of prejudice to existing parties.  *See, e.g., Terr. of the V.I.*, 748 F.3d at 524-25.

As a final point, Movants' approach to this case suggests that their participation would lead to undue delay and prejudice.  In their brief, Movants often come close to suggesting that the parties, and perhaps even the Court, would willingly risk the rights of eligible voters.  In Movants' press release about this case, they explicitly contend that Plaintiff's *purpose* is to disenfranchise *eligible* voters. Popper Decl., ¶¶10, 13, 14, 15.  This assertion is a scandalous falsehood, as are a number of other statements in that press release.  The relevant point here, however, is that this style of litigating, marked by baseless, inflammatory attacks on parties' intentions, will not assist the Court in resolving this matter in an efficient and orderly way.  *See N.C. State Conf. of the NAACP v. Cooper*, 332 F.R.D. 161, 172 (M.D.N.C. 2019) (provocative and unsupported assertions by proposed intervenors indicated that allowing "intervention could place additional burden on the Court in expending unnecessary judicial resources on such contentions").

For all of these reasons, permissive intervention is unwarranted and unnecessary.

## **CONCLUSION**

For the foregoing reasons, the court should deny the pending motion to intervene.

May 26, 2020

*/s/ Robert D. Popper*
Robert D. Popper*
Eric Lee*
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, D.C. 20024
(202) 646-5172
Rpopper@judicialwatch.org
Elee@judicialwatch.org

Shawn M. Rodgers, Esq.
Jonathan S. Goldstein, Esq.**
GOLDSTEIN LAW PARTNERS, LLC
11 Church Road
Hatfield, Pennsylvania 19440
srodgers@goldsteinlp.com
jgoldstein@goldsteinlp.com
(610) 949-0444

T. Russell Nobile*
JUDICIAL WATCH, INC.
Post Office Box 6592
Gulfport, Mississippi 39506
(202) 527-9866
Rnobile@judicialwatch.org

H. Christopher Coates**
LAW OFFICE OF H. CHRISTOPHER COATES
934 Compass Point
Charleston, South Carolina 29412
(843) 609-7080
curriecoates@gmail.com

- 21 -

*Admitted pro hac vice*
**Application for admission pro hac vice forthcoming*

## CERTIFICATE OF WORD COUNT

I certify that the above memorandum complies with LR 7.8(b)(2) because it contains 4,975 words.

May 26, 2020                                          */s Robert D. Popper*
                                                     Robert D. Popper

## CERTIFICATE OF SERVICE

I certify that the foregoing memorandum of law in opposition to Common Cause Pennsylvania and League of Women Voters of Pennsylvania's motion to intervene as defendants was filed electronically and served on counsel of record via the ECF system of the U.S. District Court for the Middle District of Pennsylvania, and by email on the following counsel for defendants:

Joseph J. Kahn
Bucks County Solicitor
55 East Court Street, 5th floor
Doylestown, PA  18901
Tel: 215-348-6464
jjkhan@buckscounty.org

William F. Martin
Delaware County Solicitor
201 W. Front St.
Media,PA 19063
Tel: 610-891-4074
martinw@co.delaware.pa.us

Thomas L. Whiteman
Chester County Solicitor
313 W Market Street,
Suite 6702
West Chester, PA 19380-0991
Tel: 610-344-6195
twhiteman@chesco.org

Stephen Moniak, Esq.
Nicole J. Boland, Esq.
Pennsylvania Office of
          Attorney General
Strawberry Square, 15th Floor
Harrisburg, PA  17120
717-783-3146 (d)
717-772-4526 (f)
smoniak@attorneygeneral.gov
nboland@attorneygeneral.gov
*Attorneys for the Commonwealth of*
*Pennsylvania and Secretary Boockvar*

May 26, 2020

*/s Robert D. Popper*
Robert D. Popper