IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> COMMONWEALTH OF PENNSYLVANIA, et. al, <br><br> Defendants. | CIVIL ACTION NO. <br> 1:20-cv-00708-CCC <br><br> _____ |

**REPLY BRIEF IN SUPPORT OF MOTION OF NON-PARTIES COMMON CAUSE PENNSYLVANIA AND LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA TO INTERVENE AS DEFENDANTS AND FOR LEAVE TO FILE ANSWER ON THE SAME SCHEDULE AS DEFENDANTS**

Plaintiff's Complaint alleges that the Defendant Counties have not taken sufficient steps to remove registered voters from their voter rolls and seeks a Court order directing officials to remove more voters. Proposed Defendant-Intervenors have a vital, NVRA-based interest in ensuring that their members, voters they have registered, and eligible voters in the communities they serve remain on the active voter lists. As the Third Circuit has recognized, the NVRA demands a balance between "the need for clean voter rolls" *and* "protect[ing] registered voters from improper removal." *Am. Civil Rights Union v. Phila. City Comm'rs*, 872 F.3d 175, 178 (3d Cir. 2017). Defendant-Intervenors should be permitted to intervene so that they can participate in the development of the record and legal briefing on how that balance should be struck, whether any additional list maintenance programs are required, and whether any additional voters should be removed from the rolls under the NVRA.

Defendants are elected officials with a broader mandate than protecting the voting rights of individual citizens and they cannot adequately protect the proposed Defendant-Intervenors' interests in this lawsuit. Plaintiff's effort to wave away the numerous cases that support intervention here also fails. Nor has Plaintiff shown any prejudice would arise from intervention at the outset of the case. Accordingly, the proposed Defendant-Intervenors respectfully request that this Court grant their motion to intervene as of right or, alternatively, for permissive intervention.

# ARGUMENT

## I. The Court Should Grant Intervention as of Right

### A. Applicants Have a Concrete and Protectable Interest

Plaintiff does not dispute the proposed Defendant-Intervenors' interest in preventing the removal of eligible voters, including their members. Pl. Judicial Watch's Mem. in Opp. to Common Cause Pa. and League of Women Voters of Pa.'s Mot. to Intervene as Defs., at 8-9, ECF No. 16 ("Opp."). It mainly argues that because Plaintiff seeks "to enforce the requirements of federal voting law," its claims "do[] not affect" eligible voters. *Id.* at 6.

This misapprehends the NVRA and the crux of the dispute. The core question in this action is whether Defendants have made a "reasonable effort" to keep voter lists accurate. 52 U.S.C. § 20507(a)(4). Plaintiff says no. *See* Compl. ¶¶ 1, 43–46, 57–58. Defendants disagree. *See id.* ¶¶ 63, 70.[1] But the right of eligible voters to remain registered is beyond dispute. *See Phila. City Commr's*, 872 F.3d at 179 ("[O]nce a person is properly registered to vote, a state is only permitted to remove him or her from the voting list for narrowly specified reasons"). So too is voter-advocacy organizations' interest in avoiding erroneous

---

[1] *See also, e.g.*, Joan Biskupic, *Legal battles over voter roll purges heat up as mail-in ballot fight continues*, CNN (May 28, 2020) (quoting Secretary Boockvar as saying she "100% dispute[s]" Plaintiff's allegations), https://lite.cnn.com/en/article/h_8351a3b3664a8a6ec9ce0350f5e1c8dc.

voter removals that would require mitigation steps and drain their resources. *See Common Cause Ind. v. Lawson*, 937 F.3d 944, 952–53 (7th Cir. 2019). Proposed Defendant-Intervenors therefore have a direct and "facially legitimate interest" in ensuring that the procedures Defendants ultimately follow (including any potentially ordered by the Court) remove *only* ineligible persons without *also* removing eligible voters, such as their members. *Pub. Interest Legal Found., Inc. v. Winfrey*, No. 19-cv-13638, 2020 WL 2781826, at *3-4 (E.D. Mich. May 28, 2020).

Plaintiff responds that it does not seek "unwarranted" list maintenance procedures that could ever implicate proposed Defendant-Intervenors' interests. Opp. at 11-12. But that begs the central question. "[T]he question whether the measures employed by election officials" are reasonable necessarily "requires an exercise in statutory interpretation," an evaluation of the record, and a balancing of competing interests by the Court. *Winfrey*, 2020 WL 2781826, at *4; *see also Bellitto v. Snipes*, 935 F.3d 1192, 1200-05 (11th Cir. 2019) ("thoroughly" considering record and concluding defendants' efforts to remove ineligible voters were "reasonable"). Plaintiff's disputed litigation position cannot preempt the Court's analysis or restrict proposed Defendant-Intervenors' rights.

Nor is Plaintiff helped by protesting that the proposed Defendant-Intervenors do not "locate" offending practices in the Complaint, Opp. at 11, 15–16, or by

insisting that it only seeks "compliance with the NVRA," *id.* at 7. Plaintiff recognizes that Defendants already follow procedures to comply with the NVRA. *See, e.g.*, Compl. ¶¶ 22–25; Ex. 9 to Compl., ECF No. 1-11 (Letter of Secretary Boockvar describing NVRA compliance measures). But Plaintiff filed this suit precisely because it disagrees "as to how the NVRA should be enforced," Opp. at 9, and believes Defendants have not satisfied their statutory obligations. Compl. ¶¶ 43–46.

Indeed, Plaintiff does not dispute that the only reason for this suit is that it wants Defendants to implement more aggressive procedures to clean voter lists. The Complaint specifically requests relief that "develop[s] and implement[s]" an unspecified "general program" to remove ineligible persons from voter rolls. Compl. at 20, Prayer for Relief ¶ c. To be sure, Plaintiff stops short of saying what those are. Opp. at 11. But Plaintiff's failure to describe that "general program" or identify voters Plaintiff believes are ineligible does not eliminate the risk that eligible voters will be improperly removed. In any event, Plaintiff's failure to identify the specific relief sought is not a basis to deny intervention.

Plaintiff also incorrectly suggests that the cases the proposed Defendant-Intervenors cite in their motion "concerned . . . procedures not included in or authorized by the NVRA." Opp. at 13–14. This mistakenly focuses on what those courts ultimately held. At the start, as here, the gravamen of each case was

4

whether the challenged procedures complied with the NVRA. And in each case, as here, the defendants claimed the procedures were consistent with the NVRA.[2]

Moreover, Plaintiff's reliance on *Judicial Watch v. Logan*, No. 17-cv-08948, ECF No. 76 (C.D. Cal. 2017), is misplaced. Not only is *Logan* an outlier,[3] it has no precedential value because the Ninth Circuit vacated the cited order. *See Judicial Watch v. Padilla*, No. 18-56102, ECF No. 56, at 2 (9th Cir. Mar. 20, 2019) ("[T]he . . . order denying appellants' motion to intervene is vacated."). And even

---

[2] *See, e.g.*, *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346-47 (11th Cir. 2014) (rejecting defendant's "arguments about what Congress may or may not have contemplated when drafting the NVRA"); *Common Cause/N.Y. v. Brehm*, 344 F. Supp. 3d 542, 554–55 (S.D.N.Y. 2018) (defendants "emphasize[d]" that challenged New York procedure was "consistent with the NVRA's statutory purposes"); *Lawson*, 327 F. Supp. 3d at 1150 ("[D]efendants assert that . . . the challenged statute complies with the requirements of the NVRA . . . ."); *N.C. State Conf. of NAACP v. N.C. State Bd. of Elections*, No. 16-cv-01274, 2016 WL 6581284, at *6 (M.D.N.C. Nov. 4, 2016) (defendants argued challenge procedures were "individualized" and "therefore [] not prohibited" by NVRA).

[3] *Compare Logan*, ECF No. 76, *with Bellitto v. Snipes*, 2016 WL 5118568, at *2–3 (S.D. Fla. Sept. 21, 2016) (granting union's motion to intervene where "its interest and the interests of its members would be threatened by the court-ordered 'voter list maintenance' sought by Plaintiffs"); *Va. Voter's All., Inc. v. Leider*, No. 16-cv-00394 (E.D. Va. June 17, 2016), ECF No. 25 (granting League of Women Voters of Virginia's motion to intervene in NVRA suit); *Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, No. 16-cv-683, ECF No. 26 (E.D.N.C. Dec. 1, 2016) (granting permissive intervention where proposed intervenors shared a common question of law of "whether Wake County BOE has made reasonable efforts to perform voter list maintenance under the NVRA"); *Kobach v. U.S. Election Ass. Comm'n*, 2013 WL 6511874, at *5 (D. Kan. Dec. 12, 2013) (granting permissive intervention to League of Women Voters, among others, in NVRA matter); *Florida v. United States*, 820 F. Supp. 2d 85, 86–87 (D.D.C. 2011) (noting the court had granted permissive intervention).

5

if it were good law, *Logan* is distinguishable because it only addressed movants' interest in preventing the removal of eligible voters. *See Logan*, ECF No. 76, at 2–3. The ruling nowhere discussed Applicants' other protectable interests, such as preventing the diversion of their resources. *See* Mem. in Support of Mot. of Non-Parties Common Cause Pa. and League of Women Voters of Pa. to Intervene as Defs. And for Leave to File Answer on the Same Schedule as Defs., at 12-13, 19, 21, ECF No. 5 ("Mot.").

The recent decision in *Winfrey* granting intervention to local and state chapters of the League of Women Voters is much more instructive than *Logan*. *See* 2020 WL 2781826, at *1. As in this case, the plaintiff alleged "discrepancies between the number of voting age adults" and the "number of registered voters" on the rolls. *Id.* And, as here, movants cited interests in (1) "assur[ing] that no overzealous measures . . . increased the risk" of erroneous removals; and (2) avoiding the need to divert organizational resources. *Id.* at *2.

Granting intervention, the *Winfrey* court emphasized the NVRA's "divided and competing" interests in "*increas*[ing] . . . electoral participation," and "'ensur[ing] accurate and current voter registration rolls.'" *Id.* at *4; *see also Phila. City Comm'rs*, 872 F.3d at 178 ("[o]n the one hand, maintaining clean voter rolls may help ensure election integrity, but on the other hand, purging voters . . . requires voters to re-register and hinders participation in elections"). As in

6

*Winfrey*, Plaintiff's effort to remove voters is the "subject of this lawsuit," Opp. at 6, and movants have an interest in enhancing voter participation that entitles them to intervene.

### B. Denial of Defendant-Intervenors' Motion to Intervene Will Impair Their Ability to Protect Their Interest

Plaintiff's vague demand that Defendants alter the way they ensure NVRA compliance—in some unspecified way designed to remove additional voters from the rolls—creates a significant risk that eligible voters will be improperly removed and disenfranchised, threatening the Defendant-Intervenors' interests.[4]

Plaintiff notes that any removal of registrants from voter rolls "would occur two to four years from now." Opp. at 18. But the fact that Plaintiff's suit would impair the proposed Defendant-Intervenors' legitimate interests in the future does not make that impairment speculative or insufficient. Nor is it grounds to deny intervention. *See Qualie v. Carol Cable Co., Inc.*, No. Civ. A. 90-7415, 1992 WL 392609, at *3 (E.D. Pa. Dec. 14, 1992) (sufficient interest existed based on chances of recovery in a possible future wrongful death claim). To the contrary, Rule 24

---

[4] Plaintiff claims that the proposed Defendant-Intervenors must meet a "heightened standard" to demonstrate their interest may be impaired. Opp. at 17. Not so, and the case Plaintiff cites nowhere suggests that is the case. *See Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987). Harris merely holds that an applicant must show a "tangible threat to a legally cognizable interest." *Id*. The proposed Defendant-Intervenors clearly do.

looks favorably on prompt intervention early in the dispute.  In any event, the interests of Defendant-Intervenors and their members do not end with the 2020 Presidential Election; they apply equally to elections in 2021 and beyond.

Future harm is clearly a basis for intervention when the harm relates to the suit at hand.  Rule 24(a) provides for intervention as of right where the action "*may . . . impair or impede the movant's ability to protect its interest.*"  Fed. R. Civ. P. 24(a) (emphasis added).  The Rule does not require that an intervenor's interest "has been" impeded already.  Courts also consider the "practical consequences" in the future of denying intervention, even if future challenges remain available.  *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (considering potential impairment of intervenors' interest in future tourist dollars).

Moreover, *United States v. Michigan*, which Plaintiff cites, in no way suggests that intervention is inappropriate to address the threatened future impairment of a movant's rights.  424 F.3d 438, 444 (6th Cir. 2005).  *Michigan* held only that issues not before the court or implicated by the litigation do not warrant intervention.  *Id.*  Here, by contrast, proposed Defendant-Intervenors' interests are directly implicated by the claims asserted in the Complaint.  The proposed Defendant-Intervenors are not seeking to add new claims or issues that are not already before the Court.

Plaintiff's assertion that "there will be no adverse *stare decisis* effect" that could impact a protectable interest is also baseless. *See* Opp. at 17. The proposed Defendant-Intervenors seek to ensure that the unspecified practices Plaintiff would have Defendants implement *in this case* are not excessive. And if Defendants implement procedures that sweep too widely as a result of this lawsuit, that would complicate the proposed Defendant-Intervenors' ability to assert their rights in a subsequent suit.[5]

### C. Government Defendants' Representation Is Inadequate

Plaintiff's claim that the proposed Defendant-Intervenors' interests would be adequately represented by Defendants is meritless. While Defendants are "responsible for vindicating the sovereign interests of the Commonwealth," Opp. at 20 (quotation omitted), that does not mean their interests fully overlap with those of the proposed Defendant-Intervenors or their members. After all, the NVRA "provides a private right of action so that private parties . . . may sue to enforce the statute." *Phila. City Commr's*, 872 F.3d at 179. Congress recognized

---

[5] *Greene v. United States*, 996 F.2d 973, 977 (9th Cir. 1993), which Plaintiff cites, is inapposite because movants were already involved in preexisting and ongoing litigation involving their own separate legal claims. *See id*. (observing that "[a]ny attempt to relitigate treaty fishing rights would occur in the separate, ongoing *Washington I* forum, where the [proposed intervenors] are already parties").

9

that private parties might have to sue officials to protect their voting rights because their respective interests would not always align.

Plaintiff does not contest that the Third Circuit has held that the "general presumption that a government entity is an adequate representative" is light when the entity's "views are necessarily colored by its view of the public welfare." *Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 958–59 (3d Cir. 2012). Indeed, the proposed Defendant-Intervenors have explained how their interests and motivations diverge from those of the Pennsylvania Secretary of Commonwealth and the named officials in Bucks, Chester, and Delaware Counties. Mot. at 24-27. Defendant-Intervenors have a strong but relatively narrow interest in protecting specific eligible voters—their members and voters they have registered—from being improperly removed from the Pennsylvania voter rolls. By contrast, Defendants are broadly responsible for the general management of elections. These broad considerations are the type that courts routinely conclude interfere with "more parochial" interests. *See* Mot. at 25 (citing cases); *see also Winfrey*, 2020 WL 2781826, at *3 (interest of elected officials and their constituents is distinct from that of municipal defendants including election officials); *Bellitto*, 2016 WL 5118568, at *2 (interest of intervening labor union in ensuring members

10

were included on eligible voter rolls may not be aligned with interest of elections supervisor).[6]

## II. THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

In the alternative, the Court should also grant this motion because the proposed Defendant-Intervenors satisfy the requirements for permissive intervention.

### A. Movants' Defense Involves a Common Question of Law or Fact

The Defendant-Intervenors' defense involves common questions that are at the core of the case: (1) whether Defendants have employed reasonable list maintenance procedures that comply with the NVRA, and (2) whether additional programs to remove registered voters improperly risk unlawfully purging eligible voters. *Compare* Compl. ¶¶ 19, 43–44, 58, 98–99, *with* Mot. at 10–13, 27. There can be no legitimate dispute that the proposed Defendant-Intervenors seek to advance issues that are "congruent with the legal issues implicated in the main action." *Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency*, 278 F.R.D. 98, 111 (M.D. Pa. 2011); *see also Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*,

---

[6] Contrary to Plaintiff's repeated suggestion, *see* Opp. at 9, 16, 21, Rule 24 does not require a movant to submit a declaration. In any event, Plaintiff does not, and cannot dispute, the missions and interests of the proposed Defendant-Intervenors, which are a matter of public record and have been recognized by federal and state courts around the country. See Ex. 1., Declaration of Suzanne Almeida ¶¶ 7-8, 11-13; Ex. 2, Declaration of Janeth Hendershot ¶¶ 6-7, 10-12.

11

No. 3:16-CV-2470, 2017 WL 2118285, at *2 (M.D. Pa. May 16, 2017) (proposed intervenor "undeniably has a direct interest in this lawsuit, in the form of claims and defense that share with the main action a common question of law or fact").

*Winfrey* is again instructive. The district court granted permissive intervention, finding that the intervenor League of Women Voters "sufficiently [] identified a common issue of fact or law implicating their interests" where it opposed an NVRA lawsuit seeking to compel defendants to impose additional list maintenance procedures. *Winfrey*, 2020 WL 2781826, at *1.[7]

### B.   The Proposed Intervenors Will Meaningfully Contribute to the Litigation.

Plaintiff's suggestion that the proposed Defendant-Intervenors "will add nothing to the litigation" is empty rhetoric. *See* Opp. at 24. "[A] fulsome consideration of both competing interests, vigorously advocated by appropriately interested parties concerned with each side of the balancing test, unquestionably will be helpful to the Court when it is called upon to strike the required balance and decide whether the defendants' program of list maintenance is 'reasonable' within the meaning of the statute." *Winfrey*, 2020 WL 2781826, at *5. Nor would

---

[7] *Winfrey* counsels against following *Logan*'s flawed logic. *See* Opp. at 16 at 23–24. *Logan* ignored that additional purges the plaintiffs sought could potentially result in the removal of at least some eligible voters from the registration list. *Compare Logan*, ECF No. 76, at 4, with Winfrey, 2020 WL 2781826, at *4–5 (noting plaintiff and intervenors represent "competing interests").

12

movants' contributions be "superfluous," *see* Opp. at 24, because their interests in "ensuring that no unreasonable measures are adopted that could pose an elevated risk of removal" are "sufficiently distinct from the interests of . . . election officials in voting roll maintenance" cases. *Winfrey*, 2020 WL 2781826, at *3.

Plaintiffs question Movants' experience, *see* Opp. at 24, but Common Cause, the League of Women Voters, and their counsel have an undeniable history of litigating to protect the right to vote, including in NVRA voter registration cases. *See*, *e.g.*, *Winfrey*, 2020 WL 2781826 (League of Women Voters intervenes in analogous NVRA voter purge case); *Lawson*, 937 F.3d 944 (NVRA case involving voter purges); *Common Cause/N.Y. v. Brehm*, No. 17-cv-6770, 2020 WL 122589 (S.D.N.Y. Jan. 10, 2020) (finding liability under the NVRA); *see also League of Women Voters v. Commonwealth of Pa.*, 178 A.3d 737 (Pa. 2018) (redistricting case).

Curiously, Plaintiffs also profess ignorance of what Defendant-Intervenors' potential expert testimony could offer the case, *see* Opp. at 24, even though Movants' brief cited expert testimony regarding registration rates in *Bellitto v. Snipes*, 935 F.3d 1198, 1208 (11th Cir. 2019), which is plainly relevant in this case. *Compare* Mot. at 29, *with* Compl. ¶¶ 53–58 (suggesting the registration rates in the three counties are high).

### C. Granting Permissive Intervention Will Not Cause Undue Delay or Prejudice to the Parties

Finally, granting intervention will not cause undue delay or prejudice. To the contrary, in a complicated case like this one, Defendant-Intervenors' presence will "serve to clarify issues and, perhaps, contribute to resolution of this matter." *Am. Farm Bureau Fed'n*, 278 F.R.D. at 111; *see also Audi of Am.*, 2017 WL 2118285, at *2 (finding that permitting intervention "may streamline the proceedings"). Indeed, "plaintiff's contention that [movants'] participation will 'drive up the costs of the litigation' is unsupported by any facts." *Winfrey*, 2020 WL 2781826, at *5. Nor does Plaintiff cite "authority for the proposition that any incremental increase in costs incurred by fully addressing legitimate third-party interests is a proper basis for denying intervention." *Id.*

Plaintiff's remaining objections are not well-founded. The unremarkable observation that a negotiated resolution of this case could possibly result in the removal of eligible voters from the rolls, *see* Mot. at 20-21, 23, has nothing to do with "interfering with settlement negotiations," as Plaintiff suggests, or the facts of *U.S. v. Territory of Virgin Islands*, 748 F.3d 514, 524–25 (3d Cir. 2014), where movants objected to a near-final settlement agreement. *Compare id.* at 518, *with* Opp. at 25.

Plaintiff's dispute about the merits of the case, *see* Opp. at 25, only shows that Plaintiff and Defendant-Intervenors have differing interpretations of which of the NVRA's objectives are at risk of being sacrificed in this case. Plaintiff,

14

moreover, fails to establish any actual prejudice that could defeat permissive intervention.  *Bellitto*, 935 F.3d at 1198 ("[The] twin objectives [of the NVRA] . . . naturally create some tension"); *see also Winfrey*, 2020 WL 2781826, at *4–5 ("[E]ven if some prejudice may result, any complication of the case must be weighed against the value of resolving all competing legal positions within a single decisive lawsuit setting out the prevailing law for all parties to follow.").[8] Interests in judicial economy and avoiding multiplicity of litigation therefore support permissive intervention.  *See Buck v. Gordon*, 959 F.3d 219, 224–25 (6th Cir. 2020) (Strong interest in judicial economy and desire to avoid multiplicity of litigation . . . supports permissive intervention").

## CONCLUSION

The Court should grant the proposed Defendant-Intervenors' Motion to Intervene and for Leave to File on the Same Schedule as Defendants.

---

[8] Plaintiff cites *North Carolina State Conf. of the NAACP v. Cooper*, 332 F.R.D. 161 (M.D.N.C. 2019), but that case was effectively overturned as the intervenors were later granted intervention by the Fourth Circuit when defendants appealed the court's preliminary injunction.  *See* Order, *N.C. State Conf. of the NAACP v. Raymond*, 18-cv-01034, ECF No. 43 (4th Cir. Mar. 27, 2020) (granting motion to intervene).

Dated: June 9, 2020 Respectfully submitted,

| | |
|---|---|
| Adriel I. Cepeda Derieux* | */s/ Witold J. Walczak* |
| Sophia Lin Lakin* | Witold J. Walczak |
| Dale E. Ho* | Sara J. Rose |
| American Civil Liberties Union Foundation | American Civil Liberties Union of Pennsylvania |
| 125 Broad Street, 18th Floor | P.O. Box 23058 |
| New York, NY 10004 | Pittsburgh, PA 15222 |
| Tel.: (212) 549-2500 | Tel.: (412) 681-7736 |
| acepedaderieux@aclu.org | vwalczak@aclupa.org |
| dho@aclu.org | |
| | |
| Ezra Rosenberg* | William T. Russell, Jr.* |
| John Powers* | David Elbaum* |
| Lawyers' Committee for Civil Rights Under Law | Shannon K. McGovern* |
| | Daniel Owsley* |
| 1500 K Street, N.W., Suite 900 | Simpson Thacher & Bartlett LLP |
| Washington, D.C. 20005 | 425 Lexington Avenue |
| Tel: (202) 662-8300 | New York, NY 10017 |
| erosenberg@lawyerscommittee.org | Tel: (212) 455-3979 |
| jpowers@lawyerscommittee.org | wrussell@stblaw.com |
| | smcgovern@stblaw.com |
| | |
| *Pro hac vice* application to be filed | *Attorneys for Proposed Defendant-Intervenors* |

16

## CERTIFICATE OF WORD COUNT

I HEREBY CERTIFY on this 9th day of June that the above memorandum contains fewer than 5000 words.

/s/ *Witold J. Walczak*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, the foregoing reply brief in support of motion to intervene was filed electronically and served on plaintiffs' counsel of record via the ECF system of the U.S. District Court for the Middle District of Pennsylvania; and via e-mail on the following counsel for defendants: Nicole Boland (Assistant Attorney General, Commonwealth of Pennsylvania), Kristen Mayock (Deputy Solicitor, Chester County), Joseph Khan (Solicitor, Bucks County) and William Martin (Solicitor, Delaware County).

.

Dated:      June 9, 2020                    */s/ Witold J. Walczak*