**Attorneys for Plaintiff**

Robert D. Popper*
Eric Lee*
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, D.C. 20024
(202) 646-5172
Rpopper@judicialwatch.org
Elee@judicialwatch.org

T. Russell Nobile*
JUDICIAL WATCH, INC.
Post Office Box 6592
Gulfport, Mississippi 39506
(202) 527-9866
Rnobile@judicialwatch.org

H. Christopher Coates*
LAW OFFICE OF H. CHRISTOPHER COATES
934 Compass Point
Charleston, South Carolina 29412
(843) 609-7080
curriecoates@gmail.com

Shawn M. Rodgers, Esq.
Jonathan S. Goldstein, Esq.
GOLDSTEIN LAW PARTNERS, LLC
11 Church Road
Hatfield, Pennsylvania 19440
(610) 949-0444
srodgers@goldsteinlp.com
jgoldstein@goldsteinlp.com

* *admitted pro hac vice*

**Attorneys for Defendants**

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
Mark A. Aronchick
Michele D. Hangley
Christina C. Matthias*
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 496-7050
maronchick@hangley.com
mhangley@hangley.com
cmatthias@hangley.com

*Counsel for County Defendants*

**admitted pro hac vice*

Nicole J. Boland, Esq.
Steve Moniak, Esq.
PA Office of Attorney General
15th Fl., Strawberry Square
Harrisburg, PA 17101
nboland@attorneygeneral.gov
smoniak@attorneygeneral.gov
Telephone: (717) 783-3146

*Counsel for the Commonwealth*

1

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> The COMMONWEALTH of PENNSYLVANIA; KATHY BOOCKVAR, in her official capacity as Secretary of the Commonwealth; the BUCKS COUNTY COMMISSION; the BUCKS COUNTY BOARD OF ELECTIONS; the BUCKS COUNTY REGISTRATION COMMISSION; THOMAS FREITAG, in his official capacity as Elections Director for Bucks County; the CHESTER COUNTY COMMISSION; the CHESTER COUNTY BOARD OF ELECTIONS; the CHESTER COUNTY REGISTRATION COMMISSION: SANDRA BURKE, in her official capacity as Director of Elections in Chester County; the DELAWARE COUNTY COUNCIL; the DELAWARE COUNTY BOARD OF ELECTIONS; the DELAWARE COUNTY REGISTRATION COMMISSION; and LAUREEN HAGAN, in her official capacity as Chief Clerk, Elections Bureau for Delaware County, <br><br> *Defendants*. | Civ. Action No. 1:20-cv-00708-CCC |

## JOINT CASE MANAGEMENT PLAN

Having complied with the meet and confer requirements set forth in the Local Rules, or with any orders specifically modifying their application in the above-captioned matter, the Parties hereby submit the following proposed Joint Case Management Plan for the Court's approval:

2

**1.      Principal Issues**

   **1.1    Separately for each party, please give a statement summarizing this case:**

   ***By Plaintiff***: Congress enacted the National Voter Registration Act ("NVRA") for the stated purposes of increasing the eligible citizens who register to vote and ensuring that accurate and current voter registration rolls are maintained.  52 U.S.C. § 20501(b). In its complaint, the Plaintiff alleges that Defendants have failed to comply with the NVRA's second purpose, violating two different provisions of Section 8 of the NVRA, 52 U.S.C. § 20507, and failing to provide records requested by Judicial Watch as part of its nationwide efforts to ensure compliance with the NVRA.

   In Count I, the Plaintiff alleges that the Defendants have failed to institute a program that makes a reasonable effort to remove voters who have died or changed residence.  In particular, Defendants have failed at one of their core responsibilities under Section 8(d), namely, removing "inactive" voters who have shown no voting-related activity for two general federal elections.   Defendants themselves reported to the federal Election Assistance Commission (EAC) that the Commonwealth as a whole and Bucks, Chester and Delaware Counties in particular removed absurdly low numbers of registrations of those who had moved.   Plaintiff's many requests for specific information on this topic were met with evasive and irrelevant responses or, in the case of Delaware County, with no response at all.

   In its answer, the Commonwealth concedes that it ignored its obligations under federal regulations and submitted incorrect data to the EAC.   It alleges that it now has submitted correct data to the EAC.   However, in pre-suit correspondence attached to the complaint, the Plaintiff pointed out how ambiguities and outright inconsistencies affect the same data Defendants have now reported to the EAC.  These problems with the data, which Defendants did not explain despite having had the opportunity to do so, call its import and reliability into doubt.   Further, in response to an anticipated dispositive motion by the Commonwealth, the Plaintiff expects to show that the data appended to the Commonwealth's answer, far from exonerating it, proves that both the Commonwealth and the County Defendants have failed to remove sufficient numbers of currently ineligible registrations as necessary to comply with the NVRA.

   Judicial Watch also alleges that the registration rates for Bucks, Chester, and Delaware Counties are high, both for Pennsylvania and compared to the rest of the country, which further suggests a failure to remove outdated registrations.

   In Count II, the Plaintiff alleges that Defendants violated Section 8(i) of the NVRA, 52 U.S.C. § 20507(i), by failing to provide requested records concerning their voter list maintenance programs and activities. Count II stands regardless of the outcome of pending or anticipated dispositive motions related to Count I. The only relief Plaintiff

requests is an order from this Court mandating compliance with the NVRA.

**By Defendants**: In December 2019, Plaintiff Judicial Watch contacted the Defendants, asserting that they were not in compliance with their obligations to remove ineligible voters from official voter rolls under the National Voter Registration Act ("NVRA"), and seeking information about the voter list maintenance activities of the County Defendants.  Several Defendants responded, providing reliable information (including from Pennsylvania Department of State sources) demonstrating that the County Defendants had engaged in significant efforts consistent with these obligations, and that they had removed many more ineligible voters from the rolls than Judicial Watch's source indicated.  Judicial Watch never responded to most of these communications, and never accepted certain Defendants' offers of additional information or addressed the evidence Defendants raised about the County Defendants' voter list maintenance activity.  Instead, Judicial Watch filed this lawsuit in April, relying on the discredited data that formed the basis of its December correspondence.

Judicial Watch alleges that the Defendants violated 52 U.S.C. § 20507(a)(4) by failing to make a "reasonable effort" to cancel the registrations of ineligible voters, and that certain of the Defendants (Secretary Boockvar, the Chester County Defendants, and the Delaware County Defendants) violated 52 U.S.C. § 20507(i) by failing to provide "all records" from the prior two years concerning programming conducted to ensure the accuracy and currency of voter rolls.  As the County Defendants have demonstrated in their Motion to Dismiss, Judicial Watch has failed to allege a plausible claim that they have not made "reasonable efforts" to remove voters who become ineligible due to death or change of residence.  Judicial Watch's own evidence establishes that the County Defendants remove thousands of voters each year on these bases.  Moreover, as the Commonwealth's Answer demonstrates and as Defendants tried in vain to explain before Judicial Watch sued, the data that Judicial Watch relies on in its Complaint has been proven to be inaccurate in that it drastically underestimates the number of removals that the County Defendants have made during the relevant time period.  The Commonwealth has in the time since the Complaint was filed submitted corrected data to the Election Assistance Commission ("EAC") which demonstrates that each of the County Defendants made many thousands more removals than originally reported falling under the "A9e" category of removals that Judicial Watch focuses on in its Complaint.  *See* EAC Surveys and Data, "Errata Note: 2018 EAVS Comprehensive Report and Accompanying Datasets," available at: https://www.eac.gov/sites/default/files/Research/Errata_Note_2018_EAVS_v1_3.pdf and updated 2018 data, "EAVS Datasets Version 1.3 (released July 15, 2020)," available at: https://www.eac.gov/research-and-data/datasets-codebooks-and-surveys. Further, Judicial Watch failed to comply with the NVRA's pre-suit notice requirements with regard to its claims under 52 U.S.C. § 20507(i) in Count II, and therefore cannot pursue those claims.

**1.2   The facts the parties agree on are as follows:**

The Parties dispute all facts.

**1.3   The legal issues the parties dispute are as follows:**

All legal issues are disputed.

**1.4   Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:**

The Delaware County Voter Registration Commission (inaccurately referred to in the caption as the Delaware County Registration Commission) has not yet been served.  Counsel for County Defendants are willing to accept service of process on behalf of this Defendant.

**1.5   Identify any named parties that have not yet been served:**

Delaware County Registration Commission.

**1.6   Identify any additional parties that may be joined:**

**Plaintiff:** The Plaintiff does not plan to add additional parties.  As it further investigates the State's compliance with Section 8 of the NVRA, Plaintiff Judicial Watch may seek leave to add additional parties, as necessary for adequate relief.

**Defendants:** At this time, the Defendants do not plan to add additional parties.

**1.7   Identify any additional claims that may be added:**

**Plaintiff:** Plaintiff is considering whether to amend the complaint to add an additional count related to the recent statement by the State in its answer that it reported inaccurate information to the federal Election Assistant Commission.

**Defendants:** At this time, the Defendants do not plan to assert any claims.

**2.0   Disclosures**

**2.1   Separately for each party, list by name and title/position each person whose identity has been disclosed.**

Neither Party has made any disclosures.  The undersigned counsel certify that they will make initial disclosures by August 10, 2020.

**3.0   Early Motions**

**Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation**:

| Nature of Motion | Movant | Anticipated Filing Date |
|---|---|---|
| 1. Motion to Intervene | Third-Party | ECF No. 4 |
| 2. Mot. to Amend Complaint | Plaintiff | If at all, by 12/1/2020. |
| 3. Motion to Dismiss | County Defendants | ECF No. 35 |
| 4. Motion for JOP | Commonwealth | Within 60 Days |

## 4.0     Discovery

### 4.1     Briefly describe any discovery that has been completed or is in progress:

**Plaintiff:**  No discovery has been completed or is in progress.  Plaintiff is preparing its initial disclosures with relevant documents and is in the process of preparing written discovery requests.

**Defendants:** No discovery has been completed or is in progress.   Defendants are preparing their initial disclosures and are in the process of preparing discovery requests.

### 4.2     Describe any discovery that all parties agree should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):

Plaintiff states that the Parties will take depositions and serve interrogatories, requests for production, and requests for admissions to develop the factual bases for the prosecution and defense of the claims in this action.  The purpose of the discovery Plaintiff will take from Defendants will be to establish their current procedures for removing the voter registrations of those who have moved, died, or become ineligible. As it needs to document several complex, interlocking technical processes, involving decisionmakers and staff in four different locations, Plaintiff anticipates (and knows from experience) that discovery will be involved and extensive.   In the course of this discovery, Plaintiff will seek to resolve the inconsistencies affecting Defendants' data, which were not resolved either in previous correspondence with Defendants or in the Commonwealth's answer.   Plaintiff will also designate experts who will help the trier of fact to understand the demographic and statistical evidence and the proper conduct of an NVRA-compliant list maintenance program.   The Parties also reserve the right to depose other individuals who may have knowledge or relevant facts.

The County Defendants state that no discovery should take place until the Court has resolved the County Defendants' Motion to Dismiss, the Defendants' additional anticipated early dispositive motions, Plaintiff's anticipated Motion to Amend, and the pending Motion to Intervene, for the following reasons: 1) Given that the corrected data submitted to the EAC demonstrates that there is no basis for Plaintiff's allegations, the Court's resolution of the dispositive motions is likely to resolve the case in its entirety, or, at the very least, significantly narrow the issues in the case; 2) the information relevant to Plaintiff's claims is largely publicly available and is already in Plaintiff's possession; 3) Defendants are consumed by the efforts necessary to prepare for the upcoming general election amidst a public health crisis that has seriously impacted election logistics, and urgent election-related litigation that requires resolution before the election, such that beginning discovery in this case prior to the election would be an extraordinary burden; 4) even if Plaintiff were entitled to relief (which it is not), there is no urgent need for such relief, because the NVRA bars any action by the County Defendants to further cull the voter rolls within 90 days of an upcoming election (as of August 3, 2020); and 5) the Court should grant the Motion to Intervene, and Intervenors should be permitted to participate in discovery.

Commonwealth Defendants adopt and take the same position on discovery as the County Defendants.

**4.3   Describe any <u>discovery</u> that one or more parties want(s) to conduct but <u>to which another party objects</u>, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:**

Plaintiff desires to begin discovery. Plaintiff advised Defendants that they are willing to work with Defendants to accommodate their schedule in the weeks leading up to the November 2020 elections. However, Plaintiff sees no point in barring all discovery for the next four months until the election is held, or until Defendants' dispositive motions are resolved. Further, as Plaintiff has yet to serve discovery requests, Defendants are only speculating when they suggest that such requests will be objectionable.

Defendants understand that Plaintiff may intend to seek discovery into Defendants' internal communications, policy decision making, and training. As discussed above, Defendants believe that given the extensive information already in Plaintiffs' hands or readily available from public sources, the pending intervention motion, the pending and anticipated dispositive motions, and the burden that the COVID-19 pandemic is imposing on Defendants' ability to provide essential services to the public, no discovery is appropriate at this point. In particular, in light of the demands imposed on all of the Defendants by the upcoming 2020 general election, and further, given that no action can be taken by the Defendants in line with Plaintiff's requested relief prior to the election, it would be unduly burdensome (and in any case it would not be productive) to begin discovery now. If and when discovery commences, Defendants will likely take the

position that much of the information Plaintiff seeks is irrelevant, not proportionate, and protected by certain privileges and privacy considerations.

    **4.4**    **Identify any subject area limitations on discovery that one or more parties would like imposed, at the first stage of or throughout the litigation:**

Plaintiff does not have any recommendations for subject area limitations on discovery.

As discussed above, Defendants believe that certain of the discovery that Plaintiff intends to seek will go beyond the bounds of relevance and proportionality. Defendants will determine their positions on these issues when Plaintiff articulates its discovery requests.

    **4.5**    **For each of the following discovery tools, recommend the per-party or per-side limitation (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):**

        **4.5.1**   **Depositions (excluding experts) to be taken by:**

        **Plaintiff Judicial Watch:**   **20**\*

*Plaintiff needs to develop a holistic understanding of how the State and each county Defendant conducts its respective list maintenance programs, which typically requires depositions of both decisionmakers and their technical staff. In view of the fact that Defendants include the Commonwealth and three of its counties, additional depositions may be necessary

Defendants do not agree to Plaintiff's request to take 20 depositions; Defendants agree to 10 depositions by each party, as is the default number of depositions under Fed.R.Civ.P. 30-31.

        **Defendant(s):**   **10**

        **4.5.2**   **Interrogatories to be served by:**

        **Plaintiff Judicial Watch:**   **30**\*

*Plaintiff believes that a greater number of interrogatories can focus the rest of its discovery, including the depositions it seeks to take and

8

its requests for production.

Defendants do not agree to Plaintiff's request to serve 30 interrogatories; Defendants agree to 25 interrogatories by each party, as is the default number of interrogatories under Fed.R.Civ.P. 33.

**Defendant(s):     25     **

### 4.5.3   Document production requests to be served by:

**Plaintiff Judicial Watch:       40     **

**Defendant(s):      20     **

### 4.5.4   Requests for admission to be served by:

**Plaintiff Judicial Watch:       40*    **

**Defendant(s):    20*    **

*Excluding requests for admission related to authenticating documents for use at trial.

### 4.6   Discovery of Electronically Stored Information

Counsel certify that they have conferred about the matters addressed in M.D. Pa. LR 26.1 and that they are in agreement about how those matters will be addressed in discovery with the following exceptions:

- County Defendants comply with Commonwealth records retention procedures and with the recordkeeping requirements set forth in state and federal law.  The County Defendants believe that, for the reasons set forth herein, discovery of electronically stored information should not commence at this point.

## 5.0   Protective Order

At this time, no party believes a protective order is necessary.   Arrangements may be required, however, to protect voters' confidential information.

## 6.0   Scheduling

**6.1    Final date for joining additional parties:**

By Plaintiff Judicial Watch:        12/1/2020

By Defendant(s):        12/1/2020

**6.2    Final date for amending pleadings:**

By Plaintiff Judicial Watch:        12/1/2020

By Defendant(s):        12/1/2020

**6.3    All fact discovery commenced in time to be completed by:**

Plaintiff suggests 4/7/2021

Defendants suggest 7/7/21

**6.4    All potentially dispositive motions should be filed by:**

Plaintiff suggests 7/7/21

Defendants suggest 10/6/21

**6.5    Reports from retained experts due:**

By Plaintiff Judicial Watch:        5/5/21 (Defendants suggest 8/4/21)

By Defendant(s):        10/4/21*

*Defendants request 60 days from the deadline for Plaintiff's expert report to file a report from any retained experts because the large number of governmental entity Defendants will demand a great deal of time-consuming coordination regarding the retention of and any opinions issued by experts on behalf of the Defendants.   However, Defendants defer to the Court's Trial Term Calendar, which dictates 9/1/21 for Responsive Expert Reports for March 2022 trials, in the alternative.

**6.6    Supplementations due:**

Plaintiff suggests 6/16/21

Defendants suggest 10/18/21*

*Defendants again request an alternative date to that dictated by the Court's Trial Term Calendar for Supplemental Expert Reports, which corresponds with the two-week time lag between Responsive Expert Reports and Supplemental Expert Reports set forth in the Court's Trial Term Calendar, due to the requested additional time for Responsive Expert Reports. Again, Defendants defer to the Court's Trial Term Calendar, which dictates 9/15/21 for Supplemental Expert Reports for the March 2022 trial track, in the alternative.

**6.7   All expert discovery commenced in time to be completed by:**

Plaintiff suggests 7/7/21

Defendants suggest 11/18/21*

*In the alternative, if the deadline for Defendants' Expert Reports is set for 9/1/21 and the deadline for Supplemental Expert Reports is set for 9/15/21, Defendants request 10/15/21.

**6.8   This case may be appropriate for trial in approximately:**

Plaintiff suggests 580 Days from the filing of the action in this court

Defendants suggest 670 days from the filing of the action in this court.

**6.9   Suggested Date for the final Pretrial Conference:**

Plaintiff suggests 11/18/21

Defendants suggest 2/17/22

**6.10  Trial**

    **6.10.1   Suggested Date for Trial:**

Plaintiff suggests 12/21

Defendants suggest 03/22

**7.0   Certification of Party Settlement Authority**

I hereby certify that the following individual(s) have settlement authority.

**For Plaintiff Judicial Watch**:
Tom Fitton, President
Judicial Watch, Inc.
425 Third Street, SW | Suite 800
Washington, DC 20024
(202) 646-5172

**For Commonwealth Defendants:**
Timothy Gates, Esq.
Chief Counsel, Department of State
401 North St., Harrisburg PA 17120

**For Bucks County Defendants**
Bucks County Law Department
County of Bucks
55 East Court Street, 5th floor
Doylestown, PA 18901
(215) 348-6464

**For Chester County Defendants**
Marian Moskowitz
Chair, Chester County Commissioners' Office
313 West Market Street, Suite 6202
West Chester, PA 19380
(610) 344-6100

**For Delaware County Defendants**
Members of the Delaware County Voter Registration Commission
Members of the Delaware County Board of Elections
Government Center, Ground Floor
201 W. Front St.
Media, PA 19063

**8.0   Alternative Dispute Resolution**

    **8.1**   **Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.**

    None at this time.

    **8.2**   **If the parties have been unable to agree on an ADR procedure, but one or more parties believe that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:**

None.

**8.3    If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:**

The Parties dispute the claims, and anticipate that discovery and/or dispositive motions may sort out liability issues. But the Parties remain open to exploring ADR after discovery is undertaken.

**9.0    Consent to Jurisdiction by a Magistrate Judge**

**9.1.    Indicate whether all parties agree, pursuant to 28 U.S.C. ' 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:**

No.

**9.2    If parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings:**

N/A.

**10.0   Other Matters**

**Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.**


**11.0   Identification of Counsel**

**Counsel shall be registered users of the court's Electronic Case Files System (ECF) and shall file documents electronically in accordance with the Local Rules of Court and the Standing Order RE: Electronic Case Filing Policies and Procedures.   Electronic filing is required unless good cause is shown to the Chief Judge why counsel cannot comply with this policy.   Any request for waiver of electronic filing must be filed with the Clerk's Office prior to the case management conference.   The Chief Judge may grant or deny such request.**

**Identify by name, address, and telephone number lead counsel for each party.   Also please indicate ECF User status below**.

13

Dated July 22, 2020

| | |
|---|---|
| **Plaintiff**: | /s/     Robert Popper     <br>Robert D. Popper<br>JUDICIAL WATCH, INC.<br>425 Third Street SW, Suite 800<br>Washington, D.C. 20024<br>(202) 646-5172<br>Rpopper@judicialwatch.org<br><br>   X    ECF User(s) |
| **County Defendants:** | /s/ Mark A. Aronchick     <br> /s/ Michele D. Hangley         <br>HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER<br>Mark A. Aronchick<br>Michele D. Hangley<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Telephone: (215) 496-7050<br>maronchick@hangley.com<br>mhangley@hangley.com<br><br>   X    ECF Users |
| **Commonwealth Defendants:** | Nicole J. Boland, Esq.<br>Steve Moniak, Esq.<br>PA Office of Attorney General<br>15th Fl., Strawberry Square<br>Harrisburg, PA 17101<br>nboland@attorneygeneral.gov<br>smoniak@attorneygeneral.gov<br>Telephone: (717) 783-3146<br><br>  X     ECF Users |

**\* Fed.R.Civ.P.7.1 requires a nongovernmental corporate party to file a statement with the initial pleading, first entry of appearance, etc., that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock, or state there is no such corporation.**