# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUDICIAL WATCH, INC.,** | : | |
| Plaintiff | : | No. 1:20-CV-0708 |
| | : | |
| v. | : | **Judge Conner** |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA, KATHY BOOCKVAR, BUCKS COUNTY COMMISSION, BUCKS COUNTY BOARD OF ELECTIONS, BUCKS COUNTY REGISTRATION COMMISSION, THOMAS FREITAG, CHESTER COUNTY COMMISSION, CHESTER COUNTY BOARD OF ELECTIONS, CHESTER COUNTY REGISTRATION COMMISSION, SANDRA BURKE, DELAWARE COUNTY COUNCIL, DELAWARE COUNTY BOARD OF ELECTIONS, DELAWARE COUNTY REGISTRATION COMMISSION** *and* **LAUREEN HAGAN,** | : | **Electronically Filed Document** *Complaint Filed 04/29/20* |
| Defendants | : | |
| | : | |
| v. | : | |
| | : | |
| **COMMON CAUSE PENNSYLVANIA** *and* **LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA,** | : | |
| Intervenor Defendants | : | |

## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Defendant, Acting Secretary of the Commonwealth Veronica Degraffenreid, by and through her undersigned counsel, hereby submits this Brief in Opposition to Plaintiff's Motion to Amend the Complaint, as follows.

## I.   INTRODUCTION

Plaintiff's Motion to Amend the Complaint should be denied because Plaintiff's proposed amended complaint fails to state a claim, is in bad faith and is prejudicial to Secretary Degraffenreid. Plaintiff's pleading is barred under the plain terms of the very statute under which it seeks relief. A private cause of action under the National Voter Registration Act (NVRA) is available only if a notice of purported deficiencies is issued *and* those deficiencies are not corrected within ninety days. Plaintiff cannot pass the statutory threshold.

No notice was issued to the Secretary regarding statewide practices prior to the filing of the operative Complaint, which is the subject of the Secretary's pending Motion for Judgment on the Pleadings. After the Secretary filed her Motion, Plaintiff, for the first time, on April 22, 2021, sent a notice of purported violations listing low removal numbers in 27 counties. In response, the Secretary went above and beyond her statutory obligations, resolutely assisting in clearing *all* inactive voters eligible for removal in the counties identified. The number of removable inactive voters for each of these counties is now zero. The Secretary also confirmed that the registration rates are below 96% for Bucks, Chester,

Delaware and Pike counties. All of this was accomplished within the 90-day statutory grace period provided under the statute, and Plaintiff was timely notified. Yet, Plaintiff still attempts to pursue a claim against the Secretary, seeking to deny her the statutory cure period, assuming a violation even existed.

Plaintiff's proposed pleading contravenes federal law, is in bad faith considering the Secretary's efforts as reported to Plaintiff, and is prejudicial to the Secretary's statutory rights. It should, thus, be rejected.

II. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff initiated this action by filing a Complaint on April 29, 2020, setting forth two counts under the NVRA (52 U.S.C. § 20507(a)(4)), 20507(i)), challenging the Secretary's voter list maintenance practice on a statewide basis (and production of documents relating thereto). Plaintiff also sued Bucks, Chester, and Delaware Counties. This Honorable Court granted the Counties' Motion to Dismiss because Plaintiff failed to state a plausible claim that the counties failed to comply with their list maintenance obligations under the NVRA.

The Secretary filed a Motion for Judgment on the Pleadings, which has been held in abeyance pending Plaintiff's Motion to Amend. This dispositive motion was filed because Plaintiff never provided the required statutory notice to the Secretary regarding any supposed issues surrounding statewide list maintenance practices. Rather, Plaintiff sent three letters specific to Bucks, Chester and

Delaware counties. And, Plaintiff failed to state a claim with respect to those counties as its arguments were premised on erroneous numbers for the 2016-2018 time period, and flawed interpretations of registration rates.

Plaintiff now pivots, and attempts to assert a new theory against a host of new counties for a new time period. In the proposed amended complaint, Plaintiff claims that the numbers of removals in 27 counties is low, as garnered from the data submitted to the U.S. Election Assistance Commission (EAC) for the time period of 2018-2020, as reported on the 2020 Election Administration and Voting Survey (EAVS) datasets.[1] Plaintiff also claims that registration rates in four particular counties, Bucks, Chester, Delaware and Pike, are high (reiterating arguments already rejected by Judge Conner). Plaintiff alleges that the Secretary is, essentially, vicariously liable for these purported deficiencies.

This time around, on April 22, 2021, Plaintiff sent the Secretary a "Statutory Notice of Violations of 52 U.S.C. § 20507."[2] This is the first notice letter of its kind issued directly to the Secretary. The Letter claims that the removal numbers for 27 counties are low, and that the registration rates in Bucks, Chester, Delaware and Pike counties are high. As to the Secretary, however, there are no specific allegations as to what she did or did not do. It does not set forth any practices

---

[1] https://www.eac.gov/research-and-data/datasets-codebooks-and-surveys
[2] A true and correct copy of Plaintiff's April 22, 2021 letter is attached hereto as Exhibit "A."

common to the entire state for which the Secretary would be responsible. Rather, the letter states that the Secretary is not complying with the NVRA because the Department of State amended its EAVS data with the EAC for the last reporting period. The Letter states that "Judicial Watch will file a complaint against you *if* these violations are not corrected within 90 days." *See* Exhibit "A" (emphasis added).

Upon receiving the letter, the Secretary immediately took action by investigating the issues raised and working with the identified 27 counties to remove outstanding inactive voters who had failed to return a confirmation notice and did not participate in the subsequent two consecutive federal elections. With the Secretary's assistance, the counties removed every single inactive voter eligible for removal from the rolls. The total inactive voters removed was 178,258. There are now 0 inactive voters eligible for removal in each of the identified 27 counties.[3]

The Secretary also reviewed the registration rates of the eligible voting population for Bucks County, Chester County, Delaware County, and Pike County. To do this, the Secretary used 2019 census population estimates from two websites

---

[3] A true and correct copy of the Secretary's July 16, 2021 correspondence (with its attachment) indicating that there are zero inactive voters in the 27 counties is attached hereto as Exhibit "B," and a true and correct copy of a spreadsheet listing the numbers of voters removed during the 90-day period is attached hereto as Exhibit "C." These documents indicate that the data submitted by the Department of State to the EAC for the most recent EAVS survey, while it was valid when submitted, is no longer current.

– American Community Survey[4] and Vintage[5] – and compared this data to the total registration for each county as of July 7, 2021, as reported on the Department of State's publicly accessible website.[6] The Secretary confirmed that all four counties have registration rates below 96%.

The Secretary accomplished all of this within ninety days, and, thus, within the express statutory cure period (as referenced in Plaintiff's letter). The Secretary timely reported her efforts and accomplishments in helping to clear the inactive voters to Plaintiff via correspondence to Judicial Watch dated July 16, 2021. *See* Exhibit "B." The Secretary followed-up with a letter from counsel requesting that Judicial Watch immediately withdraw its lawsuit.

Not only has Judicial Watch declined to withdraw the lawsuit, it is attempting to proceed with the case despite its actual notice of the corrections. This attempt is in bad faith, is prejudicial to the Secretary, and is futile. The Motion to Amend the Complaint should, therefore, be denied.

---

[4] https://data.census.gov/cedsci/table?q=United%20States&tid=ACSDP1Y2019.DP05

[5] https://www.census.gov/quickfacts/fact/table/US/PST045219

[6] https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElectionStatistics/Pages/VotingElectionStatistics.aspx

### III. <u>QUESTIONS PRESENTED</u>

A. Is Plaintiff's Motion to Amend futile because the proposed amended complaint fails to state a claim?

B. Would amendment be prejudicial to the Secretary?

C. Is Plaintiff's proposed amendment in bad faith?

**[Suggested Answers: All in the affirmative]**

### IV. <u>ARGUMENT</u>

<u>Standard of Review</u>

A motion for leave to amend a complaint is "addressed to the sound discretion of the district court." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272–73 (3d Cir. 2001). "A District Court may deny leave to amend a complaint if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Moreover, "[a] court may deny a request to amend a complaint if the amendment is futile, i.e. the proposed amended complaint fails to state a claim upon which relief can be granted." *Robinson v. Norwood*, 2013 WL 1413033, at *7 (M.D. Pa. Apr. 8, 2013), *aff'd*, 535 F. App'x 81 (3d Cir. 2013) (citing *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000)). Here, there are multiple bases to deny Plaintiff's Motion.

A. **Plaintiff's Motion to Amend is futile because the proposed amended complaint fails to state a claim.**

A motion to amend the complaint is appropriately denied if amendment would be futile. "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing "futility," the Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), and the plaintiff moves to amend, leave to amend should not be granted if the amendment would not cure the deficiency. *Id.*

    1. The proposed amended complaint is barred because the Secretary is protected by the statutory cure period.

Section 20510(b) of the NVRA provides that "[a] person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved." 52 U.S.C.A. § 20510(b)(1). "If the violation is not corrected within 90 days after receipt of a notice … the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." 52 U.S.C.A. § 20510(b)(2). The purpose of the NVRA's notice requirement is to "provide states ... an opportunity to attempt compliance before facing litigation." *Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457 (M.D. Pa. 2019); *see also Bellitto v. Snipes*,

8

268 F. Supp. 3d 1328, 1334 (S.D. Fla. 2017) (the "purpose of the notice requirement that is enumerated in § 20510 [is] to allow the potential NVRA defendant a curative period during which he or she may correct the violation identified, thereby coming into compliance with the NVRA."). If any deficiencies were not mentioned in the letter, the plaintiff must provide separate notice and a 90-day curative period under the statute before filing a suit concerning those deficiencies. *Bellitto*, 268 F. Supp. 3d at 1336 ("Similarly, notice as to one potential NVRA violation is not the equivalent of notice as to all potential NVRA violations. Rather, a potential NVRA defendant must have notice of exactly what violation or violations have been alleged in order to have a meaningful opportunity to attempt complete compliance before facing litigation.").

The plain language of the statute is clear. A person may not bring a private cause of action under the NVRA if the purported violations are corrected within 90 days of receiving a notice. Indeed, Plaintiff's Letter concedes this point as it quotes the statute: "This letter serves as official statutory notice pursuant to 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch will file a complaint against you *if these violations are not corrected* within 90 days." *See* Exhibit "A" (emphasis added).

In this case, the Secretary worked with the counties to timely correct the newly reported purported violations. Plaintiff listed low removal numbers in 27 counties. For most of these counties, Plaintiff stated that only single digit numbers

9

of voters were removed. Percentage-wise, Plaintiff stated that most counties removed 0% of their voting population, and that the others removed less than 2% of their voting population. Exhibit "A." Plaintiff does not specify what number or percentage of removals it deems proper nor does Plaintiff cite any case law establishing such a threshold.

Upon receiving the April 2021 Letter, the Secretary worked with the identified counties to clear the rolls of inactive voters eligible for removal. Now, there are 0 inactive voters eligible to be removed in any of these counties. In other words, all inactive voters eligible for removal have been removed. The numbers of inactive voters removed range from the lower hundreds to tens of thousands, depending on the particular county. *See* Exhibit "C." The numbers on Exhibit C correspond to column A9e of the EAVs survey. If the survey were to be submitted today, these are the numbers that would be reflected.

The Secretary also confirmed that the registration rates of the eligible voting population for Bucks County, Chester County, Delaware County, and Pike County are below 96%.[7] The Secretary completed her efforts within 90 days and informed

---

[7] Plaintiff also states that the fact that the Defendant amended its answers to the 2018 Election Administration and Voting Survey (EAVS) evidences a failure to maintain a program. This argument is a *non sequitur*. The obligation to maintain a reasonable general program for list maintenance is separate from the obligation to report data to the EAC. The statute does not provide for a separate cause of action on behalf of the EAC to defend its data collection.

Plaintiff on July 16, 2021 that the corrections were made. *See* Exhibit "B." In that correspondence, the Secretary alerted Plaintiff that there is no basis for Plaintiff to bring enforcement litigation. Undersigned counsel also followed-up with a letter demanding that Plaintiff immediately withdraw its pending action. Plaintiff has not withdrawn, nor has it issued a new notice identifying remaining deficiencies. Rather, it persists with its claims despite the fact that the Secretary acted during the 90-day statutory cure period to ensure that the counties removed from their rolls inactive voters eligible for removal.

Because the Secretary corrected the issues identified within 90 days, the statute forecloses Plaintiff's private cause of action. Plaintiff, consequently, has no standing, and this Court is deprived of jurisdiction to act on Plaintiff's claims. *Bellitto*, 268 F. Supp.3d at 1332 ("As the Court explained earlier in these proceedings, "'[t]his Court's jurisdiction, therefore, stems directly from § 20510(b), and Plaintiffs' standing to bring suit depends upon compliance with the statute.'"). Therefore, Plaintiff's proposed amended complaint would not survive a motion to dismiss, and its Motion to Amend is rightfully denied as futile.

> 2. The proposed amended complaint is not justiciable because there is no actual controversy with respect to the Secretary's list maintenance activities.

Plaintiff has no claim considering the updated numbers. There are no inactive voters who are eligible for removal in the identified counties. Thus, no relief can be granted.

In order for there to be a "case of actual controversy" in the constitutional sense, the controversy must be "one that is appropriate for judicial determination." *Wyatt, Virgin Islands, Inc.*, 385 F.3d 801, 806 (3d Cir. 2004). "A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (emphasis added). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937)). The conflict between the parties must be ripe for judicial intervention; it cannot be "nebulous or contingent" but "must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in

deciding them." *Id.* (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952)).

For these reasons, there is no actual controversy because the premise of Plaintiff's proposed amendment complaint—that there are "absurdly low" removal numbers—is false. Plaintiff based its notice letter on single digit removal numbers and 0-2% removal rates. Those numbers are no longer valid, and are now much higher. The Secretary has worked with the counties to correct Plaintiff's concerns and Plaintiff has not identified any remaining issues by way of a new letter. All that remains are Plaintiff's nebulous beliefs about what the numbers should be, which are not actionable, or justiciable. Furthermore, this Honorable Court recently, in granting the counties' motion to dismiss against Judicial Watch, stated that counties showing registration rates below 100 percent without more, do not imply the inference of a Section 8 violation. *See Judicial Watch v. Pennsylvania*, No. 20-708, 2021 WL 858865 at *6 (M.D. Pa. Mar. 8, 2021). There is no basis for the Court to issue declaratory and injunctive relief when there is no outstanding issue. The Court cannot order that which has already been done, such that Plaintiff's proposed amended complaint would be subject to dismissal under both Rules 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim.

B. **<u>Amendment would be prejudicial to the Secretary.</u>**

"Substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). "The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted." *Id.* Specifically, we have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.*; *see also Cornell & Co. v. Occupational Safety & Health Rev. Comm'n,* 573 F.2d 820, 823 (3d Cir. 1978) (finding significant prejudice because proposed amendment changed legal and factual basis of claim and prevented defendant from presenting defense).

In this case, amendment would be prejudicial to the Secretary because it would deny her the statutory cure period set forth in the NVRA. The statute is intended to provide the Secretary with an opportunity to correct any perceived deficiencies before she is subject to litigation. It does not allow Plaintiff to sue for declaratory or injunctive relief based upon circumstances that are no longer extant. To do so would make the statute punitive in nature, and vitiate the remedial purposes of the provision. It would be highly prejudicial to the Secretary to be sued when she availed herself of the cure period that the statute specifically affords her. On this basis, Plaintiff's Motion to Amend should be denied.

C. **Plaintiff's Motion to Amend should be denied because it is being brought in bad faith**.

Plaintiff was provided with timely notice of the Secretary's corrections made during the 90-day period following the April 2021 Letter. Counsel further followed-up with a letter reiterating that Plaintiff should withdraw the litigation. Yet, Plaintiff seeks to continue this lawsuit, notwithstanding. In addition to the fact that Plaintiff attempts to pivot its theories, to include new defendants and time periods, it is also acting in direct contradiction of the plain terms of a statute. This is in bad faith. Therefore, Plaintiff's Motion to Amend is appropriately denied.

V. **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Amend should be denied.

**Respectfully submitted,**

JOSH SHAPIRO
Attorney General

By: *s/ Nicole J. Boland*
NICOLE J. BOLAND
Senior Deputy Attorney General
Attorney ID 314061

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 783-3146**

STEPHEN MONIAK
Senior Deputy Attorney General
Attorney ID 80035

nboland@attorneygeneral.gov

**Date:  September 8, 2021**

KAREN M. ROMANO

15

**Chief Deputy Attorney General**
**Civil Litigation Section**

*Counsel for Defendant Commonwealth*
*of Pennsylvania and Boockvar*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUDICIAL WATCH, INC.,** | : | |
| Plaintiff | : | No. 1:20-CV-0708 |
| | : | |
| v. | : | Judge Conner |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA, KATHY BOOCKVAR, BUCKS COUNTY COMMISSION, BUCKS COUNTY BOARD OF ELECTIONS, BUCKS COUNTY REGISTRATION COMMISSION, THOMAS FREITAG, CHESTER COUNTY COMMISSION, CHESTER COUNTY BOARD OF ELECTIONS, CHESTER COUNTY REGISTRATION COMMISSION, SANDRA BURKE, DELAWARE COUNTY COUNCIL, DELAWARE COUNTY BOARD OF ELECTIONS, DELAWARE COUNTY REGISTRATION COMMISSION** and **LAUREEN HAGAN,** | : | **Electronically Filed Document** *Complaint Filed 04/29/20* |
| Defendants | : | |
| | : | |
| v. | : | |
| | : | |
| **COMMON CAUSE PENNSYLVANIA** *and* **LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA,** | : | |
| Intervenor Defendants | : | |

## CERTIFICATE OF SERVICE

I, Nicole J. Boland, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on September 8,

2021, I caused to be served a true and correct copy of the foregoing document to the following:

**VIA ECF**

| | |
|---|---|
| **Eric Lee, Esquire**<br>**Robert D. Popper, Esquire**<br>**Judicial Watch, Inc.**<br>**425 Third Street SW, Suite 800**<br>**Washington, DC  20024**<br>**rpopper@judicialwatch.org**<br>*Counsel for Plaintiff* | **H. Christopher Coates, Esquire**<br>**Law Office of H. Christopher Coates**<br>**934 Compass Point**<br>**Charleston, SC  29412**<br>*Counsel for Plaintiff* |
| **Jonathan S. Goldstein, Esquire**<br>**Goldstein Law Partners, LLC**<br>**11 Church Road**<br>**Hatfield, PA  19440**<br>*Counsel for Plaintiff* | **T. Russell Nobile, Esquire**<br>**Judicial Watch, Inc.**<br>**P.O. Box 6592**<br>**Gulfport, MS  39506**<br>*Counsel for Plaintiff* |
| **Shawn M. Rodgers, Esquire**<br>**Goldstein Law Partners, LLC**<br>**11 Church Road, Suite 1A**<br>**Hatfield, PA  19440**<br>**srodgers@goldsteinlp.com**<br>*Counsel for Plaintiff* | **Witold J. Walczak, Esquire**<br>**American Civil Liberties Union of Pennsylvania**<br>**247 Ft. Pitt Blvd, 2nd Floor**<br>**Pittsburgh, PA  15222**<br>**vwalczak@aclupa.org**<br>*Counsel for Intervenor Defendants* |

   *s/ Nicole J. Boland*
**NICOLE J. BOLAND**
Deputy Attorney General