IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

JUDICIAL WATCH, INC.,

              Plaintiff,

    v.

COMMONWEALTH of
PENNSYLVANIA; VERONICA
DEGRAFFENREID, Acting Secretary
of the Commonwealth; THE
LUZERNE COUNTY COUNCIL;
TIM McGINLEY, Chair, Luzerne
County Council; SHELBY
WATCHILLA, Director of Elections
for Luzerne County; THE
CUMBERLAND COUNTY BOARD
OF COMMISSIONERS; GARY
EICHELBERGER, Chair,
Cumberland County Board of
Commissioners; BETHANY
SALZARULO, Cumberland County
Director of Elections; THE
WASHINGTON COUNTY BOARD
OF COMMISSIONERS; DIANA
IREY VAUGHAN, Chair,
Washington County Board of
Commissioners; MELANIE R.
OSTRANDER, Washington County
Director of Elections; THE INDIANA
COUNTY COMMISSIONERS;
MICHAEL KEITH, Chairman,
Indiana County Commissioners;
DEBRA L. STREAMS, Indiana
County Director of Voter Registration;
THE CARBON COUNTY BOARD
OF COMMISSIONERS; WAYNE E.
NOTHSTEIN, Chairman, Carbon
County Board of Commissioners;

Civ. No. 1:20-cv-708

(Judge Christopher C. Conner)

LISA DART, Carbon County Director
of Elections; with all individual
defendants sued in their official
capacities only,

                    Defendants,
        v.

COMMON CAUSE
PENNSYLVANIA; and LEAGUE OF
WOMEN VOTERS OF
PENNSYLVANIA,

                    Defendant
                    Intervenors.

## FIRST AMENDED COMPLAINT

Plaintiff Judicial Watch, Inc., by and through counsel, files this First Amended Complaint for declaratory and injunctive relief against the Commonwealth of Pennsylvania; Veronica Degraffenreid, in her official capacity as Acting Secretary of the Commonwealth, and named agencies and officials with responsibilities relating to elections in Luzerne County, Cumberland County, Washington County, Indiana County, and Carbon County.

1.    Plaintiff seeks declaratory and injunctive relief to compel Defendants to comply with their voter list maintenance obligations and their record production obligations under Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States and under 52 U.S.C. § 20510(b)(2), as the action seeks injunctive and declaratory relief under the NVRA.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a defendant resides in this district and all defendants reside in Pennsylvania, and because a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

## PARTIES

4.      Plaintiff Judicial Watch, Inc. ("Judicial Watch") is a not-for-profit, educational organization incorporated under the laws of the District of Columbia and headquartered at 425 Third Street SW, Suite 800, Washington, D.C. 20024.

5.      Defendant Commonwealth of Pennsylvania is a "State" subject to the requirements of the NVRA.  52 U.S.C. §§ 20502(4), 20503.

6.      Defendant Acting Secretary Veronica Degraffenreid was appointed to be the Secretary of the Commonwealth of Pennsylvania and to oversee the Department of State.  She and her department are charged with implementing, regulating, and administering Pennsylvania's Statewide Uniform Registry of Electors ("SURE") voter registration database.  25 Pa. C.S. §§ 1201 and 1222(e) and (f).  Secretary Degraffenreid is Pennsylvania's chief State election official,

responsible under federal law for coordinating the State's compliance with the NVRA. 52 U.S.C. § 20509.

7.      Defendant Luzerne County Council is an agency established under state law with jurisdiction over the conduct of elections within the county.

8.      Defendant Tim McGinley is the Chair of the Luzerne County Council.

9.      Defendant Shelby Watchilla is the Director of Elections for Luzerne County.

10.     Defendant Cumberland County Board of Commissioners is an agency established under state law with jurisdiction over the conduct of elections within the county.

11.     Defendant Gary Eichelberger is the Chair of the Cumberland County Board of Commissioners.

12.     Defendant Bethany Salzarulo is the Cumberland County Director of Elections.

13.     Defendant Washington County Board of Commissioners is an agency established under state law with jurisdiction over the conduct of elections within the county.

14.     Defendant Diana Irey Vaughan is the Chair of the Washington County Board of Commissioners.

4

15.    Defendant Melanie R. Ostrander is the Washington County Director of Elections.

16.    Defendant Indiana County Commissioners is an agency established under state law with jurisdiction over the conduct of elections within the county.

17.    Defendant Michael Keith is the Chairman of the Indiana County Commissioners.

18.    Defendant Debra L. Streams is the Indiana County Director of Voter Registration.

19.    Defendant Carbon County Board of Commissioners is an agency established under state law with jurisdiction over the conduct of elections within the county.

20.    Defendant Wayne E. Nothstein is the Chairman of the Carbon County Board of Commissioners.

21.    Defendant Lisa Dart is the Carbon County Director of Elections.

22.    All individual Defendants are sued in their official capacities only.

## STATUTORY BACKGROUND

23.    The NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or change of address. 52 U.S.C. § 20507(a)(4).

24.     Under Section 8 of the NVRA, a voter becomes "ineligible" and subject to removal from a jurisdiction's voter rolls when the voter asks to be removed from the rolls, does not respond to an address inquiry and fails to vote during a specified statutory period, dies, or is disqualified from voting under state law because of a criminal conviction or mental incapacity; or when an erroneous registration record is corrected.  52 U.S.C. § 20507(a)(3), (4)(A), 4(B), (c)(2)(B)(ii).

25.     The NVRA provides that a voter must be removed from a jurisdiction's voter rolls if the voter either confirms in writing that he or she has moved outside the jurisdiction, or fails to respond to an address confirmation notice and then fails to vote during a statutory waiting period extending from the date of the notice through the next two general federal elections.  52 U.S.C. §§ 20507(d)(1), (d)(3); 52 U.S.C. § 21083(a)(4)(A).

26.     Pennsylvania law requires each county registration commission to institute a program to "protect the integrity of the electoral process," "ensure the maintenance of accurate and current registration records," and "identify registered electors whose address may have changed."  25 PA. C.S. § 1901(a), (b).

27.     Pennsylvania law provides, like the NVRA, that an elector may be removed from the rolls if the elector either confirms a move outside of the county in writing, or fails to respond to a forwardable notice and then fails to vote during a

waiting period extending from the date of the notice through the next two general federal elections. 25 PA. C.S. § 1901(d)(1)(ii).

28.    Federal regulations and Pennsylvania's list maintenance laws and related Commonwealth documents refer to voter registrations as "inactive" when a registrant has failed to respond to a notice and will be subject to removal if the registrant then fails to vote in the next two general federal elections. 11 C.F.R. § 9428.7; 25 PA. C.S. § 1901(c).

29.    Under both the NVRA and Pennsylvania law, voters whose registrations are inactive may still vote on election day. 52 U.S.C. § 20507(d)(2)(A); 25 PA. C.S. § 1902.

30.    In June of each odd-numbered year, the U.S. Election Assistance Commission ("EAC") is required by law to report to Congress its findings related to state voter registration practices. 52 U.S.C. § 20508(a)(3). Federal regulations require states to provide various kinds of data to the EAC for use in this biennial report, including the numbers of active and inactive registered voters in the last two federal elections, and the numbers of registrations removed from the rolls for any reason between those elections. 11 C.F.R. § 9428.7(b)(1), (2), (5).

## FACTS

### I.    *Judicial Watch's Background, Mission, and Membership.*

31.    Judicial Watch's mission is to promote transparency, integrity, and accountability in government and fidelity to the rule of law.  The organization, which has been in existence since 1994, fulfills its mission through public records requests and litigation, among other means.

32.    Judicial Watch is supported in its mission by hundreds of thousands of individuals across the nation.  An individual becomes a member of Judicial Watch by making a financial contribution, in any amount, to the organization.  Members' financial contributions are by far the single most important source of income to Judicial Watch and provide the means by which the organization finances its activities in support of its mission.  Judicial Watch in turn represents the interests of its members.

33.    Over the past several years, Judicial Watch's members have become increasingly concerned about the state of the nation's voter registration rolls, including whether state and local officials are complying with the NVRA's voter list maintenance obligations.

34.    Specifically, members are concerned that failing to comply with the NVRA's voter list maintenance obligations undermines the integrity of elections by increasing the opportunity for ineligible voters to cast ballots.

35.    In response to this concern, Judicial Watch commenced a nationwide program to monitor state and local election officials' compliance with their NVRA list maintenance obligations.  As part of this program, Judicial Watch utilizes NVRA Section 8(i) and public records laws to request and receive records from jurisdictions across the nation about their voter list maintenance efforts.  It also obtains and analyzes voting and population data from the EAC and U.S. Census Bureau.  It then analyzes these records and data and publishes the results of its findings to its members and the general public.

## II.    *Data Available from Election Assistance Commission Survey Responses.*

36.    In June 2019, the EAC published its biennial, NVRA-related report, entitled ELECTION ADMINISTRATION AND VOTING SURVEY, 2018 COMPREHENSIVE REPORT, A REPORT TO THE 116TH CONGRESS ("EAC Report").  The report is available at https://www.eac.gov/research-and-data/studies-and-reports by clicking on "2018 Election Administration and Voting Survey Report."

37.    Along with its report, the EAC published the responses it received to its voter registration survey, the Election Administration and Voting Survey ("EAVS"), which it sent to the states concerning the reporting period from November 2016 through November 2018.  The survey instrument sent by the EAC is available at https://www.eac.gov/research-and-data/datasets-codebooks-and-surveys under a 2018 link entitled "2018 Election Administration and Voting Survey

Instrument."   The states, in consultation with their county and local officials, provided their responses to the survey directly to the EAC.

38.   The states' responses to that survey are compiled on the same webpage under the heading "EAVS Datasets Version 1.3 (released July 15, 2020)."   This dataset includes all updates states submitted to the EAC amending their original responses.   In particular, this dataset includes updates that the Commonwealth of Pennsylvania and the Secretary submitted to the EAC as a result of this lawsuit and filed with their initial answer.   Doc. 33 ¶¶ 39-41, Doc. 33-1.

39.   The most recent voter registration survey from the EAC concerned the period from November 2018 through November 2020.   Under federal law, states were required to submit their responses to this survey to the EAC by March 2021. 11 C.F.R. § 9428.7(a).

40.   In November 2020, Judicial Watch requested documents and information from Defendants concerning their responses to the EAC's latest survey. After a number of extensions, Defendants took the position that they would not produce the requested documents and information for several more months.   Docs. 64, 66.   Following a telephone conference with Magistrate Judge William I. Arbuckle, Defendants, on April 12, 2021, produced to Judicial Watch documents and information they already had submitted to the EAC in response to its latest survey.

41.     Between (1) the EAC survey responses for the period from 2016 to 2018, published online by the EAC as discussed *supra* in paragraphs 37-38, and (2) the EAC survey responses for the period from 2018 to 2020 produced in discovery in this lawsuit, Judicial Watch has access to four years of data concerning Defendants' compliance with the NVRA.  All of this data was gathered by Defendants themselves and submitted to the federal government.  Data concerning Pennsylvania from these two sources is referred to herein as "EAVS Data."

**III.     Relevant Admissions Concerning the County Defendants.**

42.     Question A9e in the EAC's last two survey instruments (*viz.*, the surveys for 2018-2020 and 2016-2018) asked jurisdictions to report the number of registrations removed where the "[r]eason for [r]emoval" was "[f]ailure to respond to notice sent and failure to vote in two most recent federal elections."  This question plainly refers to removals under Section 8(d)(1)(B) of the NVRA.

43.     If a jurisdiction removes few or no registration records belonging to electors who fail to respond to an address confirmation notice and fail to vote in two consecutive federal elections, that jurisdiction is not complying with Section 8(d)(1)(B) of the NVRA.

44.     EAVS Data shows that Defendant Luzerne County, with a total of 219,675 voter registrations, removed 61 registrations pursuant to Section 8(d)(1)(B)

of the NVRA from 2018 to 2020, and removed 96 registrations pursuant to that provision from 2016 to 2018.

45.    EAVS Data shows that Defendant Cumberland County, with a total of 186,656 voter registrations, removed 85 registrations pursuant to Section 8(d)(1)(B) of the NVRA from 2018 to 2020, and removed 705 registrations pursuant to that provision from 2016 to 2018.

46.    EAVS Data shows that Defendant Washington County, with a total of 153,573 voter registrations, removed a total of three registrations pursuant to Section 8(d)(1)(B) of the NVRA in the four years from November 2016 through November 2020.

47.    EAVS Data shows that Defendant Indiana County, with a total of 51,591 voter registrations, removed a total of 17 registrations pursuant to Section 8(d)(1)(B) of the NVRA in the four years from November 2016 through November 2020.

48.    EAVS Data shows that Defendant Carbon County, with a total of 46,782 voter registrations, removed zero registrations pursuant to Section 8(d)(1)(B) of the NVRA in the four years from November 2016 through November 2020.

49.    The foregoing four-year removal totals pursuant to Section 8(d)(1)(B) for Defendants Luzerne County, Cumberland County, Washington County, Indiana

County, and Carbon County, equal or round to zero percent of each county's total number of voter registrations.

50.     It is not possible as a practical matter to comply with the NVRA while removing as few registrations pursuant to Section 8(d)(1)(B) as were removed by Defendants Luzerne County, Cumberland County, Washington County, Indiana County, and Carbon County from November 2016 through November 2020.

51.     Defendants Luzerne County, Cumberland County, Washington County, Indiana County, and Carbon County have a combined total of 658,277 voter registrations.  Yet those five counties removed a combined total of 967 registrations pursuant to Section 8(d)(1)(B) of the NVRA in the last four years from November 2016 through November 2020.  Moreover, the vast majority of these registrations were removed in Cumberland County more than two years ago.

52.     By way of comparison, EAVS Data shows that Lackawanna County, Pennsylvania, with fewer total voter registrations than Defendants Luzerne County, Cumberland County, or Washington County, removed 11,597 registrations pursuant to Section 8(d)(1)(B) of the NVRA in the four years from November 2016 through November 2020.

53.     By way of comparison, EAVS Data shows that Clinton County, with a total of 22,110 voter registrations, removed 2,034 registrations pursuant to Section 8(d)(1)(B) of the NVRA in the four years from November 2016 through November

2020. That number is more than twice the number removed pursuant to that statute by Defendants Luzerne County, Cumberland County, Washington County, Indiana County, and Carbon County, *combined*, during the same four-year period.

54.   If a jurisdiction is complying with the NVRA, the largest category of removals for a change of residence is typically the category of removals made pursuant to Section 8(d)(1)(B).

55.   By way of comparison, EAVS Data shows that, in Lackawanna County, the number of removals pursuant to Section 8(d)(1)(B) is greater than the number of removals confirmed in writing pursuant to Section 8(d)(1)(A), *and* the number of confirmation notices received back confirming the registrant's current residence, combined.

56.   By way of comparison, EAVS Data shows that, in Clinton County, the number of removals pursuant to Section 8(d)(1)(B) is greater than the number of removals confirmed in writing pursuant to Section 8(d)(1)(A), *and* the number of confirmation notices received back confirming the registrant's current residence, combined.

57.   The EAVS Data shows a multi-year failure by Defendants Luzerne County, Cumberland County, Washington County, Indiana County, and Carbon County to comply with the core requirements of Section 8(d)(1)(B) of the NVRA.

58.     This failure also shows that Defendant Acting Secretary Degraffenreid is not fulfilling her duty to coordinate State responsibilities under the NVRA. *United States v. Missouri*, 535 F.3d 844, 850, 851 (8th Cir. 2008).

## IV.     *Relevant Admissions Concerning Other Pennsylvania Counties.*

59.     The EAVS Data shows that the total numbers of registrations removed pursuant to the procedures set forth in Section 8(d)(1)(B) of the NVRA are extremely low in many other Pennsylvania counties that are not named as defendants here.

60.     The EAVS Data shows that the number of registrations removed pursuant to the procedures set forth in Section 8(d)(1)(B) of the NVRA were extremely low in the four-year period from November 2016 through November 2020 in Jefferson County (two such removals during that period), Warren County (one removal), Wyoming County (six removals), and Forest County (zero removals).

61.      The EAVS Data also shows that the number of registrations removed pursuant to the procedures set forth in Section 8(d)(1)(B) of the NVRA were extremely low in the most recent *two-year* period, from November 2018 through November 2020, in Northumberland County (two such removals during that period), Armstrong County (nine removals), Bedford County (15 removals), Clarion County (zero removals), and Snyder County (zero removals).

62.     Other Pennsylvania counties have confirmed directly to Judicial Watch that they removed ineligible registrations under Section 8(d)(1)(B) of the NVRA not

as required after the second federal election of inactivity, but only after receiving a notice-of-violation letter from Judicial Watch.

63.     Counsel for Crawford County, Pennsylvania stated in a July 21, 2021 letter that "upon receiving your correspondence the current Director of Elections realized that she had not taken the final step of actually removing inactive voters from the rolls."  The letter stated that 3,809 inactive registrations have since been removed.

64.     Counsel for Montour County, Pennsylvania stated in a May 4, 2021 letter that "the former county voter registrar … began the process to address the inactive voters" but did not complete it.  The letter stated that 775 inactive registrants have since been removed.

65.     The Clerk of Cameron County, Pennsylvania stated in a May 14, 2021 letter:

> Your notice brought to our attention that the Job Aid we were using for this purpose (through the SURE system used throughout the state) did not include the final step to remove registrants.  Upon our call to the SURE Help Desk, they reviewed the situation and provided further instruction for a final removal step which we did not have prior.

The letter added that 103 registrants had since been removed by this procedure.

66.     Counsel for Mifflin County, Pennsylvania indicated on May 4, 2021 that 1,028 "ineligible voters were removed from the voter rolls" in a period of time ending after the county received a notice-of-violation letter from Judicial Watch.

67.     Last year David Voye, Elections Manager for Allegheny County, Pennsylvania, stated in a televised report that "I would concede that we are behind in culling our rolls" and that it was an activity that had "been put on the back burner." Allegheny County only took action regarding this failure after receiving a notice letter from Judicial Watch in December 2019.  *Under Threat Of Lawsuit, Allegheny Co. Purging 69,000 Inactive Voters From Rolls* (CBS Pittsburgh, Jan. 14, 2020), available at https://pittsburgh.cbslocal.com/2020/01/14/allegheny-county-board-of-elections-voter-rolls/.

68.     The low numbers of registrations in many Pennsylvania counties and the outright concessions by county officials that they have not been complying with the NVRA indicate that Defendant Acting Secretary Degraffenreid is not fulfilling her duty to coordinate State responsibilities under the NVRA.

## V.     *Admissions Concerning the Accuracy of Pennsylvania's NVRA-Related Records.*

69.     States are required by federal law to keep accurate records and information regarding their NVRA-related activities and accurately report such records and information.   *See* 11 C.F.R. § 9428.7; 52 U.S.C. §§ 20507(i), 20508(a)(3).

17

70.     In response to Judicial Watch's initial filing of this lawsuit, the State Defendants amended the data they previously submitted to the EAC, as they reported in their initial answer. Doc. 33 ¶¶ 39-41, Doc. 33-1. These amendments had the effect of exponentially increasing the number of registrations removed in certain counties.

71.     In seeking to avoid producing documents and information concerning Defendants' March 2021 responses to the EAC's latest survey, Defendants filed a letter with the Court taking the position that producing these documents and information would "give rise to the peril of reliance on wrong numbers, again." Doc. 66 at 2.

72.     State Defendants' chronic failure to maintain and report accurate list maintenance data is a violation of federal law and shows that Defendants have not implemented a general program that makes a reasonable effort to remove the names of ineligible voters as required by the NVRA.

VI.     *Judicial Watch's Notice Letters and Defendants' Responses.*

73.     On April 22, 2021, Judicial Watch sent a notice-of-violation letter to the State Defendants setting forth a range of violations against the State and against 27 identified counties. Doc. 75-1.

74.     On July 16, 2021, Kathleen M. Kotula, Executive Deputy Chief Counsel of the Office of Chief Counsel at the Department of State, responded with

a brief letter.  It attached and referred to a one-page chart purporting to state the "Continuous Inactive Voters as of July 16, 2021."

75.     Neither the letter nor the chart specifically denied or even addressed any of the EAVS Data concerning the extremely low numbers of removals in many counties pursuant to Section 8(d)(1)(B) of the NVRA.  Indeed, the data presented with the July 16, 2021 letter did not contradict the Defendants' submitted responses to survey question A9e in any way.

76.     The data presented with the July 16, 2021 letter was, moreover, significantly inconsistent—often by multiples or by thousands of registrations—with public data sources, including a public data source referred to in that same letter.

77.     On May 3, 2021, Judicial Watch sent notice-of-violation letters directly to each of the 27 counties discussed in the April 22, 2021 letter, making county-specific allegations.  Each letter was also addressed and sent to the Secretary of the Commonwealth as the chief State election official under the NVRA.  *See*, *e.g.*, Doc. 75-2 (to Armstrong County).

78.     Defendants Luzerne County, Cumberland County, Washington County, Indiana County, and Carbon County never responded to the notice letters sent to them.

79.     Luzerne County was publicly reported to have removed over 17,000 registrations on or about June 1, 2021, about four weeks after it received the notice-

of-violation letter. https://www.timesleader.com/top-stories/1497690/luzerne-county-democrats-lost-most-voters-due-to-recent-purge. The article expressly stated that the removals were made "in response to a litigation threat" by Judicial Watch. The article also noted that a similar program had not been completed since 2012.

80.   In the foregoing circumstances, Defendant Luzerne County's possible voluntary compliance does not moot the claims against it. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000).

## VII.   *Judicial Watch's Injury.*

81.   Judicial Watch has expended substantial resources, including staff time, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with both Commonwealth and numerous county officials and concerned members about Defendants' failure, researching statements made by Defendants in their correspondence, and attempting to counteract their noncompliance.

82.   Judicial Watch expended resources to research claims in Defendants' correspondence concerning the numbers of registrations removed in various categories, to read and analyze the state reports and sources they cited, and to review and analyze additional data made available by the EAC.

83.   Judicial Watch was compelled to expend resources as stated above in

part because Defendants' record-keeping regarding crucial NVRA-related data points was poor and inaccurate.

84.    Judicial Watch was compelled to expend resources as stated above in part because Defendants delayed producing relevant information to Judicial Watch without sufficient cause for doing so.

85.    The resources expended by Judicial Watch to investigate, address, research, and counteract Defendants' failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Judicial Watch's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.  Were it not for Defendants' failure to comply with their NVRA voter list maintenance obligations, Judicial Watch would have expended these same resources on its other regular, programmatic activities or would not have expended them at all.    Instead, it diverted its resources to counteract Defendants' noncompliance and to protect members' rights.

## VIII.  *Judicial Watch's Members' Injuries.*

86.    Members of Judicial Watch who are lawfully registered to vote in Pennsylvania and in Luzerne County, Cumberland County, Washington County, Indiana County, and Carbon County, and throughout Pennsylvania have a

constitutional right to vote in state and federal elections, as well as a statutory right to the safeguards and protections set forth in the NVRA.

87.    Defendants' failure to comply with their NVRA voter list maintenance obligations has burdened the constitutional right to vote of Judicial Watch members who are lawfully registered to vote in Luzerne County, Cumberland County, Washington County, Indiana County, and Carbon County by undermining their confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be nullified or diluted.

88.    Defendants' failure to satisfy their NVRA voter list maintenance obligations also infringes the statutory rights of those Judicial Watch members who are lawfully registered to vote in Pennsylvania and in County Defendants.  These individuals have a statutory right to vote in elections for federal office that comply with the procedures and protections required by the NVRA, including the voter list maintenance obligations set forth in Section 8.

89.    Protecting the voting rights of Judicial Watch members who are lawfully registered to vote in Pennsylvania and in County Defendants is germane to Judicial Watch's mission.  It also is well within the scope of the reasons why members of Judicial Watch join the organization and support its mission.

90.    Because the relief sought herein will inure to the benefit of Judicial Watch members who are lawfully registered to vote in Pennsylvania and in County Defendants, neither the claims asserted nor the relief requested requires the participation of individual members.

91.    In March 2020, nearly one thousand Judicial Watch members who are registered to vote throughout Pennsylvania confirmed to Judicial Watch's staff that they were concerned about Defendants' failure to satisfy their voter list maintenance obligations under the NVRA and the resulting harm to these members' voting rights.

## COUNT I

### (Violation of Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4))

92.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

93.    Judicial Watch and its members are all persons aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. § 20510(b)(1).

94.    The April 22, 2021 letter to the Secretary, and the May 3, 2021 letters to each named county and the Secretary, constituted statutory notice, pursuant to 52 U.S.C. § 20510(b)(1), of violations of Section 8(a)(4) of the NVRA.

95.    Defendants have failed to fulfill their obligations under Section 8(a)(4) of the NVRA to conduct a general program that makes a reasonable effort to cancel the registrations of registrants who are ineligible to vote in Pennsylvania's federal elections.

96.     Judicial Watch and its members have suffered, and will continue to suffer, irreparable injury as a direct result of Defendants' failure to fulfill their obligations to comply with Section 8(a)(4) of the NVRA.

97.     Plaintiff has no adequate remedy at law.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for entry of a judgment:

a.      Declaring Defendants to be in violation of Section 8(a)(4) of the NVRA;

b.      Permanently enjoining Defendants from violating Section 8(a)(4) of the NVRA;

c.      Ordering Defendants to develop and implement a general program that makes a reasonable effort to remove the registrations of ineligible registrants from the voter rolls of Pennsylvania, Luzerne County, Cumberland County, Washington County, Indiana County, and Carbon County;

d.      Ordering Defendants to pay Plaintiff's reasonable attorney's fees, including litigation expenses and costs, as allowed under 52 U.S.C. § 20510(c); and

e.      Awarding Plaintiff such other and further relief as this Court deems just

and proper.


August 11, 2021                              */s Robert D. Popper*
                                            Robert D. Popper*
                                            Eric Lee*
                                            JUDICIAL WATCH, INC.
                                            425 Third Street SW, Suite 800
                                            Washington, D.C. 20024
                                            (202) 646-5172
                                            Rpopper@judicialwatch.org
                                            Elee@judicialwatch.org

                                            Shawn M. Rodgers
                                            Jonathan S. Goldstein, Esq.
                                            GOLDSTEIN LAW PARTNERS, LLC
                                            11 Church Road
                                            Hatfield, Pennsylvania 19440
                                            www.goldsteinlp.com
                                            (610) 949-0444

                                            T. Russell Nobile*
                                            JUDICIAL WATCH, INC.
                                            Post Office Box 6592
                                            Gulfport, Mississippi 39506
                                            (202) 527-9866
                                            Rnobile@judicialwatch.org

                                            H. Christopher Coates*
                                            LAW OFFICE OF H. CHRISTOPHER
                                            COATES
                                            934 Compass Point
                                            Charleston, South Carolina 29412
                                            (843) 609-7080
                                            curriecoates@gmail.com

                                            *       *Admitted pro hac vice*